## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BARBARA FAYEULLE and
MATTHEW GENTRUP,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CIGNA CORPORATION,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTH AND LIFE INSURANCE COMPANY, and
COLUMBINE CHIROPRACTIC PLAN, LLC, d/b/a COLUMBINE HEALTH PLAN,

      Defendants.

_____

## CLASS ACTION COMPLAINT
_____

Plaintiffs Barbara Fayeulle and Matthew Gentrup complain as follows on behalf of themselves and all others similarly situated, against Defendants Cigna Corporation, Connecticut General Life Insurance Company, CIGNA Health and Life Insurance Company, and Columbine Chiropractic Plan, LLC, d/b/a Columbine Health Plan:

### <u>INTRODUCTION</u>

1.    This class action challenges a fraudulent scheme devised by Defendant Cigna Corporation and its subsidiaries ("Cigna") that misappropriates millions of dollars every year from Cigna insureds and employers who sponsor Cigna-administered self-insured health insurance plans. Cigna secretly forces these innocent parties to pay administrative fees owed by Cigna to various subcontractors that Cigna has retained to assist it in processing and administering health care claims. For years, Cigna has colluded with these subcontractors (the

"Subcontractors"), including Defendant Columbine Chiropractic Plan, LLC, to perpetrate this fraud.

2.      Cigna conceals its cost-shifting scheme by sending false Explanation of Benefits forms to insureds that misrepresent the administrative fees Cigna owes to the Subcontractors as ordinary medical expenses billed by a medical provider. These misrepresentations serve as the cover that allows Defendants to illegally (i) obtain payment of the Subcontractors' administrative fees directly from insureds when the insureds' deductibles have not been reached; (ii) use insureds' health spending accounts to pay for these fees; (iii) inflate insureds' co-insurance obligations using administrative fees; (iv) artificially reduce the amount of available coverage for medical services when such coverage is subject to an annual cap; and (v) obtain payment of the administrative fees directly from employers when an insured's deductible has been exhausted or is inapplicable.

3.      By this class action, Plaintiffs seek relief for this scheme pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 through 1968, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

## PARTIES

### *Plaintiffs*

4.      Plaintiff Barbara Fayeulle is insured by Cigna pursuant to a health insurance plan. Because Ms. Fayeulle's plan is offered through her husband's private employer, Seagate US LLC, it is governed by ERISA. Her plan, the Seagate US LLC Open Access Plus Medical Benefits (High Deductible Health Plan 1), is self-insured by Seagate US LLC, meaning that Seagate US LLC finances the plan's benefit payments. CIGNA Health and Life Insurance

Company provides claim administration for the plan. Ms. Fayeulle resides in Longmont, Colorado. She brings this action on her own behalf and on behalf of all similarly situated individuals and plans.

5.      Plaintiff Matthew Gentrup is insured by Cigna pursuant to a health insurance plan. Because Mr. Gentrup's plan is offered through his wife's employer, the City of Loveland, it is not governed by ERISA. His plan, the City of Loveland Open Access Plus Medical Benefits HRA Benefits, is self-insured by the City of Loveland, and Connecticut General Life Insurance Company provides claim administration for the plan.

### *Defendants*

6.      Defendant Cigna Corporation is a Delaware corporation with its principal business address at One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania, United States 19192. Its corporate headquarters are located at 900 Cottage Grove Road, Bloomfield, CT 06002. Cigna Corporation is a global health insurance company. As reported in Cigna Corporation's 2014 Form 10-K, all of the company's products and services, including the health services that Cigna Corporation provides to the public on a nationwide basis, are provided exclusively through its operating subsidiaries, including Defendants Connecticut General Life Insurance Company ("CGLIC") and CIGNA Health and Life Insurance Company ("CHLIC"). CHLIC is a wholly owned subsidiary of CGLIC that is a wholly owned subsidiary of Connecticut General Corporation (CGC), which is an indirect, wholly owned subsidiary of Cigna Corporation. Cigna Corporation and its subsidiaries are referred to as "Cigna" in this Complaint.

7.     Defendant Connecticut General Life Insurance Company is a Connecticut corporation with its principal office address at 900 Cottage Grove Road, Bloomfield, CT 06002.

8.     Defendant CIGNA Health and Life Insurance Company is a Connecticut corporation with its principal office address at 900 Cottage Grove Road, Bloomfield, CT 06002.

9.     Defendant Columbine Chiropractic Plan, LLC, d/b/a Columbine Health Plan ("Columbine") is a Colorado limited liability company with its principal office address at 600 17th Street, Suite 2500S, Denver, Colorado, 80202. Columbine provides claims administration and network management services to Cigna in connection with Cigna's administration of employee welfare benefit plans issued in Colorado.

10.     Due to the manner in which they function, including the discretion they exercise in making coverage determinations with respect to ERISA plans, Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1331 (federal question), and 29 U.S.C. § 1132(e)(1) (ERISA).

12.     Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### *Background*

13.     Globally, Cigna has approximately 80 million customer relationships and $32.4 billion in annual revenues. According to Cigna's 2014 10-K, nearly 80% of those revenues come

from its Global Health Care segment. The Global Health Care segment consists of Cigna's "Commercial" and "Government" operating segments.

14.     Through its Commercial operating segment, Cigna offers medical insurance plans to customers in all 50 states and the District of Columbia.

15.     According to Cigna's 2014 10-K, the plans that it offers can be either self-insured plans or fully-insured plans, with claims funded out of premiums paid to Cigna by the plan sponsor (usually an employer) and/or the plan sponsor's employees. For the fully-insured plans, those who wish to be covered (i.e., insureds), and/or plan sponsors on their behalf, pay premiums to Cigna that entitle them to benefits provided by the plan, which are paid out of Cigna's assets.

