# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

---

Civil Action No. 1:15-cv-01581-JLK

---

BARBARA FAYEULLE, MATTHEW GENTRUP, and CAROL A. LIETZ
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CIGNA CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH AND LIFE INSURANCE COMPANY, COLUMBINE CHIROPRACTIC PLAN, LLC d/b/a COLUMBINE HEALTH PLAN, AMERICAN SPECIALTY HEALTH INCORPORATED, and AMERICAN SPECIALTY HEALTH GROUP, INC.,

      Defendants.

---

# CIGNA'S MOTION TO DISMISS PLAINTIFFS'
# SECOND AMENDED COMPLAINT

---

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ........................................................................ 1

**BACKGROUND** ......................................................................................... 3

**ARGUMENT** .............................................................................................. 7

**I.    PLAINTIFFS HAVE NOT PLEADED ANY CLAIMS AGAINST CIGNA INVOLVING "OTHER" SUBCONTRACTOR RELATIONSHIPS (ALL COUNTS)** ................................................. 7

**II.   PLAINTIFFS FAIL TO STATE ANY RICO CLAIM (COUNTS I & II)** ............................................................................................ 10

    A.    Plaintiffs Do Not State a RICO Claim Based on Cigna's Relationship with Columbine or ASH. ....................................... 10

    B.    Plaintiffs Do Not State a RICO Claim Based on Any Other Alleged Enterprise. ................................................................. 14

    C.    Plaintiffs Cannot Raise RICO Claims on Behalf of Their Plans. .............. 16

**III.  THE COMPLAINT FAILS TO ADEQUATELY ALLEGE A BREACH OF FIDUCIARY DUTY (COUNTS III & IV).** ............................. 17

    A.    Cigna's Decisions to Contract With Columbine and ASH Were Not Fiduciary Acts. ...................................................................... 18

    B.    Ms. Fayeulle and Ms. Lietz Lack Standing to Seek Their Requested Relief. ............................................................................. 21

**CONCLUSION** ........................................................................................ 24

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alley v. Aurora Loan Servs. LLC*,
  No. 10-CV-02163-REB-CBS, 2011 WL 3799035 (D. Colo. July 21, 2011),
  *report & recommendation adopted sub nom. Alley v. Aurora Loan Servs.*,
  2011 WL 3799585 (D. Colo. Aug. 26, 2011) ................................................................. 9

*Am. Psychiatric Ass'n v. Anthem Health Plans*,
  50 F. Supp. 3d 157 (D. Conn. 2014)........................................................................... 21

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)..................................................................................................... 12

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
  194 F.3d 1089 (10th Cir. 1999) ................................................................................... 10

*Brooks v. Bank of Boulder*,
  891 F. Supp. 1469 (D. Colo. 1995).............................................................................. 15

*Bryson v. Gonzales*,
  534 F.3d 1282 (10th Cir. 2008) ..................................................................................... 8

*Casey v. Coventry Healthcare of Kan., Inc.*,
  No. 08-0201-CV-W-DGK, 2010 WL 3636140 (W.D. Mo. Sept. 10,
  2010) ............................................................................................................................. 23

*David P. Coldesina, D.D.S. v. Estate of Simper*,
  407 F.3d 1126 (10th Cir. 2005) ................................................................................... 18

*Dawson v. Goldman Sachs & Co.*,
  Civ. A. No. 13-CV-02030-CMA-KMT, 2014 WL 5465127 (D. Colo.
  Oct. 27, 2014)............................................................................................................... 16

*DeLuca v. Blue Cross Blue Shield of Mich.*,
  628 F.3d 743 (6th Cir. 2010) ....................................................................................... 20

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) ......................................................................................... 8

*Felix v. Lucent Techs., Inc.*,
  387 F.3d 1146 (10th Cir. 2004) ................................................................................... 22

ii

*Geddes v. United Staffing All. Emp. Med. Plan*,
    469 F.3d 919 (10th Cir. 2006) ...................................................................... 19

*Gen. Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*,
    Nos. 1:07-CV-01145-DME-KMT, 07-CV-02170, 2009 WL 535780 (D.
    Colo. Mar. 2, 2009) ............................................................................... 10, 11

*Hall v. UNUM Life Ins. Co. of Am.*,
    300 F.3d 1197 (10th Cir. 2002) .................................................................. 23

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ........................................................................................ 13

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) .................................................................. 14, 15

*Ivar v. Elk River Partners, LLC*,
    705 F. Supp. 2d 1220 (D. Colo. 2010) .................................................. 13, 14

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ................................................................... 4, 5

*Lebahn v. Nat'l Farmers Union Unif. Pension Plan*,
    Civil Action No. 15-1065-MLB, 2015 WL 5006177 (D. Kan. Aug. 20,
    2015) ............................................................................................................ 18

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................... 7, 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 7

*In re Luna*,
    406 F.3d 1192 (10th Cir. 2005) .............................................................. 19, 20

*McKinsey v. GMAC Mortg., LLC*,
    No. 13-CV-00084-REB-MJW, 2013 WL 3448483 (D. Colo. July 9,
    2013), *aff'd*, 574 F. App'x 818 (10th Cir. 2014) ........................................ 16

*Mega Concrete, Inc. v. Smith*,
    Civ. A. No. 09-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011)............ 11

*Mehling v. N.Y. Life Ins. Co.*,
    413 F. Supp. 2d 476 (E.D. Pa. 2005) ......................................................... 17

*N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*,
    54 F. Supp. 3d 1189 (D.N.M. 2014) ........................................................................ 13

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005).......................................................................................... 23

*Owen v. Regence Bluecross Blueshield of Utah*,
    388 F. Supp. 2d 1318 (D. Utah 2005)........................................................................ 23

