**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01581-JLK

BARBARA FAYEULLE, MATTHEW GENTRUP, and CAROL A. LIETZ, on behalf of themselves and all others similarly situated,

        Plaintiffs,

   v.

CIGNA CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH AND LIFE INSURANCE COMPANY, COLUMBINE CHIROPRACTIC PLAN, LLC d/b/a COLUMBINE HEALTH PLAN, AMERICAN SPECIALTY HEALTH INCORPORATED, and AMERICAN SPECIALTY HEALTH GROUP, INC.,

        Defendants.

**AMERICAN SPECIALTY HEALTH, INCORPORATED AND AMERICAN SPECIALTY HEALTH GROUP, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND JOINDER IN CIGNA'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF ALLEGATIONS .......................................................... 4

III.   STANDARD OF REVIEW .................................................................... 5

IV.    ARGUMENT ........................................................................................ 6

       A.    Plaintiffs Fayeulle And Gentrup Do Not State A Claim Against ASH ....... 6

       B.    Lietz Fails To State RICO Claims (Counts I and II) .................................... 6

             1.    Lietz Has Not Pled The Elements Of A RICO Claim ...................... 6

                   a.    Lietz' RICO Allegations Do Not Satisfy Rule 9(b) .............. 6

                   b.    Lietz Fails To Allege A Criminal Enterprise And
                         Operation Or Management Thereof ...................................... 9

                   c.    There Is No Pattern Of Racketeering Activity Alleged ....... 10

             2.    Lietz' RICO Conspiracy Claim Falls With Her RICO Claim ........ 11

       C.    Lietz Fails To State ERISA Claims (Counts III And IV) Against
             ASH ....................................................................................................... 11

             1.    Lietz Lacks Standing To Bring Her ERISA Claims ...................... 12

                   a.    Lietz Is Not A Plan Member And Therefore Lacks
                         Standing To Seek Prospective Equitable Relief ................. 12

                   b.    Lietz Lacks Standing To Seek Relief On Behalf of Her
                         ERISA Plan (Count III) ...................................................... 13

             2.    Lietz Has Not Alleged That ASH Did Anything Wrong ............... 15

             3.    Lietz' Fiduciary Claims Under ERISA Fail .................................. 17

                   a.    As Lietz Characterizes ASH's Functions, ASH Is Not
                         A Fiduciary ........................................................................ 17

                   b.    Lietz Fails To Plead That ASH Breached A Fiduciary
                         Duty Under Either ERISA Claim ......................................... 20

             4.    Count IV Fails To State a Claim Under 502(a)(1)(B) Because
                   Lietz Does Not Seek Benefits And It Is Not Otherwise Viable ...... 23

             5.    ASH Is Not A Proper Defendant For The Injunctive Relief .......... 24

V.     CONCLUSION ................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 (10th Cir. 2007) ............................................ 5

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ................................ 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 16

*Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir. 1974) .................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 5, 11

*Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144 (10th Cir. 1998) ............ 9

*Chase v. Bank of N.Y.*, No. 13-cv-02265-RBJ-KMT, 2014 WL 1797473, at *7-8
    (D. Colo. May 6, 2014) ................................................................................................ 7

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994) ............................................ 12

*Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x. 120 (3d Cir. 2013) ............................ 20

*David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005) ..... 18, 19

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) .............................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167 (2000) ................ 12

*Gen. Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, No. 07-CV-
    02170, 2009 WL 535780 (D. Colo. Mar. 2, 2009) ........................................................ 9

*George v. Urban Settlement Servs.*, No. 13-cv-01819-PAB-KLM, 2014 WL 4854576
    (D. Colo. Sept. 30, 2014) ............................................................................................ 9

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123
    (9th Cir. 2006) ............................................................................................................ 14

*Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010) ............................................................ 8

*Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.ed 1220 (10th Cir. 2012) ........................ 5

*In re Luna*, 406 F.3d 1192 (10th Cir. 2005) ...................................................................... 19

*Kendall v. Empls. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009) ...................... 22

*Lacano Invs., LLC v. Balash*, 765 F.3d 1068 (9th Cir. 2014) .......................................... 16

*Lee v. Burkhart*, 991 F.2d 1004 (2d Cir. 1993) ................................................................ 22

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ................................................................ 20

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598 (6th Cir. 2007) .............. 13, 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................................... 6

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ................................................ 13

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page(s)**

*McApline v. Thompson*, 187 F.3d 1213 (10th Cir. 1999) .................................................. 12

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ............................................ 7

*Munoz v. Prudential Ins. Co. of Am.*, 633 F. Supp. 564 (D. Colo. 1986) ......................... 19

*OCD Telluride LLC v. Blaney McMurtry LLP*, 2016 WL 153120 (D. Colo. Jan. 13, 2016) .................................................................................................................................... 5

*Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318 (D. Utah 2005) .. 13

*Raines v. Byrd*, 521 U.S. 811, 818 (1997) ........................................................................ 17

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011) ....................................................... 21

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................. 10

*Roe v. Empire Blue Cross Blue Shield*, 589 F. App'x 8 (2d Cir. 2014) ............................ 22

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ................................................................. 10

*Torwest DBC, Inc. v. Dick*, 628 F. Supp. 163 (D. Colo. 1986) ......................................... 10

*U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261 (7th Cir. 1990) ............. 11

*US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312 (4th Cir. 2010) ........................... 10

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ..................................................................... 17