16.     Benefits paid by a self-insured plan are primarily funded by plan sponsors, who are usually employers. Insureds of self-funded plans are often required to pay premiums to the plan, which entitles them to benefits provided by the plan. While the benefits issued by self-funded plans are ultimately paid out of the plan sponsor's assets, Cigna has full discretion and authority to issue checks for the payment of benefits under self-funded plans out of bank accounts Cigna maintains and controls. When Cigna foresees that it will need additional funds for the accounts used for the payment of benefits, it obtains such funds from the plan sponsors.

17.     In either situation, Cigna serves as the "claims administrator" with responsibility for processing and adjudicating claims submitted by insureds and providing insureds with access to a network of providers who have agreed to accept discounted fees from Cigna-administered health insurance plans in exchange for providing covered services. Many of the plans sold by Cigna are governed by ERISA.

18.     In exchange for serving as the claims administrator, Cigna receives an administrative fee from the plan sponsor pursuant to an agreement frequently known as an "administrative services agreement."

19.     There is no administrative services agreement in the context of an insured plan because Cigna is both the payor and the administrator. Instead, its administrative costs are built into the premiums that are charged to plan sponsors and/or insureds.

20.     According to Cigna's 2014 10-K, its medical plans "often" integrate the Cigna Choice Fund suite of products, which include Health Savings Accounts ("HSAs") and Health Reimbursement Accounts ("HRAs"). Cigna reports that it "continue[s] to experience strong growth in these products and they represent a rapidly growing percentage of [its] overall medical customer base."

21.     An HSA is a tax-exempt trust or custodial account established with a qualified HSA trustee to pay or reimburse certain medical expenses. Only individuals enrolled in a high-deductible health plan qualify for an HSA under IRS rules. The funds contributed to an HSA account are not subject to federal income tax at the time of deposit, and distributions from the HSA are not taxed if they are used for qualified medical expenses, as defined in Section 213(d) of the Internal Revenue Service Tax Code.

22.     A Health Reimbursement Account ("HRA") is an employer-funded medical reimbursement arrangement, pursuant to which the employer sets aside a specific amount of pre-tax dollars for employees to pay for health care expenses on an annual basis. The employee does not include distributions from the HRA in income, and does not pay tax on those distributions,

only if they are used for qualified medical expenses, as defined in Section 213(d) of the Internal Revenue Service Tax Code.

23.     According to Cigna's 2014 10-K, "[i]n most cases," Cigna Choice Fund products are combined with high-deductible health plans. A high-deductible health plan is a plan with a lower premium and a higher deductible than a traditional health plan, according to Cigna's website.

24.     ERISA requires plan administrators like Cigna to provide reports to insureds on the results of how their claim are processed, including how much the treating provider billed for the medical services at issue; what portion of that bill was deemed to be an "allowed amount" under the plan (meaning that it is the amount that is "covered" under the plan); what portion of the allowed amount will be paid by the plan and what portion is owed by the patient (due to a deductible or co-insurance obligation); and how much was actually paid to the provider on behalf of the patient. The purpose of these Explanation of Benefits forms ("EOBs") is to report how the claims administrator processed the claim, including what portion of the medical expenses are paid by the plan and what portion remains the responsibility of the insured.

### Cigna's Cost-Shifting Scheme

25.     Historically, Cigna handled all of the claims administration work required of a claims administrator by itself. It processed claims, adjudicated them, and entered into contracts with providers who agreed to participate in Cigna's network.

26.     In the last several years, however, it has delegated these responsibilities to a collection of Subcontractors for purposes of certain types of claims. For example, Cigna now hires Subcontractors to handle the administration of all chiropractic or physical therapist

services. In order for a chiropractor or physical therapist to be considered an "in-network provider" for purpose of the plans that Cigna administers, Cigna requires them to enter into in-network contracts with the Subcontractors rather than with Cigna directly. Cigna has entered into such contracts with Columbine and other Subcontractors, including American Specialty Health Group, Inc. ("ASH Group").

27.     The Cigna-Subcontractor contracts require Cigna to pay the Subcontractor a specified fee for each claim that it processes. These contracts further require Cigna to reimburse the Subcontractor for the payments it makes to in-network providers pursuant to a pre-determined rate schedule.

28.     When a Cigna insured has received medical services from a provider who is in one of the Subcontractor's networks, Cigna and the Subcontractor instruct the provider to submit the resulting claim for insurance benefits to the Subcontractor. In these claims, the providers identify by CPT Code (a five-digit number used to identify each individual health care service) the specific services they provided to their patients, along with their usual and customary charge for that service. The American Medical Association, which has created and obtained a registered trademark for "CPT" ("Current Procedural Terminology"), describes CPT codes as "the most widely accepted medical nomenclature used to report medical procedures and services under public and private health insurance programs."

29.     The Subcontractor processes the claim and, if it is determined to be covered under the applicable plan, pays the provider pursuant to the terms of the fee schedule under the in-network contract. The Subcontractor is then reimbursed by Cigna in full for this amount.

30.     The Subcontractor is also entitled to an administrative fee from Cigna to cover its cost of processing the claim and administering the network on behalf of Cigna. However, in order to maximize Cigna's profits by allowing it to avoid having to pay that administrative fee, and to enhance Cigna's competitive advantage by not (i) having to increase the rate that Cigna charges to self-insured plan sponsors for providing administrative services, or (ii) having to increase premiums, Defendants covertly pass it along either to the insured or the plan as a "medical expense." They conceal these charges by having Cigna issue a misleading EOB to every insured on whose behalf a claim is submitted to a Subcontractor.