*Pa. Chiropractic Ass'n v. Indep. Hosp. Indemnity Plan, Inc.*,
    802 F.3d 926 (7th Cir. 2015) ..................................................................................... 20

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011)........................................................................................ 8

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................................................... 11

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) .................................................................................. 9

*Saine v. A.I.A., Inc.*,
    582 F. Supp. 1299 (D. Colo. 1984)........................................................................... 16

*Target Corp. v. LCH Pavement Consultants, LLC*,
    No. CIV. 12-1912 JNE/JJK, 2013 WL 2470148 (D. Minn. June 7, 2013) ................ 15

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ..................................................................................... 10

*United States v. Hutchinson*,
    573 F.3d 1011 (10th Cir. 2009) ................................................................................. 14

*Ward v. Utah*,
    321 F.3d 1263 (10th Cir. 2003) ................................................................................. 21

*In re WellNx Mktg. & Sales Pracs. Litig.*,
    673 F. Supp. 2d 43 (D. Mass. 2009) ........................................................................... 8

*Wojdacz v. Blackburn*,
    No. 13-CV-01738-MSK-MJW, 2014 WL 4243798 (D. Colo. Aug. 25, 2014) ........................................................................................................................ 10

**Statutes**

18 U.S.C. § 1962(c) .......................................................................................... 10

18 U.S.C. § 1962(d) .......................................................................................... 10

29 U.S.C. § 1002(7) .......................................................................................... 22

29 U.S.C. § 1132(a)(1)(B) ............................................................................ 22, 23

29 U.S.C. § 1132(a)(3) ................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 8.................................................................................................. 8

Fed. R. Civ. P. 9(b).................................................................................... 2, 15, 16

Fed. R. Civ. P. 12(b)(1) ............................................................................... 1, 21

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 21

Defendants Cigna Corporation, Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (collectively, "Cigna") hereby bring this Motion to Dismiss the Second Amended Complaint filed by Plaintiffs Barbara Fayeulle, Matthew Gentrup, and Carol A. Lietz in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

This case is an improper attempt to transform a straightforward dispute about the calculation of Plaintiffs' cost-sharing responsibilities for chiropractic claims into a sprawling RICO class action.  Plaintiffs allege only that Cigna miscalculated their co-insurance and deductibles when they received care from two chiropractors through Cigna's contract with Defendant Columbine Health Plan ("Columbine") and one chiropractor through Cigna's contract with Defendants American Specialty Health Inc. and American Specialty Group Inc. (together, "ASH").  Such limited allegations do not give these Plaintiffs the right to challenge Cigna's relationships with potentially hundreds of unidentified entities other than Columbine and ASH that are not alleged to have had any involvement whatsoever with Plaintiffs' claims.  At a minimum, Plaintiffs' claims related to unidentified "Subcontractors" should be dismissed, both because Plaintiffs have not alleged any injury traceable to these relationships and thus lack standing, and because Plaintiffs' threadbare allegations regarding "Subcontractors" other than Columbine and ASH fail to satisfy the basic principles of notice pleading.  (*See* § I *infra*.)

---

[1] The remaining Defendants are separately moving to dismiss Plaintiffs' Complaint.  Rather than repeat each of their arguments here, Cigna incorporates them by reference.

Even with respect to Cigna's relationships with Columbine and ASH, Plaintiffs' RICO claims (Counts I & II) should be dismissed.  Plaintiffs accuse Cigna of forming an associated-in-fact RICO enterprise with each of Columbine and ASH, but all that Plaintiffs describe are ordinary commercial relationships that Cigna formed to further its independent goal of controlling costs for plans and customers.  Moreover, Plaintiffs premise their RICO claims on the predicate acts of mail and wire fraud without pointing to any false or misleading statements, especially given the disclosures in Plaintiffs' plan documents and communications.  And Plaintiff Fayeulle cannot satisfy RICO's injury requirement because she was fully compensated for her alleged out-of-pocket losses. (*See* § II.A.)

Plaintiffs' claims that Cigna formed a single, multilateral enterprise with all of its Subcontractors, or multiple bilateral enterprises with each one, fare no better.  Plaintiffs satisfy none of the elements of RICO, including the basic concept that the Complaint must notify Cigna about who participated in the alleged fraudulent schemes and how they functioned together to form an enterprise, let alone the particulars of the alleged predicate acts of fraud consistent with Rule 9(b).  (*See* § II.B.)  And regardless of which RICO theory Plaintiffs proceed under, they cannot do so on behalf of their plans because they have not alleged their plans suffered any injury, nor can plan members pursue RICO claims on an ERISA plan's behalf.  (*See* § II.C.)

Finally, Plaintiffs Fayeulle and Lietz bring two ERISA breach of fiduciary duty claims (Counts III & IV) that fail as well.  As Plaintiffs allege, Cigna's decision to retain

certain entities to assist with claims administration and fees spanned a broad range of plans and customers.  Cigna's decision to contract with entities like Columbine and ASH amounts to a business dealing, not a fiduciary act under ERISA.  (*See* § III.A.) Moreover, because Ms. Fayeulle admits that she was already compensated for any injury she allegedly suffered, and gives no indication that she sought any chiropractic care since then, Ms. Fayeulle lacks standing to seek relief under ERISA.  Ms. Lietz also lacks standing to seek equitable relief because she is no longer a plan participant and has no interest in this case's outcome on behalf of her plan.  (*See* § III.B.)