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994) ...................... 7

*Ward v. Utah*, 321 F.3d 1263 (10th Cir. 2003) ................................................................. 12

*Wesson v. Jane Phillips Med. Ctr. & Affiliates Emp. Grp. Healthcare Plan, Premium Plan*, 822 F. Supp. 2d 1170 (N.D. Okla. 2011) ............................................................ 20

*Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2001) ...................................................................................... 11

*WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174 (10th Cir. 2012) .......... 12

## Statutes

18 U.S.C. § 1964(c) .............................................................................................................. 8

29 C.F.R. § 2509.75-8 ........................................................................................................ 19

29 U.S.C. § 1002(21)(A) .................................................................................................... 18

29 U.S.C. § 1132 .......................................................................................................... 13, 23

29 U.S.C. §§ 1106 .............................................................................................................. 20

29 U.S.C. §1104 ................................................................................................................. 22

29 U.S.C. §1105 ................................................................................................................. 21

**TABLE OF AUTHORITIES**
(*cont'd*)

Page(s)

**Rules**

Fed. R. Civ. P. 12(b)(1) & (6) ............................................................................. 5

## I.  <u>INTRODUCTION</u>

Carol Lietz fails to allege a single viable claim against ASH.[1] As Lietz openly acknowledges, her claims are based on alleged misstatements found in the Explanation of Benefit ("EOB") forms Cigna—not ASH—sent to her. Lietz does not allege that ASH ever communicated with her, had a contract with her, or received money from her (or from any ERISA plan). Further, Lietz does not allege that ASH had any role in determining the financial responsibility that Cigna ascribed to Lietz in the challenged EOBs, or the amount that Cigna charged any ERISA plan. Indeed, where Lietz alleges that ASH did something specific—sending Remittance Advice forms to ASH-contracted chiropractors—Lietz admits that the Remittance Advice documents were "accurate". (SAC, ¶ 35.) Lietz' claims should be dismissed. (Plaintiffs Fayeulle and Gentrup do not allege facts regarding ASH). (SAC, ¶¶ 51-80.)

The SAC has one core allegation concerning ASH: that Lietz and certain ERISA plans were harmed when Cigna sought payment for alleged administrative service fees in addition to medical expenses in connection with services ASH-contracted chiropractors rendered. While not making a single specific allegation that ASH did anything other than

---

[1] Defendants American Specialty Health, Inc. and American Specialty Group, Inc. (collectively, "ASH") submit this Memorandum in support of their Motion to Dismiss And Joinder in the Motion to Dismiss of Defendants Cigna Corporation, Connecticut Life Insurance Company, and Cigna Health and Life Insurance Company (collectively, "Cigna"), all claims brought by Plaintiffs Barbara Fayeulle ("Fayeulle"), Matthew Gentrup ("Gentrup"), and Carol A. Lietz ("Lietz") (collectively, "Plaintiffs") in their second amended complaint ("SAC").

present a bill to Cigna, which Cigna paid and for which Cigna determined Lietz' financial responsibility, Lietz seeks to assert four claims against ASH: (1) violation of RICO, (2) RICO conspiracy, (3) breach of fiduciary duty under ERISA on behalf of ERISA plans, and (4) a mixed claim for benefits and breach of fiduciary duty under ERISA.

The RICO claims (Counts I and II) are attempts to shoehorn an ordinary commercial dispute into statutory prohibitions against organized crime and racketeering in order to recover the enormous financial benefits of RICO. But this case is not even close to a RICO case. Among other shortcomings: (1) Lietz bases her RICO claims on mail and wire fraud, but does not satisfy heightened pleading standards for fraud claims; (2) Lietz also has not identified a criminal enterprise, instead pointing to the commonplace contractual relationship between Cigna and ASH; (3) Nor has Lietz alleged that ASH had any role in operating or managing any criminal enterprise; and (4) No "pattern" of racketeering activity is alleged.

Lietz' attempt to assert two ERISA claims (Counts III and IV) against ASH fares no better. The ERISA claims are untenable for a number of reasons.

**First**, Lietz lacks standing because: (1) Lietz is no longer a plan member (and has not been for 3 years (SAC, ¶6)), and therefore she has no standing to seek prospective equitable relief on behalf of the plan or for the benefit of the plan, and (2) relatedly, although Lietz seeks to sue on behalf of her plan (of which she is no longer a member),

she fails to allege how a remedy to the plan would inure to her benefit, and thus she lacks the required Article III standing to assert a claim on her plan's behalf.

**Second**, Lietz does not allege any injury caused by ASH—she does not identify a single communication ASH sent her or allege that she paid ASH any money. The only conduct that Lietz alleges concerning ASH is that ASH-contracted chiropractors provided care and ASH also provided claims processing services, that ASH sent Cigna bills under the terms of ASH's contract with Cigna, and that ASH sent "accurate" Remittance Advice forms to chiropractors. (SAC, ¶¶ 11, 35.) Lietz also fails to allege that ASH had any dealings, let alone wrongful dealings, with the plans. Without alleging any wrongdoing by ASH, Lietz cannot state a claim against ASH.