31.     Working with the Subcontractors, Cigna falsifies the EOBs that it sends to insureds. It misrepresents that the Subcontractor is the "provider" to represent that the administrative fees are being charged by a provider for medical services, when in fact they are charges for the Subcontractor's administrative fees. By this method, it adds the amount that Cigna owes to the Subcontractor to the amount of the provider's actual charge, and then treats this artificially inflated total in the EOB as the "allowed" and/or "covered" amount payable by either the patient or the plan. In other EOBs, it simply inflates the amount charged for medical services, without resorting to the subterfuge described above.

32.     Most plans include a deductible, whereby the insured must pay a certain amount of out-of-pocket medical expenses before the plan is obligated to make any payments. Thus, the EOB may report that a set amount is a covered amount which is otherwise payable under the plan, but this amount is applied toward the deductible so that it is owed by the patient. In the case of a patient with an HRA or HSA, Cigna takes the funds directly from the patient's account to pay the amount that the EOB reports as being owed to the provider. If the deductible has

previously been satisfied by the insured, then the EOB reports that the plan will pay the covered amount for the provider. Either way, Cigna's scheme forces the insured or plan to pay for more than covered medical expense by fraudulently including the Subcontractors' administrative fee as a medical expense.

33. Defendants' fraud is further demonstrated by comparing the Cigna EOBs to the Compensation Summaries that the Subcontractors send to providers. Until very recently, these Compensation Summaries accurately reported the provider's usual and customary charge, the allowed amount based on the in-network fee schedule, and the amount that the Subcontractor was going to pay the provider. Thus, while the Compensation Summaries accurately report what the provider actually charged as well as the actual amount paid to the provider based on the fee schedule, the EOBs report an inflated number as both the billed and allowed amount. The Compensation Summaries do not, however, include or disclose the Subcontractor's administrative fees, or that fact that insureds and/or self-funded plans are being required to pay these fees.

34. As a result of this scheme, when an insured has not exhausted her deductible, the patient is forced to unknowingly pay (whether out-of-pocket or through the HRA or HSA) for both the medical expenses owed to the provider **and** the administrative fee Cigna owes to its Subcontractor. This is despite the fact that nothing in Cigna's plan documents imposes an obligation on insureds to pay out-of-pocket any of the administrative costs that Cigna owes to its Subcontractors, as opposed to actual medical expenses incurred from bills issued by health care providers. If the insured has already satisfied the deductible, then the plan pays, so that it, too, is improperly paying the administrative fee owed by Cigna to its Subcontractors, not just the

medical expense. Cigna is supposed to recoup administrative fees through its administrative services agreement (for self-insured plans) or premiums (for insured plans), not by misrepresenting them as part of an insured's medical expenses for services from providers.

35.     By their uniform and fraudulent misrepresentations, Cigna and the Subcontractors are able to shift the cost for the Subcontractors' administrative fees from Cigna to Cigna's insureds and self-insured plans without their knowledge. Defendants deplete the insureds' HRA and HSA funds and the assets of self-insured plans to pay for these administrative fees, rather than for using them to pay for medical services. To the extent that the insureds are subject to deductibles or co-insurance requirements, they are forced to pay these administrative fees out of pocket. And when the insureds' plans include limits on the availability of coverage (for example, a $500 limit on chiropractic services), the charging of these administrative fees exhausts those limits more quickly, depriving the insureds of valuable medical coverage.

36.     This cost-shifting scheme also may allow Cigna to report inaccurate Medical Loss Ratios ("MLR"). An MLR represents the percentage of premium income that an insurer pays out in medical expenses on behalf of plan members, as compared to the portion spent toward administrative costs. Under the Patient Protection and Affordable Care Act ("PPACA"), Cigna is required to meet certain MLR requirements in order to avoid paying back rebates of excessive premiums. Through the actions described herein, Cigna may have been able to misrepresent administrative fees it pays to its Subcontractors as medical expenses, thereby minimizing the potential for paying rebates under the PPACA.

### *The Cigna-Columbine and Cigna-ASH Group Agreements*

37.     Columbine is one of Cigna's Subcontractors. It is not a provider of medical services. It serves a purely administrative role in claims processing and network management.

38.     Cigna and Columbine have a long-standing contractual arrangement under which Columbine administers health services for Cigna. Pursuant to the Cigna-Columbine agreement, Columbine recruits, contracts with, and credentials chiropractors, who agree to accept a discounted rate of reimbursement for the services that they provide to patients insured by Cigna. Columbine also receives, processes, and pays or denies benefits claims for the chiropractic services provided by its assembled network of chiropractors to insureds of Cigna. Based on the role it plays in processing chiropractic claims and making benefit determinations for plans governed by ERISA, Columbine is a fiduciary under ERISA.

39.     Each provider within Columbine's network is required to enter into a contract with Columbine (the "Columbine Provider Agreement"). Pursuant to the Columbine Provider Agreement, the chiropractors in Columbine's network agree to provide chiropractic services to individuals enrolled in health plans, managed care organizations, and other health care service programs that have contracted with Columbine, and to accept reduced rates, set forth in an appendix to the Columbine Provider Agreement, as payment in full for those services.