## BACKGROUND

Cigna is a global health services company that administers claims for self-insured and fully-insured healthcare benefits plans for its clients.  (D.E. 36, Sec. Am. Compl. ("SAC") ¶¶ 7, 17, 19.)  Cigna provides members of plans (Cigna's "customers") with access to a network of providers, who have contracted with Cigna to accept discounted fees in exchange for being part of Cigna's provider network.  (*Id.* ¶ 19.)  The network benefits Cigna's customers because network providers typically agree to accept significantly reduced rates for their services.  (*Id.* ¶¶ 19, 40-41, 47.)  Cigna passes these savings on to plan sponsors and customers in the form of lower premiums, benefit costs, and coinsurance obligations (which are calculated as a percentage of the covered amount of the customer's claim), as well as reduced expenses for customers who have not yet met their deductibles.  (*See, e.g.*, Ex. 1, at 17 (after Plaintiff Fayeulle has met her deductible, her plan covers 90% of charges for chiropractic services from an in-network provider,

and 70% of charges for chiropractic services from an out-of-network provider);  Ex. 2, at 18 (same); Ex. 3, at 36 (once Plaintiff Lietz satisfied her deductible, she would pay "the usual 20% coinsurance" for visiting an in-network provider, "but it will be 20% of a discounted fee.").)[2]

To assemble its provider networks, Cigna contracts directly with individual healthcare providers (e.g., doctors, hospitals, labs) for the provision of many healthcare services.  (SAC ¶ 27.)  Cigna also contracts with entities that arrange for the provision of healthcare services through their own networks of contracted healthcare professionals and/or facilities.  (*Id.* ¶¶ 10, 28-29, 40-41, 47, 56.)  For instance, Cigna has such relationships with Columbine and ASH for chiropractic services.  (*Id.* ¶¶ 40, 47.)  Columbine and ASH each have their own contracted network of chiropractors.  (*Id.* ¶¶ 40-41, 47.)  So, for example, after treating a Cigna customer, a chiropractor contracted with Columbine submits a bill to Columbine, and Columbine then charges Cigna for the customer's claim.  (*Id.* ¶¶ 30-31, 40.)  Cigna in turn reimburses Columbine for the claim based on the in-network rate that Cigna negotiated with Columbine, and Columbine pays the chiropractor based on the rate Columbine negotiated with the chiropractor.  (*Id.* ¶¶ 29,

---

[2] The Complaint selectively cites to provisions of Plaintiffs' respective plan documents.  (SAC ¶¶ 51-54, 56, 58 (describing Ms. Fayeulle's plan documents); *id.* ¶¶ 70-74 (describing Mr. Gentrup's plan documents); *id.* ¶¶ 81-84 (describing Ms. Lietz's plan documents).)  Accordingly, such documents are incorporated by reference and attached to the Declaration of Carrie J. Bodner as Exhibits 1-3.  *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

31, 40-44, 64-67, 75-77.)  Chiropractors contracted with ASH follow a similar process. (*Id.* ¶¶ 46, 48, 50, 85-87.)

Cigna's arrangements with entities like Columbine and ASH are documented in both Cigna's contracts with plan sponsors (called administrative-services-only or "ASO" agreements) and the plan documents that Cigna provides to its customers.  For instance, Cigna's contracts with Plaintiffs' plan sponsors each state that "[c]apitation and fee-for-service charges for various vendors and other providers/arrangers of health care services and/or supplies will be paid as claims for Plan Benefits."  (Ex. 4, at 8; Ex. 5, at 11; Ex. 6, at 11.)[3]  Similarly, Ms. Fayeulle and Mr. Gentrup's plans state that Cigna will determine what expenses the plan covers based on "the [provider's] actual billed charges; except when the provider has contracted directly ***or indirectly*** with Cigna for a different amount," as is the case with chiropractors who indirectly contract with Cigna through Columbine.  (*See* Ex. 1, at 60; Ex. 2, at 54.)[4]  And Cigna Corporation has disclosed these types of relationships in the same public filing that Plaintiffs cite in their Complaint. (SAC ¶¶ 7, 15, 17; Ex. 7, at 6.)

Cigna's network relationships with Columbine and ASH are economically beneficial to all parties involved.  Because Columbine and ASH specialize in arranging for chiropractic services, Cigna benefits from their expertise in locating, evaluating, and

---

[3] Cigna's ASO agreements with Seagate US LLC, the City of Loveland, and Siemens Corporation, pursuant to which Cigna provides services to Plaintiffs' plans, are also central to Plaintiffs' claims and attached to the Declaration of Carrie J. Bodner as Exhibits 4-6.  (SAC ¶¶ 4-6, 19-20); s*ee Jacobsen*, 287 F.3d at 941.

[4] All emphasis is added and internal quotations and citations removed, unless otherwise noted.

recruiting potential chiropractors, as well as from their ability to negotiate the terms and reimbursement rates for such services.   (*Id.* ¶¶ 40, 47.)   Chiropractors also benefit because, by establishing a relationship with Columbine or ASH, they gain access to the members of plans for which Cigna administers claims.   (*Id.* ¶¶ 41, 46-47.)   Finally, Cigna's customers benefit from Cigna's relationships with Columbine and ASH, which efficiently arrange for the provision of covered chiropractic services at lower costs, translating to lower out-of-pocket costs for coinsurance and deductible amounts not covered by the customers' plans.   (*See id.* ¶¶ 40, 47; Ex. 1, at 17; Ex. 2, at 18; Ex. 3, at 36.)

Plaintiffs Barbara Fayeulle and Matthew Gentrup are Cigna customers who saw chiropractors within Columbine's network, and Plaintiff Carol A. Lietz is a former Cigna customer who saw a chiropractor in ASH's network.   (SAC ¶¶ 4-6, 63, 75, 85.)   Plaintiffs allege that Cigna violated RICO and breached its fiduciary duties under ERISA because it calculated Plaintiffs' benefits based on its contracted rates with Columbine or ASH, which were higher than the rates that Plaintiffs' chiropractors agreed to accept from Columbine or ASH.   (*Id.* ¶¶ 66-67, 76-78, 87-88.)   But Plaintiffs do not stop there. Despite making no allegation that any entity other than Cigna, Columbine, and ASH were involved in any of their claims, Plaintiffs claim that Cigna violated RICO and ERISA any time it paid an entity to assist it with administering or processing claims.   (*See, e.g.*, *id.* ¶¶ 1-3, 89-91.)   Plaintiffs' Complaint should be dismissed in its entirety.