**Third**, the SAC does not allege any facts to support the claim that ASH is acting in a fiduciary capacity or that, even if it were, that it breached that duty, but both Counts III and IV assert breaches of fiduciary duty. Indeed, the SAC, to the contrary, pleads that Cigna contracted with ASH to support Cigna by "processing and administering health care claims" and thus ASH provides "claims administration for chiropractic services." (SAC, ¶¶ 1, 11.) The SAC also concedes that ASH issues "accurate" Remittance Advice documents to ASH contracted chiropractors. (*Id.*, ¶ 35.) These ministerial activities do not entail the type of discretion that gives rise to fiduciary status. Under settled law, it matters not that ASH may be (and we do not concede it is) performing discretionary fiduciary-like services in other contexts. As such, Lietz' fiduciary claims necessarily fail.

There are numerous other deficiencies with the SAC's ERISA claims against ASH. For example, to the extent Count IV seeks to state a claim for benefits under Section 502(a)(1)(B), it fails because Lietz does not allege that she was denied any benefits. By way of another example, injunctive relief against ASH is improper because Lietz does not (and cannot) allege that ASH has control over the language contained in the EOBs for which Lietz seeks a mandatory injunction.

## II.    <u>SUMMARY OF ALLEGATIONS</u>

Lietz is a Missouri resident who had health insurance through a plan offered by her private employer, which Cigna administered. (SAC, ¶ 6.) Her insurance coverage under this Cigna-administered plan ended on December 31, 2013. (*Id.*) Plaintiffs assert that ASH administers chiropractic and other benefits for more than 20 million insureds in Colorado and throughout the United States and has contracted with its own network of more than 21,000 providers of chiropractic services. (*Id.*, ¶ 11.) ASH provides a network of chiropractors who agree to accept a discounted rate of reimbursement, and ASH, pursuant to a contract with Cigna, receives, processes, and pays or denies benefits claims for chiropractic services provided by ASH's network of chiropractors. (*Id.*, ¶ 47.)

The gravamen of Lietz' claims is that Cigna issued EOBs to her reflecting an "amount billed" that includes amounts ASH charges Cigna which are greater than the amounts ASH pays chiropractors in its network, that the EOBs misrepresented this fee amount as a medical expense, and that the EOBs were misleading because they stated

that the amount billed was "for services provided by [ASH]." (*Id*., ¶¶ 32-33, 83-88.) Lietz asserts that these representations, found in Cigna-generated EOBs, as well as the collection of the administrative fee from Lietz and her plan, were contrary to her ERISA plan's terms. (*Id*., ¶¶ 33, 36-37, 83-88.) Lietz admits that her plan documents state when she receives care before exhausting her deductible, she will pay "'the full cost of the visit (at Cigna's negotiated rate).'" (*Id*., ¶ 82.)

Lietz asserts that Cigna's approach to determining her financial responsibility (i) caused her to pay increased deductibles from her health savings account ("HSA"), and (ii) Plaintiffs' generally assert that Cigna's approach caused plans to pay too much money to Cigna. (*Id*., ¶¶ 34, 36-37, 87-88.)

## III.   <u>STANDARD OF REVIEW</u>

ASH seeks dismissal under Fed. R. Civ. P. 12(b)(6) because Lietz has not plausibly alleged any set of facts that would entitle her to relief from ASH. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). ASH also seeks dismissal under Fed. R. Civ. P. 12(b)(1)) (*see Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.ed 1220, 1224 (10th Cir. 2012) (standing is an element of subject matter jurisdiction)) because Lietz has not met her burden to establish standing through factual (rather than conclusory) allegations. *OCD Telluride LLC v. Blaney McMurtry LLP*, 2016 WL 153120, at *3 (D. Colo. Jan. 13, 2016); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

IV.    **ARGUMENT**

A.    **Plaintiffs Fayeulle And Gentrup Do Not State A Claim Against ASH**

Preliminarily, only Lietz alleges conduct involving ASH. Fayeulle and Gentrup identify Columbine Chiropractic Plan, LLC as the "Subcontractor," not ASH. (SAC, ¶¶ 51-69, 70-80.) Therefore, Fayeulle and Gentrup do not have standing to sue ASH. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992).

B.    **Lietz Fails To State RICO Claims (Counts I and II)**

ASH incorporates by reference Cigna's argument regarding the RICO claims (*see* Cigna's Memo. at § II). Here, we emphasize arguments with reference to ASH.

1.    **Lietz Has Not Pled The Elements Of A RICO Claim**

a.    **Lietz' RICO Allegations Do Not Satisfy Rule 9(b)**

The allegations contained in the SAC completely fail to identify what actions ASH took that constituted fraudulent conduct. Plaintiffs repeatedly plead that Cigna allegedly sent false and misleading EOBs. (SAC, ¶32) ("Cigna issue[d] a misleading EOB to every insured . . ." ); (*id*, ¶33) ("Cigna falsifie[d] the EOBs that it sends to insureds."); (*id.*, ¶ 65) ("Ms. Fayeulle received an Explanation of Benefits . . . from Cigna . . ."); (*id.*, ¶ 76) ("Mr. Gentrup received an EOB from CGLIC."); (*id.*, ¶ 86) ("Ms. Lietz received an EOB from Cigna . . ."). With respect to ASH, however, Lietz merely asserts unsupported conclusions—that ASH "works with Cigna to charge its administrative fees to insureds

and plans . . . and Cigna and [ASH] misrepresent to insureds and plans that they are in fact expenses for covered medical services by the providers." (*Id.*, ¶ 48.)[2]

No explanation is given as to what ASH does to "work[] with Cigna" to charge administrative fees to insureds and plans. And no facts in the SAC plausibly suggest that ASH has control over the language contained in Cigna's EOBs, let alone that contained in the ERISA plans. Lietz has identified ***no*** communications or documents sent to her by ASH whatsoever. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) ("If … specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is plausible on its face.") (internal quotations omitted). There are also no factual allegations of ASH's intent. "[A] plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Chase v. Bank of N.Y.*, No. 13-cv-02265-RBJ-KMT, 2014 WL 1797473, at *7-8 (D. Colo. May 6, 2014).