40.     In 2015, in response to complaints from providers and patients who discovered the discrepancy between the EOBs and Compensation Summaries described above, Columbine amended its in-network contracts to build the administrative fee into the fee schedule, and then required the provider to pay back that administrative fee to Columbine. Thus, whereas in 2014, Cigna and Columbine agreed that the in-network chiropractors should be paid a daily rate of $45,

with the administrative fee owed to Columbine slipped into the EOB issued to the patient so that the insured or the plan would cover the fee, in 2015, Columbine purportedly increased the provider's daily rate to $58. Thus, the Compensation Summaries and EOBs now appear to be consistent with both reflecting an allowed amount, based on the fee schedule, of $58.

41.     What the insureds did not know, however, is that the provider was then required by the contract to pay back the administrative fee to Columbine. In particular, Columbine amended the Columbine Provider Agreement to state that "Provider shall pay Columbine an administrative fee of $13.00 per date of service for claims submitted by provider as compensation for processing Provider's claims for payment, and Columbine shall have the right to collect such fee in accordance with Section 5.4 of the Agreement." Columbine does so by withholding $13 from a subsequent payment to the provider otherwise due for different Cigna-insured patients and applying it toward the administrative fee Columbine is owed by Cigna for processing the original claim.

42.     Thus, this version of the Columbine Provider Agreement expressly acknowledges that the $13 fee is solely compensation for Columbine's claims-processing services. Yet, that same $13 fee continued to be collected from insureds and plans through the misleading EOBs, with Cigna and Columbine now using the providers as a conduit through which they are able to force the insured or the plans to pay the administrative fee Cigna would otherwise owe to Columbine. The fees remain hidden from the insureds and plans, who are not told that these fees are not expenses for medical services.

*Allegations Regarding Barbara Fayeulle*

43.     The documents that Cigna provided to Ms. Fayeulle and her spouse, and Cigna's website, include numerous statements showing that benefits are limited to medical expenses based on charges from medical providers. They do not refer to administrative fees charged for Subcontractors or state that they are expenses for which insureds can be charged.

44.     For example, the insured's liability for in-network services under the plan documents is limited to co-insurance or deductibles. The plan documents define those expenses in relation to "Covered Expenses." They state, "To receive … Medical Benefits, you and your Dependents may be required to pay a portion of the Covered Expenses for services and supplies. That portion is the Deductible or Coinsurance."

45.     The plan documents define "Covered Expenses" as those expenses that are incurred for services that are "received from a provider and are Medically Necessary for the care and treatment of an injury or illness." Cigna's Glossary of Health Services and Medical Terms defines a provider as "A physician (M.D. – Medical Doctor or D.O. – Doctor of Osteopathic Medicine), health care professional or health care facility licensed, certified or accredited as required by state law." Cigna's Subcontractors, including Columbine, are not providers.

46.     Further, the services provided by Cigna's Subcontractors are not "medically necessary" care and treatment of medical conditions. Cigna's Glossary defines "medically necessary" as "Health care services or supplies needed to prevent, diagnose or treat an illness, injury, condition, disease or its symptoms and that meet accepted standards of medicine."

47.     This is consistent with Cigna's website, which states that deductibles are the "portion of your medical expenses that is not covered by a copay." It states that

14

"[h]ospitalization, surgery and procedures," "[l]ab tests, MRIs, CAT scans, surgical costs, anesthesia, physical therapy, medical devices," and "[m]ental health, chiropractic care and other services" may be applied to an insured's deductible. "Premiums," meanwhile, "are not applied toward the deductible." It does not mention Subcontractors' administrative fees, which are not incurred for medical services, as an item that is applied toward deductibles.

48.     Further, under the plan documents, Cigna's in-network providers are those that have contracted with Cigna "directly or indirectly." Thus, providers who have "indirectly" contracted with Cigna through Columbine or other Subcontractors are Cigna in-network providers.

49.     Ms. Fayeulle and her spouse use a HSA to help pay for their medical care.

50.     Regarding HSAs, the plan documents state, "Money in your HSA can be used only to cover qualified medical expenses for you and your dependents as allowed under federal tax law." They also state that "[a] list of qualified medical expenses is available on Cigna.com/expenses." That website, http://www.cigna.com/qualified-health-care-expenses, states that "'Medical care' expenses as defined by IRS Code, Section 213(d) include amounts paid for the diagnosis, treatment, or prevention of disease, and for treatments affecting any part or function of the body. The expenses must be to alleviate or prevent a physical defect or illness." The website does not list administrative fees charged by Subcontractors or state that they are qualified medical expenses that may be paid from a HSA.

51.     Cigna also provided Ms. Fayeulle and her spouse with a HSA manual explaining the purpose of their account. The manual states that Cigna receives claims from doctors and processes them based on the "HSA-qualified plan deductible, covered expenses and CIGNA

negotiated discounts." In fact, Columbine – *not* Cigna – does this work, yet Cigna's HSA manual treats them as one and the same.

52. As to the handling of the account, the manual states, "If auto claim forwarding was elected, Cigna automatically subtracts the amount ***owed to the doctor*** from your HSA and ***pays the doctor.*** If no auto claim forwarding in place, you have the option to ***pay the doctor*** using your HSA . . . or pay out of pocket." (Emphasis added.) Charges for Columbine's services are not amounts owed "to the doctor" for services, and the administrative fees which are fraudulently collected by Defendants are not paid "to the doctor," but to Columbine or other Subcontractors.

53. The manual also describes how Cigna uses EOBs. It states that "Cigna provides an explanation of benefits or EOB ('receipt') showing: Doctor's fee, Cigna discount, amount billed, amount deducted from the HSA, amount paid to doctor, remaining HSA balance, and what you saved." Once again, the administrative fee that is fraudulently reported as a medical expense is used to inflate the doctor's fee, amount billed, and amount paid to doctor on the EOBs. The manual also assures participants that the EOB "[c]learly shows how and when claims were paid." This is also false for the reasons alleged herein.