## ARGUMENT

## I. PLAINTIFFS HAVE NOT PLEADED ANY CLAIMS AGAINST CIGNA INVOLVING "OTHER" SUBCONTRACTOR RELATIONSHIPS (ALL COUNTS).

Plaintiffs' Complaint seeks to challenge Cigna's relationships with what Plaintiffs call Cigna's "Subcontractors," but the only Subcontractors that Plaintiffs allege had anything to do with their own claims are defendants Columbine and ASH.  (*See* SAC ¶¶ 67, 78, 86-88.)  At a minimum, the Court should reject Plaintiffs' attempt to broaden their claims to encompass Cigna's relationship with all other Subcontractors—along with the far-reaching discovery that such claims would entail—for two reasons.

-Underline-First, Plaintiffs lack constitutional standing to challenge these relationships because they have not alleged that any other entities caused them "concrete and particularized" injury that "affect[ed] the plaintiff[s] in a personal and individual way." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992).  In fact, Plaintiffs do not contend that any Subcontractor other than Columbine or ASH had ***any*** role related to their claims or services whatsoever.  And Plaintiffs' mere allegation that they have been injured by Cigna's relationship with Columbine or ASH does not mean that Plaintiffs "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which [they have] not been subject."  *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Plaintiffs cannot escape this constitutional defect by asserting claims on behalf of a putative class.  "[N]amed Plaintiffs . . . must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class

to which they belong and which they purport to represent." *Id.* at 357.  Having alleged an effect only from Cigna's relationship with Columbine or ASH, Plaintiffs have no stake in pursuing claims relating to any other Subcontractor.  *See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) (plaintiffs who purchased certificates from two of defendant's trusts lack standing to raise claims relating to six of defendant's other trusts because they "have no stake in establishing liability as to misconduct involving the sales of th[e] certificates" that they did not purchase); *In re WellNx Mktg. & Sales Pracs. Litig.*, 673 F. Supp. 2d 43, 55 (D. Mass. 2009) ("As none of the named plaintiffs is alleged to have purchased NV, the claims involving NV must be dismissed.").[5]

Second, Plaintiffs' attack on Cigna's relationships with unnamed Subcontractors does not satisfy the minimal requirements of notice pleading.  *See Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008) (Rule 8 ensures that "defendants know the actual grounds of the claim against them, and can therefore prepare a defense" and allows courts to "avoid [] ginning up the costly machinery associated with . . . discovery . . . on the basis of a largely groundless claim.").  Here, while Plaintiffs claim that Cigna has "colluded" "for years" with "Subcontractors," Plaintiffs identify only two by name (Columbine and ASH) and allege injuries traceable to only those two.  (*See, e.g.*, SAC

---

[5] *See also Easter v. Am. W. Fin.,* 381 F.3d 948, 961-62 (9th Cir. 2004) ("Here, no named plaintiff can trace the alleged injury in fact—payment of usurious interest rates—to all of the Trust Defendants, but only to the Trust Defendant that holds or held that plaintiff's note.  As to those trusts which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and lack standing.").

¶¶ 1, 28, 39-40, 47, 67, 78, 86-88.)  At the same time, Plaintiffs define "Subcontractors" so broadly as to include any entity "that Cigna has retained to assist it in processing and administering health care claims."  (*Id.* ¶ 1; *see also id.* ¶¶ 89-91 (defining three subclasses without any time limitations).)  This definition could sweep in almost any entity that Cigna contracts with, from the hospitals that bill on behalf of their staff for services provided to Cigna's customers to the IT vendors that have helped Cigna set up electronic systems to process the hundreds of millions of claims that it annually receives.

Based on the face of Plaintiffs' Complaint, Cigna therefore has no way of knowing which of its contractual relationships Plaintiffs seek to challenge, or even how far back to look.  Plaintiffs' claims challenging Cigna's relationships with unnamed Subcontractors cannot stand.  *Cf. Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (finding that where plaintiffs' allegations "are so general that they ***encompass a wide swath of conduct, much of it innocent***, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."); *Alley v. Aurora Loan Servs. LLC*, No. 10-CV-02163-REB-CBS, 2011 WL 3799035, at *9 (D. Colo. July 21, 2011) (plaintiff failed to provide fair notice where "both [defendant] and the court are left to guess at the identity . . . of the 'Agents' who purportedly made the misrepresentations in question."), *report & recommendation adopted sub nom. Alley v. Aurora Loan Servs.*, 2011 WL 3799585 (D. Colo. Aug. 26, 2011).