The only thing Lietz alleges regarding ASH's conduct is that although the Remittance Advice forms sent to the providers ***contain accurate information***, they "do not, however, include or disclose the Subcontractor's administrative fees, or the fact that

---

[2] Lumping the "Subcontractors" together and making generic assertions (SAC, ¶¶ 32-33) is insufficient under Rule 9(b). *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994) ("'[p]erhaps the most basic consideration' underlying Rule 9(b) . . . [is that] in a case involving multiple defendants . . ., 'the complaint should inform each defendant of the nature of his alleged participation in the fraud'"; as such, the Seventh Circuit "previously ha[s] rejected complaints that have 'lumped together' multiple defendants"); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'.").

insureds and/or self-funded plans are being required to pay these fees." (SAC, ¶ 35) (the

"Compensation Summaries and Remittance Advice Forms [sent by the Subcontractors to

chiropractors] accurately reported the provider's usual and customary charge, the allowed

amount based on the in-network fee schedule, and the amount that the Subcontractor was

going to pay the provider. Thus, while the Compensation Summaries accurately

report[ed] what the provider actually charged as well as the actual amount paid to the

provider based on the fee schedule, the EOBs report an inflated number…"). Lietz also

does not (and cannot plausibly) state that she relied on these communications.

 Indeed, the SAC is bereft of allegations suggesting that ASH proximately caused

her alleged injuries. This is another fatal flaw. *See Cigna Corp.*, 605 F.3d at 1291-92

(dismissing RICO claims where "Plaintiffs do not point to a single specific

misrepresentation by Defendants …, nor do they allege the manner in which they were

misled by the documents, as they are required to do under Rule 9(b)" and where Plaintiffs

only "provide[d] a list of mailings and wires, without ever identifying any actual fraud");

*Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) ("to state a claim under civil RICO,

the plaintiff is required to show that a RICO predicate offense not only was a 'but for'

cause of his injury, but was the proximate cause as well.") (internal quotations omitted);

*see also* 18 U.S.C. § 1964(c) (plaintiff must have been "injured in his business or

property ***by reason of*** a violation") (emphasis added).

### b.    <u>Lietz Fails To Allege A Criminal Enterprise And Operation Or Management Thereof</u>

Instead of setting forth facts with any specificity, the SAC merely recites the definition of a criminal enterprise under RICO and asserts that one exists. (SAC, ¶ 102.) No facts in the SAC suggest that Cigna, ASH, and the other Subcontractors formed any criminal enterprise with a structure independent of their normal commercial dealings. That is not enough.[3] The Tenth Circuit has recognized that "one entity may not serve as the enterprise and the person associated with it because … you cannot associate with yourself." *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998) (internal quotations and citations omitted). The mere fact that Cigna subcontracted some of the claims administration duties it historically performed itself, then, cannot suddenly create a criminal enterprise.[4]

---

[3] *See, e.g., George v. Urban Settlement Servs.*, No. 13-cv-01819-PAB-KLM, 2014 WL 4854576, at *8 (D. Colo. Sept. 30, 2014) ("the plaintiff in a RICO case must establish that defendants were part of an enterprise which had an existence and purpose distinct from any one of them") (quotations omitted); *Gen. Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, No. 07-CV-02170, 2009 WL 535780, at *21 (D. Colo. Mar. 2, 2009) (no RICO enterprise where allegations simply described an ordinary relationship "of a purchaser and a provider of services" rather than an enterprise that "function[ed] as a group or continuing unit").

[4] The Seventh Circuit asked rhetorically: "What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that [Defendant] sells its products to the consumer through franchised dealers rather than through dealerships that it owns, or finances the purchases of its motor vehicles through trusts, or sells abroad through subsidiaries? We have never heard it suggested that RICO was intended to encourage vertical integration. . . ." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227-28 (7th Cir. 1997) (holding that where the manufacturer deals with agents "in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents . . . do not constitute an enterprise within the meaning of the statute").

And "[f]or liability to be imposed under [the Supreme Court's 'operation or management' test], the defendants must have participated in the operation or management of the RICO enterprise." *See Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). Lietz failed to allege that ASH had any part in directing the affairs of the enterprise, stating only "Defendants directly and indirectly conducted and participated in the affairs of the enterprise…." (SAC, ¶ 104.)