54. According to the manual, HSA eligible expenses include the following: "Medical, prescription drug, dental, vision, OTC medications. Medicare premiums, deductibles, coinsurance and copayments. LTC medical expenses and premiums. And Cobra premiums." The manual does not mention as eligible expenses the administrative fees charged by Cigna intermediaries for network administration and claims processing.

55.     On May 8, 2013, Plaintiff Fayeulle received health care services from her chiropractor, Dr. Douglas Brisson. Dr. Brisson had entered into a Columbine Provider Agreement and was thus an in-network provider under Ms. Fayeulle's plan.

56.     Dr. Brisson submitted a claim for benefits under Ms. Fayeulle's plan, through Columbine, on June 27, 2013. Columbine processed the claim on July 31, 2013.

57.     Ms. Fayeulle received an Explanation of Benefits ("EOB") from Cigna for this claim, and also subsequently logged into Cigna's website and downloaded a copy of the EOB.

58.     The EOB that Ms. Fayeulle received from Cigna on or about July 1, 2013 represents that the "Amount Billed" for the services Ms. Fayeulle received was $55.00. The EOB states that the "Covered Amount" for this claim was $55.00, and the "Amount Not Covered" was $0.00. The EOB further states that no discount was applied to the claim. The EOB states that Ms. Fayeulle owed a "co-pay/deductible" of $55.00, which was deducted from her HSA.

59.     The fee schedule in the Columbine Provider Agreement (which was before the 2015 amendment) stated that Columbine would only pay chiropractors $45.00 per office visit. Thus, the additional $10.00 deducted from Ms. Fayeulle's HSA constituted an administrative fee to Columbine, not a payment to a doctor for covered medical services. The EOB that Ms. Fayeulle received misrepresented the nature of this deduction, because it described the amount billed by the provider (Dr. Brisson) as $55.00.

60.     Ms. Fayeulle has received numerous EOBs from Cigna containing the same misrepresentations, each time improperly imposing excessive charges on her or her plan. The dates of services for which Ms. Fayeulle received these fraudulent EOBs were May 15, 2013; May 17, 2013; May 21, 2013; May 24, 2013; and June 18, 2013.

61.     Ms. Fayeulle eventually discovered the fraud and reported it to Cigna. In an effort to avoid her pursuing her grievance against Cigna, it refunded her $60 in administrative fees she had paid, but did not pay her interest on the charges and did not refund the money to her HSA. Cigna also took the position that its relationship with Columbine was "no different than its relationship with other medical providers" and informed Ms. Fayeulle that its procedures would stay in place and in the future it would not reimburse her administrative fees.

### Allegations Regarding Matthew Gentrup

62.     The documents for Mr. Gentrup's plan include numerous statements showing that benefits are limited to medical expenses based on charges from medical providers. They do not refer to administrative fees charged for Subcontractors or state that they are expenses for which insureds can be charged.

63.     For example, the insured's liability for in-network services under the plan documents is limited to co-insurance or deductibles. The plan documents define those expenses in relation to "Covered Expenses." They state, "To receive … Medical Benefits, you and your Dependents may be required to pay a portion of the Covered Expenses for services and supplies. That portion is the Copayment, Deductible or Coinsurance."

64.     The plan documents define "Covered Expenses" as expenses that are incurred for services that are "recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness." "Medically Necessary" services are those that are "required to diagnose or treat an illness, injury, disease or its symptoms," "in accordance with generally accepted standards of medical practice," "clinically appropriate in terms of type, frequency, extent, site and duration," "not primarily for the convenience of the patient, Physician

or other health care provider," and "rendered in the least intensive setting that is appropriate for the delivery of the services and supplies." The plan documents define covered chiropractic expenses as "Charges made for diagnostic and treatment services utilized in an office setting by chiropractic Physicians."

65.     Subcontractors are not "[P]hysicians," and their administrative fees are not "Medically Necessary for the care and treatment of an Injury or a Sickness." Nor are the administrative fees "[c]harges made for diagnostic and treatment services utilized in an office setting by chiropractic Physicians."

66.     As to HRAs, Mr. Gentrup's plan documents state that "[a]ccording to federal law, HRA funds can be used to cover only qualified medical expenses for you and your dependents."

67.     On April 27, 2011, Mr. Gentrup received health care services from his chiropractor, Dr. Greg Crawford. Dr. Crawford provided two services to Mr. Gentrup: a spinal manipulation (code 98940) for which Dr. Crawford billed $36.00, and electrical stimulation (code 97014), for which Dr. Crawford billed $19.00. Dr. Crawford's total bill for the April 27 medical services, therefore, was $55.00. Dr. Crawford submitted the bill to Columbine.

68.     On or about May 11, 2011, Mr. Gentrup received an EOB from CGLIC. The EOB accurately identified Dr. Crawford as the "provider" and correctly reported that he billed $19 for the electrical stimulation he provided to Mr. Gentrup. However, the EOB falsely reported that Dr. Crawford billed $61.00 for the spinal manipulation (instead of his actual fee of $36.00). The EOB reported that the electrical stimulation was not covered under Mr. Gentrup's Plan, and therefore the total "Covered Amount" was $61.00. The EOB also reflected that a total of $61.00

was removed from Mr. Gentrup's HRA. The EOB stated, "[A]fter you have met your deductible, the cost of covered expenses are shared by you and your health plan."