## II.     PLAINTIFFS FAIL TO STATE ANY RICO CLAIM (COUNTS I & II).

To state a civil claim based on RICO § 1962(c) against Cigna, Plaintiffs must allege that Cigna "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *See Wojdacz v. Blackburn*, No. 13-CV-01738-MSK-MJW, 2014 WL 4243798, at *13 (D. Colo. Aug. 25, 2014) (quoting *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999)).  Plaintiffs fail to do so for multiple reasons.[6]

### A.     Plaintiffs Do Not State a RICO Claim Based on Cigna's Relationship with Columbine or ASH.

Plaintiffs' central RICO claim is that Cigna formed bilateral, associated-in-fact enterprises with Columbine and ASH, respectively.  (SAC ¶ 103.)  But Plaintiffs' Complaint does not allege the existence of any illicit enterprise; it describes ordinary commercial relationships through which Cigna pursued its independent goal for contracting with Columbine and ASH:  controlling costs for plan sponsors and customers through Columbine and ASH's discounted rates.  (SAC ¶¶ 19, 28, 40, 47.)  RICO does not outlaw such interactions.  *See, e.g.*, *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (regular communications between entities in a service contract "show[] only that the defendants had a commercial relationship, not that they had joined together to create a

---

[6] Because Plaintiffs have not stated a RICO claim under § 1962(c), their conspiracy claim under § 1962(d) also fails.  *See BancOklahoma*, 194 F.3d at 1103 (RICO conspiracy claim fails without viable claim under § 1962(a)-(c)); *Gen. Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, Nos. 1:07-CV-01145-DME-KMT, 07-CV-02170, 2009 WL 535780, at *24 (D. Colo. Mar. 2, 2009) (dismissing conspiracy claim for failure to allege underlying § 1962(c) violation).

distinct entity for purposes" of the allegedly wrongful activity); *Gen. Steel Domestic*, 2009 WL 535780, at *21 (dismissing RICO claims for failure to allege an enterprise where allegations describe the relationship "of a purchaser and a provider of services," not entities that "function[ed] as a group or a continuing unit").

Plaintiffs similarly have not alleged that Cigna participated or conducted the affairs of any RICO enterprise.  *See Gen. Steel Domestic*, 2009 WL 535780, at *22 (to satisfy RICO, plaintiffs must plead that the defendant "participated in the operation or management of the enterprise," which requires that the defendant had "some part in *directing* an enterprise's affairs.") (emphasis in original; quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)).   Again, Plaintiffs allege only that Cigna contracted with Columbine and ASH to control costs, which Plaintiffs admit Cigna does independent of any alleged RICO scheme.  (SAC ¶ 19.)  Such allegations thus show only that Cigna was conducting its "*own* affairs," not "the enterprise's affairs," which is not enough to state a RICO claim.  *See Reves*, 507 U.S. at 185; *Mega Concrete, Inc. v. Smith*, Civ. A. No. 09-4234, 2011 WL 1103831, at *10 (E.D. Pa. Mar. 24, 2011) (where pleaded facts described activities consistent with a typical contracting relationship, complaint failed to support a reasonable inference that defendants participated in the affairs of the enterprise, "as opposed to simply their own ostensibly legitimate business affairs.").

Plaintiffs also fail to plead that Cigna committed any predicate act in support of the purported RICO schemes.  Plaintiffs claim that Cigna committed mail and/or wire fraud because its Explanations of Benefits ("EOBs") "uniformly misrepresented the

administrative fees for Cigna's Subcontractors as payment for covered medical expenses." (SAC ¶ 107.) But Plaintiffs fail to identify anything false or misleading about these communications, including that Cigna misrepresented that it covered only what Plaintiffs narrowly define as their "medical expenses," as opposed to administrative or any other expenses.

Instead, Plaintiffs allege only that their EOBs improperly based the "Amount Billed" or "Covered Amount" on Columbine or ASH's contracted amounts with Cigna, rather than the amounts that their treating chiropractors billed Columbine or ASH. (SAC ¶¶ 66-67, 76-78, 87-88.) But Ms. Fayeulle and Mr. Gentrup's plans both explain that Cigna will determine "Covered Expenses" based on their chiropractor's "charges," which the plans disclose are not the chiropractor's "actual billed charges" where the "provider has contracted directly *or indirectly* with Cigna for a different amount." (Ex. 1, at 27, 33, 60; Ex. 2, at 23, 30, 54.) And Ms. Lietz admits that her EOB disclosed that the claim was "for services provided by Amer Spec Hlth Cleaingh," and does not claim that ASH billed Cigna or received from Cigna anything other than the $127.28 reflected on the EOB. (SAC ¶¶ 86-87.) In light of these disclosures, Plaintiffs cannot plausibly claim that Cigna's EOBs misrepresented how Cigna paid Plaintiffs' claims.[7]

---

[7] Nor can Plaintiffs premise any fraud claims on the purported misrepresentations made in Compensation Summaries or remittance statements that Columbine and ASH sent to their respective contracted providers (and which Plaintiffs do not claim to have received or relied upon). (SAC ¶¶ 35, 77, 87-88, 107-110.) The Complaint does not allege that the statements misled providers who received them in any way, let alone that these statements injured *Plaintiffs*. (*See id.*) And any alleged misrepresentations in those documents, even if relayed by ASH or Columbine providers to Plaintiffs, are too remote to satisfy RICO's causation requirement. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a

Similarly, the ASO agreements governing Cigna's relationship with Plaintiffs' plans explicitly stated that "[c]apitation and fee-for-service charges for various vendors and other providers/arrangers of health care services and/or supplies **will be paid as claims for Plan Benefits**," (Ex. 4, at 8; Ex. 5, at 11; Ex. 6, at 11), and Cigna Corporation's public filings disclose that Cigna entities may rely on these types of relationships when administering claims. (*See* Ex. 7, at 6.) Plaintiffs thus cannot claim that Cigna misled Plaintiffs' plans by processing their claims using Columbine's or ASH's charges, which alone warrants dismissal of the RICO claims Plaintiffs try to raise on their plans' behalves.