### c.      There Is No Pattern Of Racketeering Activity Alleged

Because Lietz has not sufficiently pled allegations of predicate acts for their RICO claim, it follows that she is unable to plead the requisite "pattern" of racketeering activity. No "pattern" as required by RICO is identified beyond simply alleging that there were multiple occurrences of predicate acts. *See Torwest DBC, Inc. v. Dick*, 628 F. Supp. 163, 167 (D. Colo. 1986) ("If RICO requires nothing more than multiple predicate acts, the simplest mail fraud schemes would be brought within it because multiple mailings are involved in almost all such cases."); *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (noting that courts should "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions" and rejecting allegations of RICO pattern)(internal citation omitted). RICO

does not seek to impose treble damages on any business dispute gone wrong, and the "pattern" requirement exists to prevent that from happening.[5]

### 2.    Lietz' RICO Conspiracy Claim Falls With Her RICO Claim

With no RICO claim, there can be no conspiracy. And Lietz simply relies on conclusory assertions that "Defendants agreed to participate in the affairs of the enterprise" and "intentionally conspired and agreed to directly or indirectly conduct and participate in the conduct of the affairs of the enterprise," without more. (SAC, ¶¶ 115-17.) This does not suffice. *See Bell Atl. Corp.*, 550 U.S. at 555.

### C.    Lietz Fails To State ERISA Claims (Counts III And IV) Against ASH

Lietz also brings two ERISA claims: Count III asserts a breach of fiduciary duty claim on behalf of her ERISA plan, and Count IV asserts both a claim for benefits and a claim for breach of fiduciary duty on her own behalf. ASH incorporates by reference Cigna's arguments regarding Plaintiffs' ERISA claims (*see* Cigna's Memo. at § III). Here, we set out arguments specific to ASH and with emphasis to ASH.

---

[5] *See Western Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001) ("Although a RICO claim may be based only on predicate acts consisting exclusively of mail and wire fraud, scrutiny of such claims is necessary, and not inconsistent with the breadth of RICO. The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims, with defendants subject to treble damages, simply because the parties used the United States mails or a fax machine."); *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1268 (7th Cir. 1990) ("Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts … may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity.")(citation omitted).

### 1.    Lietz Lacks Standing To Bring Her ERISA Claims

A "plaintiff must demonstrate standing separately for each form of relief sought." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 185 (2000)).

### a.    Lietz Is Not A Plan Member And Therefore Lacks Standing To Seek Prospective Equitable Relief

Under Counts III and IV, Lietz seeks equitable relief that includes prospective injunctive relief, restoration of monetary losses to the plan, a surcharge, and removal of Defendants as plan administrators. (SAC, ¶¶ 126, 129.) Importantly, Lietz' health insurance coverage ended on December 31, 2013. (*Id.*, ¶ 6.) As such, Lietz does not, and cannot, allege that she is at risk of suffering any of her claimed injuries in the future.

Moreover, Lietz would not benefit from prospective injunctive relief, restoration of monetary losses to the plan, a surcharge, or removal of Defendants as plan administrators. *See Ward v. Utah*, 321 F.3d 1263, 1269 (10th Cir. 2003) ("past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, adverse effects.") (internal quotations and citations omitted); *McApline v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999) ("[T]his court has explained that a 'plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future'.") (citing *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994)). Because Lietz has not alleged any facts suggesting she will

-12-

resume her status as a participant under her previous plan, she therefore lacks Article III

standing to pursue Counts III and IV for any form of prospective or equitable relief.[6] *See*

*Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1328 (D. Utah

2005) (former plan participant was "unlikely" to be able to "demonstrate a good chance

of being likewise injured in the future")(internal citation omitted).

### b.   Lietz Lacks Standing To Seek Relief On Behalf of Her ERISA Plan (Count III)

It is well-established that Section 502(a)(2) claims—i.e., Count III—may only be

brought on behalf of ERISA plans for injuries to the plan. *See, e.g., Loren v. Blue Cross*

*& Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007) ("Plaintiffs cannot bring

suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek

recovery on behalf of the plan.")[7] (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S.

134, 140 (1985)).   Nevertheless, plaintiffs must still meet Article III standing

requirements to bring a claim under ERISA section 502(a)(2).

Here, Lietz alleges no personal injury that flows through an injury to the plan in

connection with her Section 502(a)(2) claim. She has not explained how the return of

money to the plan would inure to her benefit. Instead, the only injury she attempts to

assert is independent of any injury to the plan—that is, Cigna's alleged process of

---

[6] *See* Section IV(C)(1)(b), *infra*, (no injury to Lietz through an injury to the plan).
[7] ERISA Section 502, promulgated under Pub. L. 93-406, title I, § 502, was codified as 29 U.S.C. § 1132.   References to ERISA Section 502 and 29 U.S.C. § 1132 are used interchangeably throughout this motion.

calculating deductibles based on an incorrect formula.  While Plaintiffs do say after they exhausted their deductible, the plans would have been "injured," Lietz herself does not allege she exhausted her deductible and does not offer any explanation of how returning money to the plans would redress any injury to her. She thus lacks Article III standing.

For example, in *Loren*, 505 F.3d 598, the participant-plaintiffs alleged that Blue Cross breached its fiduciary duties under ERISA by charging ERISA plans too much for hospital services relative to what Blue Cross actually paid for these services, thereby causing the plans to demand higher deductibles, copays, and/or contributions from plaintiffs. The Sixth Circuit found that plaintiffs' alleged injuries—that plaintiffs paid deductibles and co-payments that "probably would have been less had [Blue Cross] not engaged in the conduct"—were speculative and were not concrete nor particularized enough to give plaintiffs Article III standing to pursue the Section 502(a)(2) claims. The Court noted that "[m]erely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans [as required by Section 502(a)(2)] does not change the fact that they must also establish individual standing." *Id*. at 608-09.