69.     On June 13, 2011, Dr. Crawford received a Compensation Summary from Columbine stating that Dr. Crawford would be paid a total of $45 for the services provided to Mr. Gentrup on April 27, 2011. The Compensation Summary reported that the entire $45 was applied to the patient's deductible, and as such, the entire $45 was paid out of Mr. Gentrup's HRA. The Compensation Summary did not disclose that Defendants had actually charged Mr. Gentrup $45.00 for the spinal manipulation and $16.00 more for their administrative fees.

70.     As the documents reflect, Mr. Gentrup ended up paying $16 more for the services he received than the provider who offered the treatment was paid, a result contrary to what any reasonable insured would anticipate when obtaining insurance. The additional $16.00 deducted from Mr. Gentrup's HRA constituted an administrative fee to Columbine, not a payment to a doctor for covered medical services. The EOB that Mr. Gentrup received misrepresented the nature of this deduction, because it described the amount billed by the provider (Dr. Crawford) as $61.00.

71.     Mr. Gentrup has received other EOBs from Cigna containing the same misrepresentations, each time improperly imposing excessive charges on him or his plan.

72.     Cigna's fraudulent EOBs concealed from Mr. Gentrup the fact that it was charging him for administrative fees in addition to the chiropractor's charges for services. In early January 2012, Mr. Gentrup discovered that these fees were improperly being imposed on him, and, in order to avoid them, switched to paying out of pocket for chiropractic services rather than having his claims processed by Columbine.

***The Cigna-ASH Group Agreement***

73.     Cigna has a similar contractual relationship with ASH Group, in which ASH Group recruits, contracts with, and credentials chiropractors, who agree to accept a discounted rate of reimbursement for the services that they provide to patients insured by Cigna. Like Columbine, ASH Group also receives, processes, and pays or denies benefits claims for the chiropractic services provided by its assembled network of chiropractors to insureds of Cigna. Each provider in ASH Group's network is required to enter into an agreement with it and accept reduced rates.

74.     ASH Group, like Columbine, works with Cigna to charge its administrative fees to insureds and plans who are treated by these providers, and Cigna and ASH Group misrepresent to insureds and plans that they are in fact expenses for covered medical services by the providers. The EOBs that Cigna provides for services from providers in the ASH Group network misleadingly describe the provider as "American Specialty Physi," in order to conceal that ASH Group is charging administrative fees on top of the charges for services by the actual provider.

75.     Although the Subcontractors assume responsibility for administering the claims assigned to them by Cigna, Cigna continues to maintain oversight and control over the process, including how much the providers are paid. For example, Columbine serves in a similar role as a subcontractor for both Cigna and Aetna, Inc., another health insurance company. While Columbine processes the chiropractic claims for both Cigna and Aetna, using its provider network, it pays those providers different amounts depending on what instructions it is given by Cigna or Aetna. Cigna has Columbine pay its in-network providers a flat daily rate for all

chiropractic services, while Aetna has Columbine pay its providers based on a fee schedule setting a specific fee for each separate service that is provided.

## CLASS ALLEGATIONS

76.     Plaintiff Barbara Fayeulle and Plaintiff Matthew Gentrup bring Counts I and II under RICO on their own behalf and on behalf of a class of similarly-situated individuals (the "RICO Class"), defined as:

> All Cigna insureds and self-funded plans who paid administrative fees to one or more of the Subcontractors.

77.     In addition, Ms. Fayeulle brings Count III for breach of fiduciary duty under ERISA on behalf of the Seagate US LLC Open Access Plus Medical Benefits (High Deductible Health Plan 1) and on behalf of a class of similarly-situated plans (the "ERISA Plan Class"), defined as:

> All self-funded plans who retained Cigna to serve as their claims administrator and paid administrative fees to one or more of the Subcontractors.

78.     In addition, Ms. Fayeulle brings Count IV for breach of fiduciary duty under ERISA on her own behalf and on behalf of a class of similarly-situated individuals (the "ERISA Insured Class"), defined as:

> All Cigna insureds who paid administrative fees to one or more of the Subcontractors.

79.     The members of the Classes defined above are so numerous that joinder of all members is impracticable. While the precise number of members in the Classes is known only to Defendants, Defendants are the fiduciaries and administrators of numerous employee welfare

benefit plans, many of which are governed by ERISA, and according to A.M. Best Company, Inc., Cigna services 20 million members worldwide.

80.    There exist issues of fact and law common to all members of the Classes (with the ERISA issues only applicable to the ERISA Classes), including:

    a.   whether Cigna and the Subcontractors participated in the conduct of a RICO enterprise;

    b.   whether Cigna and the Subcontractors conducted the RICO enterprise through a pattern of racketeering activity;

    c.   whether the EOBs sent to the Class and other communications from Cigna and the Subcontractors misrepresented the Subcontractors' administrative fees as covered medical expenses;

    d.   whether Cigna and the Subcontractors conspired to violate RICO;

    e.   what legal duties ERISA imposes on Cigna and the Subcontractors when they charge insureds and plans for the claims administration and network management services that the Subcontractors provide to Cigna; and

    f.   whether Cigna and the Subcontractors' misrepresentation of the Subcontractors' administrative fees as covered medical expenses violates Cigna and the Subcontractors' duties under ERISA.

81.    Plaintiffs' claims are typical of the claims of the other members of the Classes they would represent, and they will fairly and adequately represent the interests of the Classes.

82.    Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation.

83.     The prosecution of separate actions by class members against Defendants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.

84.     By, *inter alia*, misrepresenting intermediaries' administrative fees as covered medical expenses in violation of their fiduciary duties, Defendants have acted on grounds generally applicable to the Classes, rendering declaratory relief appropriate respecting the Classes.