Finally, Ms. Fayeulle's RICO claim fails for the independent reason that she has not pleaded she suffered the "concrete financial loss" necessary to satisfy RICO's injury requirement. *See Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232 (D. Colo. 2010) (stating that RICO injury is "not merely injury to a valuable intangible"; collecting cases). Ms. Fayeulle admits that Cigna refunded her all of the allegedly improper administrative fees she paid. (*See* SAC ¶ 69.) And Cigna's alleged failure to "pay her interest on the [refunded] charges" or "refund the money to her HSA" (*id.*) are not the

---

court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.,* 54 F. Supp. 3d 1189, 1242-43, 1245-46 (D.N.M. 2014) (dismissing RICO claims premised on misrepresentations made to third parties for lack of standing where misrepresentations did not directly cause plaintiff's claimed injury); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 2 (2010) ("A link that is too remote, purely contingent or indirec[t] is insufficient.").

types of concrete financial loss that RICO requires.  *See Ivar*, 705 F. Supp. 2d at 1232 (holding a lost investment bargain is not an injury to property under RICO).

**B.    Plaintiffs Do Not State a RICO Claim Based on Any Other Alleged Enterprise.**

Plaintiffs do not just allege that Cigna entered into RICO enterprises with Columbine and ASH; Plaintiffs allege that Cigna entered into a single, multilateral enterprise including every Subcontractor.  (SAC ¶¶ 102-103.)  But to plead the existence of an associated-in-fact enterprise, Plaintiffs must allege not only that "members of the group . . . share a common purpose, [but] also . . . evidence of interpersonal relationships aimed at effecting that purpose—evidence that the members of the group have joined together to advance a certain object."  *See United States v. Hutchinson*, 573 F.3d 1011, 1021-22 (10th Cir. 2009) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

Plaintiffs, in contrast, do not even identify the vast ring of all "Subcontractors" who they allege participate in the purported association-in-fact, let alone explain how the various components function as a whole.  (SAC ¶¶ 102, 111.)  Court after court has rejected much more fleshed out alleged enterprises than these on the basis that the plaintiffs, like Plaintiffs here, failed to "plausibly imply concerted action[,] as opposed to merely parallel conduct."  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (allegations that broker entered into similar agreements with several insurers, and that the insurers knew of the identity of the other insurers and the terms of the agreements, did not imply concerted action and thus did not support the inference that the insurers "associated together for a common purpose of engaging in a course of

14

conduct."); *Target Corp. v. LCH Pavement Consultants, LLC*, No. CIV. 12-1912 JNE/JJK, 2013 WL 2470148, at *5 (D. Minn. June 7, 2013) (dismissing RICO claim for failure to plead an enterprise among all defendants, where the complaint alleged only bilateral relationships between defendant LCH and various paving contractors, without alleging any relationships among the contractors).

Plaintiffs alternatively allege that Cigna formed a series of bilateral associated-in-fact enterprises with each Subcontractor. But here, too, Plaintiffs plead no facts to support such enterprises' existence, including the names of any of Cigna's alleged partners other than Columbine and ASH. Nor do Plaintiffs claim to have suffered any injury to property caused by these purported bilateral enterprises with the unnamed Subcontractors. And just like its allegations of the Cigna-Columbine and Cigna-ASH enterprises, Plaintiffs do not differentiate these alleged bilateral enterprises from ordinary commercial relationships. Indeed, the only allegation that Plaintiffs offer to tie Cigna and these entities to a RICO enterprise is the unremarkable fact that they accept "administrative fees" in exchange for their services. This threadbare allegation is not enough. *See In re Ins. Brokerage*, 618 F.3d at 369 (a RICO defendant "should not be put to the expense of big-case discovery on the basis of a threadbare claim").

Just as fatal to their RICO claims, Plaintiffs base the alleged violations on the predicate acts of mail and wire fraud but do not describe these acts with the particularity that Rule 9(b) requires. *See Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1476 (D. Colo. 1995) (Rule 9(b)'s heightened pleading standard requires plaintiffs to "set forth the

time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof."); *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1306 n.5 (D. Colo. 1984) ("[A] charge of fraud is a serious matter with attendant consequences to a person's reputation and goodwill.  No one should be subject to such harm unless the accuser makes specific allegations.").  In fact, other than a handful of claims involving Columbine and ASH, Plaintiffs have not identified any specific communications involving the unnamed Subcontractors, let alone the detail necessary to comply with Rule 9(b).[8]  *See Dawson v. Goldman Sachs & Co.*, Civ. A. No. 13-CV-02030-CMA-KMT, 2014 WL 5465127, at *8 (D. Colo. Oct. 27, 2014) (dismissing RICO claims where complaint failed to specify the "times, places, and content of the false representation beyond very general statements about the subject of the calls or letters," and did not "contain specific details as to the identity of the party making the false communications"); *Saine*, 582 F. Supp. at 1306 n.5 ("RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon.").

## C.    Plaintiffs Cannot Raise RICO Claims on Behalf of Their Plans.

In addition to seeking to assert their individual RICO claims, Plaintiffs seek to raise RICO claims on behalf of their respective plans.  Not one Plaintiff, however, actually alleges that his or her plan paid any money as a result of the purported frauds;

---

[8] Plaintiffs' indiscriminate grouping of three entities as "Cigna" also fails to satisfy Rule 9(b), regardless of the type of alleged enterprise.  *McKinsey v. GMAC Mortg., LLC*, No. 13-CV-00084-REB-MJW, 2013 WL 3448483, at *12 (D. Colo. July 9, 2013) (allegations of misrepresentations that referred to defendants collectively failed to meet Rule 9(b)), *aff'd*, 574 F. App'x 818 (10th Cir. 2014).

instead, Plaintiffs claim that they individually paid all out-of-pocket expenses. (SAC ¶¶ 66, 76, 87-88.) As a result, Plaintiffs have not alleged that any of their plans suffered an injury to business or property, and Plaintiffs cannot raise RICO claims on their respective plans' behalves.