Similarly, in *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006), plaintiffs sued a pharmaceutical benefits management company ("PBM") for breach of fiduciary duty on the theory that the PBM charged ERISA plans too much for drugs, thereby causing the plans to demand higher copays and contributions from participants. While recognizing that Section 502(a)(2) allows

participants to bring suits on behalf of their ERISA plans in a representative capacity, the Ninth Circuit stated that this was true "so long as plaintiffs otherwise meet the requirements for Article III standing." *Id.* at 1127. The Ninth Circuit found that even if plaintiffs' lawsuit succeeded and the plans' drug costs decreased, nothing would force the plans to reduce the contributions or copays of its participants. Therefore, the Court affirmed dismissal of the case because the plaintiffs lacked Article III standing.

### 2.   Lietz Has Not Alleged That ASH Did Anything Wrong

Lietz concedes that Cigna issues the challenged EOBs and that the plans deal with Cigna, not ASH. Lietz pleads that she had insurance through her employer, and that Cigna provided "claims administration" for her plan. Lietz explains that Cigna, not ASH, submits bills for services to the plans, and then pays itself with plan funds "out of bank accounts Cigna maintains and controls." (SAC, ¶¶ 1, 6, 18-20.)[8] By contrast, as relevant to the allegations in this case, Lietz claims only that ASH provides ministerial claims processing services for Cigna, but no services for her plan. Lietz does not allege that ASH ever communicated with her, or determined her deductible. Similarly, Lietz does not allege that ASH communicated with her plan or received money from her plan.

Lietz tries to cure this deficiency by alleging, in conclusory fashion, that Cigna was "working" with ASH to falsify EOBs or that "Defendants" engaged in "fraud" by the

---

[8] In citing the SAC, ASH does not suggest that Cigna has engaged in any wrongdoing. It has not. ASH merely demonstrates that Plaintiffs allege that Cigna, not ASH, dealt with the plans.

contents of the EOBs. (SAC, ¶¶ 33, 35.) These allegations fail for two separate reasons. First, Lietz has conceded that her plan documents specifically told her that her deductible would be calculated based on "'the full cost of the visit (at Cigna's negotiated rate).'" (*Id.*, ¶ 82.) This is precisely what Cigna did—Cigna calculated her deductible based on Cigna's negotiated rate with ASH. There was nothing fraudulent about Cigna's EOBs.

In addition, Lietz' statements fail to allege any facts demonstrating that ASH did anything to Lietz. In the very paragraph where Lietz alleges that Cigna works with ASH to falsify EOBs, Lietz concedes that Cigna is the only Defendant that has anything to do with issuing EOBs. (SAC, ¶ 33) ("When the Subcontractors submit provider claims to Cigna, they include their administrative fees in the charges. Cigna then misrepresents in the EOBs that the Subcontractor is the health care 'provider' so that Cigna can misrepresent that the administrative fees are being charged by a provider for medical services, when in fact they are charges for the Subcontractor's administrative fees.").

Even in the allegations regarding the collection of additional administrative fees, there are no particularized allegations of conduct by ASH—they are only that "Cigna adds the amount that it owes to the Subcontractor." (SAC, ¶¶ 32-33.) Conclusory allegations of wrongdoing do not suffice. Lietz must plead specific facts relating to what ASH did that allegedly injured her, which she fails to do. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Lacano Invs., LLC v. Balash*, 765

F.3d 1068, 1071 (9th Cir. 2014) ("While we do accept all of the *factual* allegations in the complaint as true …, we do not accept *legal conclusions* in the complaint as true, even if cast in the form of factual allegations.") (quotations omitted) (emphasis in original).

As such, if Lietz had standing to assert claims on behalf of her plan (Count III), which she does not, the claims would fail for this independent reason. The claims Lietz purports to bring on behalf of herself (Claim IV) fail for the same reason. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 818 (1997) (plaintiff must allege injury caused by the defendant).

### 3. Lietz' Fiduciary Claims Under ERISA Fail

#### a. As Lietz Characterizes ASH's Functions, ASH Is Not A Fiduciary

Counts III and IV allege generically that "[a]s a result of Defendants' fiduciary status, . . . Defendants must issue accurate EOBs and other reports. . . ." (SAC, ¶¶ 120-121, 129.) The SAC, however, contains no factual allegations suggesting that ASH is an ERISA fiduciary as related to the conduct at issue—the obvious lynchpin of a breach of fiduciary duty claim. Lietz simply concludes that "[d]ue to the manner in which they function, including the discretion they exercise in making coverage determinations with respect to ERISA plans, Defendants are functional ERISA fiduciaries . . . ." (*Id.*, ¶ 12.)

Lietz' legal theory is wrong. Whether an entity was acting as a fiduciary must be determined with respect to the conduct about which the plaintiff complains, not with respect to all conduct the defendant performs. *Varity Corp. v. Howe*, 516 U.S. 489, 501-

03 (1996) (looking at the specific conduct at issue "[t]o decide whether Varity's actions fall within the statutory definition of 'fiduciary' acts"); *see also David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1131-32 (10th Cir. 2005) (applying the definition of "fiduciary" under ERISA, "the court must conduct a function analysis." [Citation.] That is to say, regardless of status or title, parties are only plan fiduciaries to the extent they are performing one of the functions identified in the definition.").