85.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

86.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Classes are readily definable. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. This action presents no difficulties in management that would preclude maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### RICO – Violation of 18 U.S.C. § 1962(c)

87.     Plaintiffs re-allege and incorporate herein by reference the allegations in paragraphs 1 through 86, above.

***Existence of a RICO Enterprise***

88.     Defendants are "persons" as defined in 18 U.S.C. § 1961(3), because they are entities capable of holding a legal or beneficial interest in property.

89.     Cigna and its Subcontractors, including Columbine, have operated together in a coordinated manner in furtherance of a common purpose to collect administrative fees from Cigna insureds and plans by improperly characterizing them as payment for covered medical expenses. Therefore, they constitute an associated-in-fact "enterprise" as defined in 18 U.S.C. § 1961(4). Further, this enterprise is engaged in, and its activities affect, interstate or foreign commerce.

90.     In the alternative, Cigna has conducted the affairs of multiple bilateral association-in-fact RICO enterprises through a pattern of racketeering activity. The enterprises are the bilateral associations in fact of Cigna and each of the Subcontractors, including Columbine. These enterprises are engaged in, and their activities affect, interstate or foreign commerce.

***Conduct or Participation in the Enterprise's Affairs***

91.     Defendants directly and indirectly conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, as specified herein.

***Pattern of Racketeering Activity Detailed***

92.     For the purpose of executing and/or attempting to execute the above-described scheme to defraud, Defendants, in violation of 18 U.S.C. § 1341, caused or conspired to cause matter and things to be delivered by the Postal Service or by private or commercial interstate carrier, and/or receive matter and things from the Postal Service or by private or commercial

interstate carrier. These related acts are done by the Defendants intentionally and knowingly with the specific intent to advance their scheme, or with knowledge that use of the mails will follow in the ordinary course of business, or that such use can be foreseen, even if not actually intended.

93.     For the purpose of executing and/or attempting to execute the above described scheme to defraud, Defendants, in violation of 18 U.S.C. § 1343, transmit, cause to be transmitted and/or receive by means of wire communication in interstate and foreign commerce various writings, signs, and signals. These acts are done by each and every one of the Defendants intentionally and knowingly with specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications will follow in the ordinary course of business, or that such use can be foreseen, even if not actually intended.

94.     The matter and things that Defendants have sent or conspired to have sent via the Postal Service, private or commercial carrier, wire or other interstate electronic media include, but are not limited to:

   a.   Cigna EOBs that uniformly misrepresented the administrative fees for Cigna's Subcontractors as payment for covered medical expenses;

   b.   Compensation Summaries provided by the Subcontractors to providers that concealed the fact that Cigna and the Subcontractors were charging additional money to Cigna's insureds and plans for their administrative fees; and

   c.   Payments by insureds and plans for the administrative fees charged by way of this fraudulent scheme.

95.     Cigna and its Subcontractors' actions are evidence of a preexisting scheme to defraud. Cigna issued false EOBs that caused its insureds and plans to pay the administrative

fees, and its Subcontractors concealed this information in their Compensation Summaries sent to providers. Cigna collects the fees from insureds and plans, and transmits them to the Subcontractors, who have full knowledge that the payments represent their administrative fees and not covered medical expenses. This shows that Cigna and the Subcontractors knowingly designed their conduct to hide the fees from insureds and plans. Defendants' intent to defraud is further demonstrated by Columbine's restructuring of the 2015 provider contract applicable to providers who treat Cigna insureds, in which the fee schedule has been increased by $13, with a new provision added to require the provider to repay Columbine this same amount. The sole purpose of this contractual revision is to attempt to hide the fraudulent scheme from insureds and the Cigna plans.

96.     Through the course of conduct described above, Cigna and the Subcontractors have committed wire fraud and mail fraud thousands or tens of thousands of times over the past several years and thus engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5). Reference to the aforementioned EOBs, Compensation Summaries, and payments establishes the dates of the predicate acts of mail and wire fraud, the participants in each such predicate act, and the relevant facts surrounding each such predicate acts.

97.     Therefore, Defendants have violated 18 U.S.C. § 1962(c) in that they are associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and have conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

98.     The acts of racketeering amount to and pose a threat of continuous criminal activity, because the acts have been and are an ongoing part of Defendants' regular way of doing

business for several years. Acts substantially similar to the predicate acts have been and will be repeated over and over again. The pattern of racketeering activity has been directed towards thousands of persons, including Plaintiffs, and will be directed towards thousands of other insureds, providers, and plans each year.

99.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and the other class members have been injured in their business or property, because the fraudulent scheme has caused them to pay for administrative fees that were improperly characterized as covered medical expenses.

100.    Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek actual damages, treble damages, and costs of suit, including a reasonable attorneys' fee.

**COUNT II**
**RICO – Violation of 18 U.S.C. § 1962(d)**

101.    Plaintiffs re-allege and incorporate herein by reference the allegations in paragraphs 1 through 100, above.

102.    Defendants agreed to participate in the affairs of the enterprise described above by pursuing the criminal objective of misrepresenting Subcontractors' administrative fees as covered medical expenses in order to obtain payment for those fees from Cigna's insureds and plans.

103.    Defendants intentionally conspired and agreed to directly or indirectly conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above.

104.    Therefore, Defendants conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

105.    Plaintiffs and the other class members have been injured in their business or property by reason of Defendants' violations of 18 U.S.C. § 1962(d). Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek actual damages, treble damages, and the cost of suit, including a reasonable attorneys' fee.

**COUNT III**
**ERISA – 29 U.S.C. § 1132(a)(2)**

106.    Plaintiff Fayeulle re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 105, above, with the exception of the allegations specifically relating to RICO.