Ms. Fayeulle and Ms. Lietz also cannot raise RICO claims on behalf of their employers' plans for the independent reason that ERISA allows no such claim. ERISA § 502(a)(3) "provides a number of specific civil enforcement mechanisms, by which ERISA participants may vindicate their interests under the statute. . . . To read additional remedies into the statute . . . would be inconsistent with Congress' intention that ERISA provide a comprehensive regulatory framework for employee benefit plans." *Mehling v. N.Y. Life Ins. Co.*, 413 F. Supp. 2d 476, 481 (E.D. Pa. 2005) (citing *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 147 (1985) (refusing to imply additional remedies and stating that "[w]e are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.")). Congress did not include claims under RICO on the list of remedies that a plan may pursue, and thus neither Ms. Fayeulle nor Ms. Lietz can derivatively pursue a RICO claim on behalf of their plan or former plan, respectively. *See id.* (dismissing derivative RICO claims).

## III. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE A BREACH OF FIDUCIARY DUTY (COUNTS III & IV).

Ms. Fayeulle and Ms. Lietz assert breach of fiduciary claims under ERISA individually and on behalf of their plan and former plan, respectively, based on Cigna's contractual relationships with Columbine and ASH—relationships that allowed

Ms. Fayeulle and Ms. Lietz to receive services from their providers at discounted, in-network rates.  (SAC ¶¶ 40, 47, 63, 85.)  While Ms. Fayeulle and Ms. Lietz may not like this arrangement, they have failed to explain why their discontent warrants relief under ERISA for the following two independent reasons.

### A.  Cigna's Decisions to Contract With Columbine and ASH Were Not Fiduciary Acts.

Not every decision by a fiduciary invokes a fiduciary duty.  So regardless of whether Plaintiffs allege that Cigna was acting as a fiduciary in some capacity for them or their plans, they can state a claim for breach of fiduciary duty only if Cigna had a fiduciary duty when performing the acts on which Plaintiffs base their claim.  *See David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1131-32 (10th Cir. 2005) (finding that "the court must conduct a function analysis" when determining whether a defendant was acting in a fiduciary capacity because "parties are only plan fiduciaries to the extent they are performing one of the functions identified in the definition").  Plaintiffs have not met this test.

Plaintiffs' core complaint is that Cigna did not properly calculate their cost-sharing responsibilities when processing their claims.  But the law is clear that such "ministerial activities" as "processing claims" or "calculating benefits" are not fiduciary acts that might give rise to a breach of fiduciary duty claim under ERISA § 502(a)(3).  *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, Civil Action No. 15-1065-MLB, 2015 WL 5006177, at *2 (D. Kan. Aug. 20, 2015) ("Benefits calculations and processing claims for benefits are not considered fiduciary responsibilities under ERISA.") (citing 29

C.F.R. § 2509.75–8 (listing "[c]alculation of benefits" and "[p]rocessing of claims" as "purely ministerial functions")).[9]

Nor can Plaintiffs claim that Cigna owed them a fiduciary duty when it decided to contract with Columbine and ASH for access to their respective chiropractic networks in exchange for the customers paying Columbine or ASH's contracted rates with Cigna for chiropractic services.  (SAC ¶¶ 1, 28-32, 40, 66-67, 86-88.)  As the Tenth Circuit has found, while a plan administrator may owe a fiduciary duty over conduct that "constitutes management or administration of the plan," it does not for "merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties," even though the fiduciary may have "personally benefitted" from the challenged decisions.  *See In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005) (employer's decision to use its limited funds to pay other business expenses rather than to make contributions to employee benefit funds was a business decision, not a breach of fiduciary duty).

As an initial matter, Plaintiffs offer no well-pleaded facts that Cigna was a plan administrator, instead focusing on its role as a "claims administrator."  *See Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 931 (10th Cir. 2006) (plan administrator remains "legally responsible both for its own decisions and also for decisions made by its agent" even though it may delegate plan responsibilities to a claims administrator).  But even putting that crucial distinction aside, Plaintiffs' allegations

---

[9] To the extent Plaintiffs allege that Cigna is liable for breach of fiduciary duties by Columbine or ASH (*see* SAC ¶ 122), Count III must also be dismissed because Plaintiffs have likewise not alleged that either Subcontractor was acting as a fiduciary.

show that Cigna's contracts with Columbine and ASH did not result from decisions specific to Plaintiffs' plans, or any other individual plan for that matter; they were business decisions that Cigna made for all chiropractic claims that it processed.

As the Sixth Circuit has found, such system-wide arrangements for the provision of network services do not implicate any fiduciary duties, even if the arrangement adversely affects an individual plan.  In *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743 (6th Cir. 2010), the plaintiffs claimed that a Blue Cross Blue Shield entity breached its fiduciary duties when renegotiating rate agreements with various hospitals by agreeing to increase its rates for certain plans (including the plaintiffs') in exchange for decreasing rates for others.  628 F.3d at 746.  The district court granted summary judgment against the plaintiffs, and the Sixth Circuit affirmed, finding that Blue Cross was not acting as a fiduciary when it renegotiated rates for its plans.  *Id.* at 747.  As the court explained, "[Blue Cross'] business dealings were not directly associated with the benefits plan at issue [] but were generally applicable to a broad range of health-care consumers."  *Id.*  The Seventh Circuit similarly relied on the legal distinction between an insurer's role in entering into network provider contracts and administering healthcare plans under ERISA, noting that "the network contracts cover all dealings with the insurer rather than the administration of a particular plan."  *Pa. Chiropractic Ass'n v. Indep. Hosp. Indemnity Plan, Inc.*, 802 F.3d 926, 292 (7th Cir. 2015).