Indeed, the statutory language itself makes clear that a "fiduciary" is only a fiduciary "to the extent" it is performing certain roles. Specifically, in defining "fiduciary," ERISA states that

> a person is a fiduciary with respect to a plan ***to the extent*** (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

The Department of Labor ("DOL"), which is responsible for administering ERISA, has provided guidance that draws a line between ERISA fiduciaries and persons who perform "purely ministerial functions" for an ERISA plan. The DOL lists the following as "purely ministerial functions":

> (1) **Application of rules determining eligibility for participation or benefits;** (2) **Calculation of services and compensation credits for benefits**; (3) **Preparation of employee communications material**; (4) Maintenance of participants' service and employment records; (5) Preparation of reports required by government agencies; (6) **Calculation of benefits**; (7) Orientation of new participants and advising participants of

> their rights and options under the plan; (8) Collection of contributions and application of contributions as provided in the plan; (9) Preparation of reports concerning participants' benefits; (10) **Processing of claims**; and (11) Making recommendations to others for decisions with respect to plan administration

29 C.F.R. § 2509.75-8, D-2Q (emphasis added). While ministerial functions, like those listed above, may entail some degree of discretion in their execution, these tasks are ministerial because they "are performed within the confines of plan policies and procedures." *Simper*, 407 F.3d at 1132; *Munoz v. Prudential Ins. Co. of Am.*, 633 F. Supp. 564, 567 (D. Colo. 1986) (the administrator, with respect to "(1) Application of rules determining eligibility for participation or benefits; … (6) Calculation of benefits; … [and] (10) Processing of claims," was not an ERISA fiduciary) (citing 29 C.F.R. § 2509.75-8 D-2); *In re Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005) ("the Department of Labor's guidance with respect to ERISA's definition of 'fiduciary' makes clear that persons who have 'no power to make any decisions as to plan policy, interpretations, practices or procedures,' but instead who perform only 'administrative' or 'ministerial functions' related to the plan, are not fiduciaries . . . .").

Lietz' allegations concerning ASH describe only ministerial activities: Lietz alleges that ASH supports Cigna with claims processing services, and it contracts with chiropractors, pays its chiropractors at the rate it contracted with them, and correctly explains these payments to the chiropractors. (SAC, ¶¶ 31-32, 35, 48.) None of these activities involve any discretion over plan policies or decisions beyond following the

-19-

rules and terms of the plans (and Lietz does not contend otherwise), and therefore do not entail the decision-making discretion that bestows fiduciary status. *See Wesson v. Jane Phillips Med. Ctr. & Affiliates Emp. Grp. Healthcare Plan, Premium Plan*, 822 F. Supp. 2d 1170, 1174-76 (N.D. Okla. 2011) (ERISA plan supervisor which participated in processing claims, calculating services and benefits, and preparing reports regarding plan benefits, and was granted authority to apply the plan rules to determine eligibility for benefits and processing of claims was not, by reason of the discretion in performing these tasks, an ERISA fiduciary since these tasks are performed within the confines of plan policies and procedures).

<b>b.    Lietz Fails To Plead That ASH Breached A Fiduciary Duty Under Either ERISA Claim</b>

In order to state a claim under 29 U.S.C. §§ 1106(b)(1) and (a)(1)(D) (SAC, ¶125, Count III), Lietz must plead that ASH had direct dealings with her plan, and that ASH improperly caused the plan to enter a transaction that wrongfully benefited ASH. Lietz does not do so, and has not alleged any interaction—let alone a transaction falling under section 1106—between ASH and her plan.  Here, Lietz fails to allege that ASH caused the plan to engage in any acts, let alone in prohibited transactions, because ASH had no dealings with the plan. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) ("in order to sustain an alleged transgression of [section 1106(a)], a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction. Unless a plaintiff can make that showing, there can be no violation of [section 1106(a)(1)] to

warrant relief under the enforcement provisions."); *Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x. 120, 125-26 (3d Cir. 2013) ("Prohibited Section [1106](a) transactions between a plan and a party in interest are those commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length"; "Section [1106](b) . . . prohibits certain transactions between the plan and a fiduciary . . . [and its] purpose is to prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries") (internal quotations and citations omitted).

Lietz's attempt to cure this deficiency by alleging that ASH is liable for the acts of its co-fiduciary (Cigna) under 29 U.S.C. §1105 (SAC, ¶123) similarly fail.  Section 1105 only imposes liability on a co-fiduciary who "***knowingly***" participates in, or knowingly undertakes to conceal, a breach of fiduciary duty by another fiduciary while knowing that the action is a breach (29 U.S.C. § 1105(a)(1)), a co-fiduciary that has **knowledge** of a breach by such other fiduciary and does not attempt to remedy the breach (*id.*, § (a)(3)), or fails to comply with the standard of care and thereby enables another fiduciary to commit a breach (*id.*, § (a)(2)). Lietz does not allege any facts regarding ASH's scienter—or any facts suggesting that ASH is aware of the terms of Cigna's arrangement with ERISA plans or of any alleged breach of fiduciary duty by Cigna.[9]  ASH therefore

---

[9]  Again, in making this argument ASH does not suggest that Cigna engaged in any form of wrongdoing.  ASH merely demonstrates that Lietz has failed to plead breach of fiduciary duty claims against ASH.

cannot be liable under Section 1105. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 324-25 (3d Cir. 2011) ("Plaintiffs' claims [under sections 1105(a)(1) and (3)] fail because they do not contend Fidelity had knowledge about Unisys's alleged[] [breach of fiduciary duty] . . . [and] [s]imilarly, plaintiffs do not allege Fidelity knew Unisys's [conduct] constituted a breach of fiduciary duty."); *Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993) (because the complaint did not allege knowledge component, section 1105 claim failed without even addressing whether the party was a fiduciary).