107.    As a result of Defendants' fiduciary status, ERISA imposes strict fiduciary responsibilities, obligations, and duties on them. These duties include the duty to administer ERISA plans solely for the benefit of the participants and beneficiaries of those plans, 29 U.S.C. § 1104(a)(1)(A), and with the care, skill, prudence, and diligence that a prudent man would exercise in the circumstances, 29 U.S.C. § 1104(a)(1)(B).

108.    As part of their fiduciary obligations, Defendants must issue accurate EOBs and other reports that properly characterize the billed and allowed charges, who the provider is, and the proper amount owed by the insured and/or plan as part of the benefit determination process. They must conform their conduct to a fiduciary duty of loyalty; scrupulously avoid all self-interest, duplicity and deceit; and must fully disclose to, and inform insureds of, all material information, and may not make misrepresentations to insureds.

29

109.   A fiduciary for a plan, like Defendants, is also liable for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if the fiduciary knowingly participates in, or undertakes to conceal, an act or omission of that other fiduciary, knowing that the act or omission is a breach; fails to comply with the administration of its specific responsibilities and enables the other fiduciary to commit a breach; and has knowledge of a breach by the other fiduciary, unless he makes reasonable efforts to remedy the breach. 29 U.S.C. § 1105.

110.   By, among other things, issuing EOBs that improperly characterize administrative fees as expenses for medical services, failing to disclose to insureds and plans the charges for administrative fees, and knowingly participating in, enabling, and failing to correct fiduciary breaches by their fellow Defendants, Defendants are systemically and uniformly breaching their ERISA duties, including their fiduciary duties, to Plaintiff Fayeulle's plan and the ERISA Plan Class.

111.   Defendants' EOBs have concealed material information regarding the nature and purpose of the fees charged to the insureds and plans, to whom the fees are to be paid, for what services the fees are paid, whether the fees are reasonable for the services provided, what services are being purchased and whether they are necessary, and whether such payments involve conflicts of interest or prohibited transactions.

112.   ERISA also prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," 29 U.S.C. § 1106(a)(1)(D), and from "dealing with the assets of the plan in his own interest or for his own

account," 29 U.S.C. § 1106(b)(1). Defendants were and are subject to these prohibitions, which they have violated and are violating by deceptively using plan assets to pay administrative fees owed by Cigna to the Subcontractors.

113.    Pursuant to 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(2), Plaintiff Fayeulle and the ERISA Plan Class seek to correct Defendants' practices of issuing false EOBs, causing funds to transfer plan assets to parties in interest, and self-dealing in the assets of plans, to make good any losses to the self-funded plans that has resulted from each such breach, and to restore to such plans any profits of Defendants which have been made through use of assets of the plans by Defendants, and to subject Defendants to such other equitable or remedial relief as the court may deem appropriate, including but not limited to removal of Defendants as administrators of the ERISA Plan Class's benefits.

## COUNT IV
### ERISA – 29 U.S.C. § 1132(a)(1), (a)(3), and/or 29 U.S.C. § 1104

114.    Plaintiff Fayeulle re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 113, above, with the exception of the allegations specifically relating to RICO.

115.    Plaintiff Fayeulle and the ERISA Insured Class may pursue breach of fiduciary duty claims against Defendants under 29 U.S.C. § 1132(a)(1), (a)(3) and/or 29 U.S.C. § 1104.

116.    As detailed herein, Defendants have violated their fiduciary duties to Plaintiff Fayeulle and the ERISA Insured Class by issuing false EOBs and using plan assets to pay administrative fees owed by Cigna to the Subcontractors. Plaintiff Fayeulle and the ERISA Insured Class are entitled to appropriate equitable relief to address these violations under ERISA, including but not limited to an injunction to preclude Defendants from engaging in the improper

conduct alleged herein, restoration of monetary losses to the plan, a surcharge for the improper gains obtained in breach of that duty**,** and removal of Defendants as administrators of the Class's benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants and request that this Court:

A.    Certify this case as a class action; designate Plaintiffs as class representatives; and designate ZUCKERMAN SPAEDER LLP as class counsel;

B.    Enter judgment against Defendants and in favor of Plaintiffs and the Classes;

C.    Adjudge and decree the acts alleged herein to be unlawful;

D.    Award the RICO Class damages, including interest, in an amount to be determined at trial;

E.    Award the RICO Class threefold damages pursuant to 18 U.S.C. § 1964;

F.    Issue equitable and injunctive relief to remedy Defendants' RICO violations and prevent further violations of that statute;

G.    Issue legal, equitable, and injunctive relief under ERISA to remedy Defendants' past and ongoing violations of ERISA and breaches of fiduciary duty, including but not limited to enjoining further misconduct, requiring Defendants to issue accurate EOBs, restoring of monetary losses to self-insured plans and insureds, including interest, imposing a surcharge for the improper gains obtained in breach of Defendants' duties, and removal of Defendants as administrators of the plans;

H.    Award Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees, as provided by 18 U.S.C. § 1964 and 29 U.S.C. § 1132(g); and

I.    Award such other and further relief as is just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: July 24, 2015

Respectfully submitted,

/s/ Jason M. Knott
Jason M. Knott
Carl S. Kravitz (application for admission forthcoming)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1813
Fax: (202) 822-8106
jknott@zuckerman.com
ckravitz@zuckerman.com

D. Brian Hufford (application for admission forthcoming)
Jason S. Cowart (application for admission forthcoming)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 897-3434
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs Barbara Fayeulle and Matthew Gentrup, on behalf of themselves and all others similarly situated*