Just so with the alleged conduct of which Plaintiffs now complain, which was not specific to the "management or administration of ***the plan***," *see In re Luna*, 406 F.3d at

1207, but rather a business decision that Plaintiffs plead applied to all plans for which Cigna administered claims. *See Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F. Supp. 3d 157, 169-70 (D. Conn. 2014) (dismissing ERISA fiduciary duty claims on Rule 12(b)(1) and (6) grounds; allegations regarding insurer's setting of reimbursement rates and policies on a system-wide basis described a business decision, not an exercise of fiduciary responsibility with respect to a particular health plan). Ms. Fayeulle and Ms. Lietz have thus failed to identify a fiduciary duty under ERISA that Cigna breached.

### B. Ms. Fayeulle and Ms. Lietz Lack Standing to Seek Their Requested Relief.

Ms. Fayeulle and Ms. Lietz seek a wide range of equitable relief through their ERISA claims, but neither has pleaded she has standing to do so. As an initial matter, Ms. Fayeulle admits that she was compensated for any administrative fees that she paid (SAC ¶ 69), precluding any claim for restitution. Moreover, the only harm that Ms. Fayeulle alleges she suffered dates back to 2013 (*id.* ¶¶ 63, 68); Ms. Fayeulle gives no indication that she has since sought services from a Columbine-contracted provider, or that she plans to do so in the future. Ms. Fayeulle has thus pleaded no immediate threat of future harm, precluding her from seeking injunctive relief to remedy such hypothetical harm. *See Ward v. Utah*, 321 F.3d 1263, 1269 (10th Cir. 2003) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Ms. Lietz's allegations also show that she cannot seek the relief that she requests for herself or her former plan.  Ms. Lietz has not pleaded she has a claim for unpaid benefits under ERISA § 502(a)(1)(B), as she does not seek the payment of benefits on her own behalf, but rather she requests the return of allegedly improperly withheld money to her former plan.  (SAC ¶ 129); *see also Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1162 (10th Cir. 2004) ("The nature of [Plaintiffs'] claim is not that Defendants improperly withheld vested benefits owed to them, but rather that they should receive damages for the fraud they suffered.").

Such relief is also not available to Ms. Lietz under section 502(a)(3) as a former plan participant.  ERISA allows "participants" to bring breach of fiduciary claims under section 502(a)(3), which includes former employees, only when the employees have "either a reasonable expectation of returning to covered employment or a colorable claim for vested benefits."  *Felix*, 387 F.3d at 1161-62; *see also* 29 U.S.C. § 1002(7).  Ms. Lietz admits that her coverage under a Cigna plan terminated in 2013 (SAC ¶ 6), and she has not pleaded any facts to suggest she reasonably expects that she will become a participant in a Cigna plan in the future, nor has she made a colorable claim for benefits under the terms of her former plan, as noted above.  *See Felix*, 387 F.3d at 1162 (former employees who did not reasonably expect to return to their former employment, and did not claim they were entitled to benefits, but rather, sought damages related to defendants' alleged misrepresentations, were not participants under ERISA and lacked standing to bring their 502(a)(1)(B) claims).

Ms. Lietz also lacks standing to assert ERISA claims for prospective equitable relief for the independent reason that, as a former plan member with no threat of future harm, she will not benefit from such relief. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (former plan member "no longer had an interest in seeking the equitable relief available under § 502(a)(3)."); *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1207 n.5 (10th Cir. 2002) ("[Plaintiff] Hall's death has rendered her claims for declaratory and injunctive relief regarding future disability benefits moot. We therefore vacate the portion of the district court's decision that granted her such relief."). Ms. Lietz alleges that she was harmed only in 2012, and she has not been enrolled in a Cigna plan since 2013.   (SAC ¶¶ 6, 85-88.)   Without allegations that she expects to become eligible to receive benefits from a Cigna plan in the future, Ms. Lietz has failed to show that she faces a threat of any future harm from Cigna's relationship with ASH or any other Subcontractor.  Ms. Lietz thus lacks standing to seek prospective relief.  *See Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1328 (D. Utah 2005) (holding former participant lacked standing to seek injunctive and declaratory relief under 502(a)(3); noting in dicta that because plaintiff "is no longer insured under [defendant's] plan it is unlikely she could make [a] showing" of a "good chance of being likewise injured in the future."); *Casey v. Coventry Healthcare of Kan., Inc.*, No. 08-0201-CV-W-DGK, 2010 WL 3636140, at *3-4 (W.D. Mo. Sept. 10, 2010) (citing *Lyons*, 461 U.S. at 105 (plaintiff must demonstrate future harm to have equitable standing)) (holding that putative class representative lacked standing to seek injunctive or

declaratory relief from Coventry's practices for collecting plan coinsurance and copayments because she was no longer a member of the ERISA plan).

## CONCLUSION

For the reasons stated above, Plaintiffs' Complaint should be dismissed in its entirety.  Based upon the nature of the Complaint's defects, the undersigned do not believe that the deficiencies in the allegations can be corrected by amendment.

DATED this 14th day of January, 2016.

Respectfully submitted,

By: */s/ Warren Haskel*_____

Edwin P. Aro
ARNOLD & PORTER LLC
370 Seventeenth Street, Suite 4400
Denver, CO 80202
Telephone: 303.863.1000
ed.aro@aporter.com

Joshua B. Simon
Warren Haskel
Carrie J. Bodner
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: 212.446.4800
Facsimile: 212.446.4900
joshua.simon@kirkland.com
warren.haskel@kirkland.com
carrie.bodner@kirkland.com

*Counsel for Defendants Cigna Corporation,*
*Connecticut General Life Insurance Co., and*
*Cigna Health and Life Insurance Co.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2016, I filed and served the foregoing Motion to Dismiss Plaintiffs' Second Amended Complaint via CM-ECF, which will send notification of such filing to all counsel of record.

*/s/ Warren Haskel*
Warren Haskel