Lietz' claim under 29 U.S.C. §1104 (SAC, ¶¶ 120-21, 128-29) (Counts III and IV) also comes up short due to a complete lack of specificity as to the basis for a fiduciary duty, the conduct that violated that duty (or any conduct by ASH at all), and the injury that followed. Lietz simply sets forth the statutory language (SAC, ¶ 120) and alleges that "Defendants must issue accurate EOBs and other reports . . . ." (*Id.*, ¶ 121.) Without stating facts regarding ASH's conduct at all, Lietz' claim must fail. *See Roe v. Empire Blue Cross Blue Shield*, 589 F. App'x 8, 8-9 (2d Cir. 2014) (affirming dismissal of section 1104 claim because plaintiffs "have not adequately alleged that defendants were acting in a fiduciary capacity or that they breached any fiduciary duty under ERISA"); *Kendall v. Empls. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009) (plaintiff "must allege some injury or deprivation of a specific right that arose from a violation of that [fiduciary] duty" and failed to do so, and therefore Section 1104 claim failed).

### 4. Count IV Fails To State a Claim Under 502(a)(1)(B) Because Lietz Does Not Seek Benefits And It Is Not Otherwise Viable

Lietz asserts, under Count IV, that "Defendants have violated their fiduciary duties" to them "by issuing false EOBs and using plan assets to pay administrative fees owed by Cigna to the Subcontractors" and thus, according to Lietz, she is entitled to various monetary remedies, none of which involve the restoration of plan benefits to Lietz. (SAC, ¶ 129.) What she does not assert, however, is that she was denied any plan benefits whatsoever to which she was entitled. Although she vaguely asserts that "when the insureds' plans include limits on the availability of coverage …, the charging of these administrative fees exhausts those limits more quickly, depriving the insureds of valuable medical coverage" (*id.*, ¶ 37), Lietz does not (nor do any of the Plaintiffs) allege that she was subject to these coverage limits or that she reached any such limits during the relevant time period. (*Id.*, ¶¶ 51-88.) As such, Lietz does not state a claim for benefits under ERISA section 502(a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B) (allowing a civil action to be brought "to recover benefits do to [a participant or beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

Therefore, to the extent Count IV purports to be a "claim for benefits," it should be dismissed. And, as set forth above, the remainder of Count IV fails because Lietz is no longer a plan member and may not seek prospective equitable relief and because ASH is not a fiduciary. (*See* §§ IV (C)(1)(a) and (C)(3)(a)). This claim should be dismissed.

**5.**   **ASH Is Not A Proper Defendant For The Injunctive Relief**

Counts III and IV seek injunctive and other equitable relief, such as "requiring Defendants to issue accurate EOBs." (SAC, Prayer for Relief ¶G.) These Counts fail for the additional and independent reason that Lietz has not alleged facts plausibly suggesting that ASH can control the text contained in the EOBs Cigna issues. Therefore, injunctive relief is not properly sought against ASH.

**V.**   **CONCLUSION**

For all the foregoing reasons, the SAC should be dismissed with prejudice.

Dated: January 14, 2016                     MAYER BROWN LLP

                                            */s/ Elizabeth Mann*

                                            Elizabeth Mann
                                            emann@mayerbrown.com
                                            Andrew Z. Edelstein
                                            aedelstein@mayerbrown.com
                                            350 South Grand Avenue, Ste. 2500
                                            Los Angeles, CA 90071-1503
                                            Telephone: (213) 229-5156
                                            Facsimile: (213) 625-0248

                                            Zachariah J. DeMeola
                                            zdemeola@bakerlaw.com
                                            BAKER & HOSTETLER LLP
                                            1801 California Street, Suite 4400
                                            Denver, CO  80202-2662
                                            Telephone:    (303) 861-0600
                                            Facsimile:    (303) 861-7805

                                            *Counsel for Defendants*
                                            *American Specialty Health Inc. and*
                                            *American Specialty Health Networks, Inc*

**CERTIFICATE OF SERVICE:**

This is to certify that on January 14, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Joshua B. Simon
Warren Haskel
Carrie J. Bodner
Kirkland & Ellis LLP
601 Lexinton Ave.
New York, NY 10016
Joshua.Simon@kirkland.com
Warren.haskel@kirkland.com
Carrie.bodner@kirland.com

David S. Chipman
Eric Job Seese
Chipman Glasser, LLC
2000 South Colorado Blvd.
Tower One, Suite 7500
Denver, CO 80222
dchipman@chipmanglasser.com
jseese@chipmanglasser.com

Carl S. Kravitz
Jason M. Knott
Zuckermann Spaeder LLP
1800 M. Street NW, Suite 1000
Washington, DC 20036
jknott@zuckerman.com
ckravitz@zuckerman.com

D. Brian Hufford
Jason S. Cowart
Zuckerman Spaeder LLP
399 Park Avenue, 14th Floor
New York, NY 10022
dbhufford@zuckerman.com
jcowart@zuckerman.com

Edwin P. Aro
Arnold & Porter, LLC
370 Seventeenth Street, Suite 4400
Denver, CO 80202
Ed.aro@aporter.com

*/s/ Elizabeth Mann*
Elizabeth Mann