**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01581-JLK

BARBARA FAYEULLE,
MATTHEW GENTRUP, and
CAROL A. LEITZ,
On behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CIGNA CORPORATION,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
COLUMBINE CHIROPRACTIC PLAN, LLC d/b/a COLUMBINE HEALTH PLAN,
AMERICAN SPECIALTY HEALTH INCORPORATED, and
AMERICAN SPECIALTY HEALTH GROUP, INC.,

      Defendants.

---

**COLUMBINE CHIROPRACTIC PLAN, LLC'S**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ...........................................................................................................................5

STANDARD OF REVIEW ...........................................................................................................6

ARGUMENT ................................................................................................................................7

      I.      THE RICO CLAIMS FAIL AT EVERY JUNCTURE. ..........................................7

              A.  Plaintiffs have not plausibly alleged Columbine's operation or management of a criminal enterprise...........................................................................................8

              B.  The SAC does not plausibly allege a criminal enterprise. .............................12

              C.  There are no plausible allegations of a RICO "pattern". .................................13

              D.  The SAC does not plead an underlying predicate act of racketeering. ...........14

              E.  There are no plausible allegations of a RICO conspiracy...............................17

      II.     PLAINTIFFS' ERISA CLAIMS ALSO FAIL. ....................................................18

              A.  The SAC fails to allege any ERISA violation by Columbine specifically. ......19

              B.  The SAC pleads no factual basis for treating Columbine as an ERISA fiduciary . ........................................................................................................19

CONCLUSION.............................................................................................................................23

## MOTION TO DISMISS UNDER RULE 12(b)(6)

Defendant Columbine Chiropractic Plan, LLC ("**Columbine**"), through its counsel Chipman Glasser, LLC and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss Plaintiffs' Second Amended Complaint ("**SAC**") against Columbine for a failure to state a claim upon which relief can be granted.

## INTRODUCTION

In this putative class action, Plaintiffs Barbara Fayeulle, Matthew Gentrup and Carol A. Lietz allege a grab-bag of RICO and ERISA claims against Defendants Cigna Corporation, Connecticut General Life Insurance Company, Cigna Health and Life Insurance Company (collectively, "**Cigna**"), American Specialty Health Inc. and American Specialty Health Group, Inc. (together, "**American Specialty Health**"), and Columbine. Cigna is the claims administrator for Plaintiffs' respective plans. Cigna contracts with Columbine, as well as with American Specialty Health, to obtain access to Columbine's and American Specialty Health's respective networks of providers.

Plaintiffs' entire case revolves around the Explanations of Benefits ("**EOBs**") that Cigna sent to Plaintiffs after they received chiropractic care. Plaintiffs contend that Cigna sent them misleading EOBs that characterized as medical expenses the fees that Columbine, or other subcontractors, allegedly charged Cigna for administrative services. Specifically, Plaintiffs allege[1] that Cigna and Columbine and/or American Specialty Health (1) violated RICO by forming a

---

[1] While all three Plaintiffs allege RICO violations, only Plaintiffs Fayeulle and Lietz allege ERISA claims. Plaintiff Gentrup's plan is not governed by ERISA. (SAC ¶ 5.)

1

criminal enterprise to send the purportedly fraudulent EOBs and (2) breached fiduciary duties under ERISA by colluding to characterize certain fees as medical expenses.

To be clear, Columbine did not prepare or send the EOBs or have any say in their content. Moreover, Columbine did not collect payments from Plaintiffs, nor had any involvement in how provider charges are or were characterized or represented to Plaintiffs. Indeed, Columbine never communicated with Plaintiffs at all, much less in a misleading way. For that matter, Columbine had no relationship with Plaintiffs whatsoever.

In short, Plaintiffs' case is a challenge to EOBs that they acknowledge that Cigna—and not Columbine—sent them. Plaintiffs nevertheless attempt to impute to Columbine culpability for Cigna's EOBs, or otherwise to vaguely insinuate some liability for Columbine's communications *with the Plaintiffs' providers* (not with the Plaintiffs themselves). Aside from conclusory statements that Columbine somehow "colluded" with Cigna, however, Plaintiffs allege no facts suggesting that Columbine did anything wrong. And, Plaintiffs' generic and undifferentiated allegations do not satisfy Rule 9(b)'s heightened requirements for pleading fraud, nor can they sustain an ERISA claim.

Plaintiffs—despite two amendments already to their complaint (largely in response to the previous motions to dismiss by both Cigna and Columbine)—fail to state a claim against Columbine for several independent reasons, briefly highlighted below.[2]

## I.      RICO Claims

The RICO claims against Columbine fail for at least six reasons.

---

[2] Plaintiff Lietz does not assert any claims against Columbine given that American Specialty Health, not Columbine, administrated the chiropractic network that Lietz utilized.

*Plaintiffs fail to allege that Columbine "operated or managed" any criminal enterprise.* Plaintiffs allege no facts plausibly suggesting that Columbine "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 172 (1993). Specifically, Plaintiffs fail to allege how Columbine "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Id.* at 185 (emphasis in original).

*Plaintiffs make no particularized allegations of intent.* The SAC fails to allege facts that give rise to the "strong inference of fraudulent intent" required in a RICO claim. Nor do any factual allegations in the SAC suggest that Columbine had a motive to commit fraud. Indeed, as the SAC acknowledges, Cigna was required to pay Columbine for its services regardless of how Cigna characterized those fees in EOBs. (*See id.* ¶ 32.)

*Plaintiffs fail to allege a RICO "criminal enterprise."* The SAC alleges no facts plausibly suggesting that Columbine carried on a criminal enterprise with Cigna that had a structure independent of their normal (and legitimate) business dealings, which is a necessary element of a RICO claim. The SAC pins an "enterprise" label on a routine business arrangement, but "labels and conclusions" do not state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

*Plaintiffs allege no particularized allegations of a RICO "pattern."* The SAC does not allege any predicate acts with Rule 9(b) particularity, so it necessarily fails to allege the requisite "pattern" of racketeering activity under 18 U.S.C. § 1962(c). The Tenth Circuit has noted "the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear

notice of the factual basis of the predicate acts." *Cayman Exploration Corp.*, 873 F.2d at 1362. Plaintiffs' SAC gives no such notice to Columbine or to the Court.

   *Plaintiffs make no particularized allegations of fraud.* The SAC fails to plead mail or wire fraud—the alleged predicate racketeering acts underlying Plaintiffs' RICO claims—with the particularity that Rule 9(b) requires. "The particularity requirements of Rule 9(b) apply 'to RICO predicate acts based on fraud.'" *Burnett* v. *Amrein*, 243 Fed. App'x 393, 395 (10th Cir. 2007) (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co*., 873 F.2d 1357, 1362 (10th Cir. 1989)). The SAC repeatedly attempts to impute to Columbine alleged misrepresentations made by Cigna, and only by Cigna.  (*See, e.g*., SAC ¶ 33.) But it never identifies any misrepresentation *by Columbine* to Plaintiffs. And by Plaintiffs' own allegations, Columbine served only an "administrative role" (*id.* ¶ 39) and did not prepare or send the allegedly misleading EOBs (*id.* ¶ 26). Under the well-established law in this circuit, such allegations are insufficient to support a RICO claim sounding in fraud.

   *Plaintiffs' allegations do not support a RICO conspiracy.* Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) fails both because Plaintiffs fail to allege a substantive RICO violation and because they have not alleged facts plausibly suggesting an illicit agreement.

## II. <u>ERISA claims</u>

   Plaintiffs Fayeulle and Lietz's ERISA claims against Columbine likewise fail. As is clear from the face of the SAC itself, these claims depend entirely on whether Columbine owes Plaintiffs Fayeulle and Lietz a fiduciary duty. (SAC ¶¶ 120-126.) But even Plaintiffs acknowledge that Columbine serves only "an administrative role," and they do not allege any fact supporting a conclusion that Columbine qualifies as an ERISA fiduciary. (*Id.* ¶39.)

Under relevant Department of Labor regulations, persons or entities that "have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform certain administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons are not fiduciaries with respect to the plan." 29 C.F.R. § 2509.75-8 D-2. Because Columbine has "no power to make any decisions as to" Fayeulle's or Lietz's respective plans' "policy, interpretations, practices or procedures" (nor does the SAC allege otherwise), it is not an ERISA fiduciary.

## BACKGROUND

Plaintiff Fayeulle is insured by a self-insured health insurance plan that is offered through her husband's private employer (SAC ¶ 4.) Plaintiff Gentrup is insured by a self-insured plan that is offered by his wife's employer, the City of Loveland. (*Id.* ¶ 5.) Plaintiff Lietz is insured through her private employer through a plan that is not administered by Columbine and thus is irrelevant to Columbine's Motion to Dismiss. (SAC ¶ 6.) Cigna was the claim administrator for all three plans. (*Id.* ¶¶ 4-6.)

As the SAC alleges, Cigna contracts with Columbine, which in turn manages and administers a network of chiropractic providers around the state of Colorado who agree to treat Cigna members on an "in-network" basis. (*Id.* ¶¶ 28-31.) Providers who join the network enter into contracts with Columbine under which they agree to provide services to Cigna members at discounted pre-agreed rates. (*Id.* ¶¶ 19, 28.)

When a Cigna member receives treatment from an in-network provider, the provider submits a claim to Columbine. (*Id.* ¶ 30). Columbine then processes the claim and pays the provider under the agreed-to discounted fee schedule (if the treatment is covered under the rules

established by the plan). (*Id.* ¶¶ 31, 40.) Cigna in turn pays Columbine a pre-agreed flat fee for each claim. (*Id.* ¶ 29.)  After a claim is processed, Cigna communicates with the plan member about the claim by sending the member an EOB.  (*Id.* ¶ 26.) The EOBs explain the provider's charge and the amount covered on the claim and calculate the member's financial responsibility. (*Id.*)

The SAC does not allege that the fees that Columbine receives from Cigna are improper, nor does it contend that Columbine underpaid providers. Instead, and as noted, the gravamen of Plaintiffs' claim is that Cigna sent Plaintiffs EOBs that allegedly mischaracterized as medical expenses the fees that Cigna paid Columbine. (*Id.* ¶¶ 2, 36, 97 102, 112.) But Plaintiffs never allege—nor could they—that Columbine created or sent the EOBs at issue. (*See, e.g., id.* ¶¶ 26, 32, 33, 55, 65, 66, 67, 68, 78, 79, 80.) Moreover, there are no allegations that Columbine decided whether or how much Plaintiffs' plan paid on their respective claims. Nor are there any allegations that Columbine communicated with Plaintiffs or collected any payments from them.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is not merely conceivable, but is also "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Facial plausibility refers to the "scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570)). Ultimately, if a complaint fails to make sufficient, facially-plausible

allegations in support of a plaintiff's claims, the reviewing court must dismiss it. *Twombly*, 550 U.S. at 570.

In addition, Rule 9(b) requires Plaintiffs to plead the predicate acts of fraud with particularity. *See Amrein*, 243 Fed. App'x at 395 ("[A RICO] complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." (citation and internal quotation omitted)). As both of Plaintiffs' RICO claims are predicated on fraud, they are subject to Rule 9(b)'s heightened pleading requirements.

## ARGUMENT[3]

## I.   THE RICO CLAIMS FAIL AT EVERY JUNCTURE.

Noting that "RICO is a powerful statute," the Tenth Circuit has cautioned against "subjecting garden-variety fraud or criminal conduct to the statute's severe penal and monetary sanctions." *United States v. Knight*, 659 F.3d 1285, 1288 (10th Cir. 2011). Accordingly, courts in this circuit require that "RICO claims must be pled with factual specificity, not with conclusory allegations." *Haynie v. PHH Mortg*., 2012 U.S. Dist. LEXIS 108245, at *5 (D. Colo. Aug. 2, 2012).

The relevant portion of the RICO Act provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[3] Cigna is simultaneously filing its own motion to dismiss, in which it addresses other deficiencies in the SAC. Rather than repeat those arguments, Columbine joins Cigna's motion and hereby incorporates by reference the arguments set forth therein.

To survive a motion to dismiss, Plaintiffs' first RICO count—*i.e.*, a substantive RICO violation under 18 U.S.C. § 1962(c)—must allege with "factual specificity" Columbine's "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). A failure to prove even one of these elements is fatal to a RICO claim.[4]  Plaintiffs, however, have not plausibly pleaded even one of these elements against Columbine.

### A.    Plaintiffs have not plausibly alleged Columbine's operation or management of a criminal enterprise.

Plaintiffs must plausibly and with factual specificity plead that Columbine conducted or participated in the conduct of the enterprise. As the Tenth Circuit has noted, "[t]he Supreme Court has adopted the 'operation or management' test to determine whether the defendant has conducted or participated in the conduct of the enterprise *by having some part in directing the affairs of the enterprise*." *Tal*, 453 F.3d at 1269 (emphasis added) (citing *Reves*, 507 U.S. at 179) As the Tenth Circuit has further explained, this means that "RICO liability 'depends on showing that the defendants conducted or participated in the conduct of the "enterprise's affairs," not just their *own* affairs.'" *Dopp v. Loring*, 54 F. App'x 296, 298 (10th Cir. 2002) (quoting *Reves*, 507 U.S. at 185)).

[4] Moreover, Plaintiffs must plead and prove that the alleged racketeering activity of Cigna and Columbine (or, in Lietz's case, of Cigna and American Specialty Health) was the proximate cause of their financial injury. 18 U.S.C. § 1964(c); *see also Bixler v. Foster*, 596 F.3d 751, 757-58, 756 (10th Cir. 2010) (affirming dismissal because plaintiffs failed to plausibly allege proximate causation, noting "(a) plaintiff has standing only if his injuries were proximately caused by the RICO violation" (citing *Gillmor v. Thomas*, 490 F.3d 791, 797 n.4 (10th Cir. 2007)). Without any waiver of its right to do so at a later time, Columbine does not address the causation requirement in this Motion given that Plaintiffs' RICO claims fail at points prior to the causation analysis.

Here, the SAC alleges generically—and without distinguishing among Cigna, Columbine and American Specialty Health—that "Defendants directly and indirectly conducted and participated in the affairs of the enterprise through a pattern of racketeering activity." (SAC ¶ 104.) This bare allegation of "participation" in the allegedly illicit enterprise must be supported with factual allegations showing *how* Columbine actually participated in the enterprise. That the SAC does not do, as shown below.

Even if Cigna's EOBs were somehow improper, Columbine's provision of support services—even as described under Plaintiffs' conspiratorial theory—is insufficient to establish that Columbine participated in the operation and management of a RICO enterprise. In applying that prong, the courts have held that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *University of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993) (same).[5] At best, that is what Plaintiffs allege about Columbine.

A closely analogous Tenth Circuit case addressing the "participation" prong bears noting here. In *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999), the plaintiff bank—BOMC—brought RICO claims against several title companies that had provided title insurance for a loan origination company—LMS—that had contracted to sell BOMC bundles

---

[5] The defendants in *Goren* and *Peat* were considered "outsiders" to the alleged criminal enterprises because they merely provided services to the alleged enterprises. The same is true of Columbine here, even if there were such an "enterprise."

of residential mortgage loans. *Id.* at 1095. LMS eventually went into bankruptcy, after which BOMC discovered that there were senior unpaid mortgages on a number of the residences securing the purchased loans—in contravention of the BOMC-LMS agreement that all loans would give BOMC a first lien interest. *Id.* The primary question before the court was whether the title companies' had "participated" in the underlying enterprise. *Id.* at 1100.

In addressing that question, the *Bancoklahoma* court considered facts that closely parallel Plaintiffs' allegations here:

- Like Plaintiffs and Cigna here, the relevant contractual relationship was between BOMC and LMS. *See id.* at 1095 ("BOMC entered into an agreement to purchase home mortgage loans from LMS.")

- "The Title Companies took no part in establishing LMS and BOMC's relationship"—just as Columbine had no involvement in establishing Plaintiffs' and Cigna's relationship. *Id.*

- BOMC alleged the closing documents received misrepresented various facts, including the title companies' role—very similar to Plaintiffs' allegations regarding Cigna's EOBs and their alleged misrepresentation of Columbine's role. *Id.* at 1096.

- "None of the Title Companies prepared or delivered to BOMC any closing documents for the loans at issue"—just as Columbine had no part in preparing or delivering the EOBs at issue. *Id.* at 1097.

On these facts, the *Bancoklahoma* court concluded:

> Applying [the management or operation] test to the facts before us, BOMC has failed to establish the first element of its RICO claims, *i.e.*, that the Title Companies 'participated in the conduct' of the alleged RICO enterprise. There is no evidence suggesting the

> defendants directed any part of the alleged RICO enterprise. **The Title Companies did nothing more than provide their regular services**, which included closing-related services such as recording documents and issuing title commitments. [*Id.* at 1101 (emphasis added)].

Here, Plaintiffs' *factual* allegations (as opposed to their conclusory recitations of the legal standard) establish that Columbine's role in the alleged enterprise was to provide Cigna, for a flat fee, access to Columbine's network of contracted providers. (SAC ¶ 39, 40, 46). In other words, Columbine "did nothing more than provide [its] regular services." *Bancoklahoma*, 194 F.3d at 1101. And according even to Plaintiffs' own theory, Columbine is properly entitled to compensation for its provision of these services. (*See* SAC ¶ 32 (Columbine and other Cigna subcontractors are "entitled to an administrative fee from Cigna to cover their costs of processing the claim and administering the network on behalf of Cigna.")). Such allegations are woefully insufficient to establish Columbine's "operation or management" of the allegedly illicit enterprise.

Nor is Plaintiffs' conclusory allegation of "collusion" sufficient to establish Columbine's "operation or management" of the alleged enterprise. (*See* SAC ¶ 1 ("Cigna has colluded with [Columbine]… to perpetuate [its] fraud").  Instructive here is *Tal*, 453 F.3d at 1269. In *Tal*, the Tenth Circuit dismissed developers' RICO allegations of bid-rigging by a competitor. *Id.* at 1269-70. Even though the *Tal* court credited the developers' allegations that the defendant competitor had made material misrepresentations to the public agency awarding the bid to influence the bidding process, the developers' allegations of collusion between the competitors and the public agency were insufficient to establish that the competitors "participated in the operation or management of" the alleged criminal enterprise. *Id.*

11

**B.     The SAC does not plausibly allege a criminal enterprise.**

Plaintiffs' substantive RICO claim fails for the further reason that they do not plausibly allege that Cigna and Columbine carried on a criminal enterprise.

Plaintiffs allege that Cigna and its various subcontractors, including Columbine, "constitute an associated-in-fact 'enterprise.'" (SAC ¶ 102.)A RICO plaintiff alleging an association-in-fact enterprise must plead facts plausibly suggesting the existence of an enterprise with the structural features identified by the Supreme Court in *Boyle v. United States*, 556 U.S. 938, 946 (2009)—namely, a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *See also United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009) (Under *Boyle*, to qualify as an "enterprise" for RICO purposes, "a group must have '[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose.") (quoting *Boyle*, 556 U.S. at 946).

At best, Plaintiffs merely attempt to cast the routine commercial relationship between Cigna and Columbine as a "criminal enterprise":

> Cigna and its Subcontractors, including Columbine and American Specialty Health, have operated together in a coordinated manner in furtherance of a common purpose to collect administrative fees from Cigna insureds and plans by improperly characterizing them as payment for covered medical expenses. Therefore, they constitute an associated-in-fact 'enterprise' as defined in 18 U.S.C. § 1961(4).

(SAC ¶102.) Stripped of their conclusory adjectives, these allegations merely allege that Cigna (1) attempted to manage costs (2) by collecting administrative fees directly from its members and (3) did so in a some type of "coordinated manner" with an unspecified number of its subcontractors. Such allegations are insufficient to establish a RICO criminal enterprise. *See Crichton v. Golden*

*Rule Ins. Co*., 576 F.3d 392, 399-400 (7th Cir. 2009) (rejecting "enterprise" allegations because the plaintiff had "done no more than describe the ordinary operation of a garden-variety marketing arrangement").

Aside from conclusory recitations of a "common purpose," the SAC makes no factual allegations plausibly suggesting that Columbine shared any purpose with Cigna to misrepresent administrative fees as medical expenses. Columbine was entitled to the same flat fees under the Cigna-Columbine *regardless of how Cigna characterized any such fees to Plaintiffs*. (SAC ¶ 32, 46.) Columbine shared, and shares, no common purpose with Cigna or American Specialty Health beyond the shared objective of every business entity—to make a legitimate profit.

### C.   There are no plausible allegations of a RICO "pattern."

As explained in the immediately following subsection, Plaintiffs have not pleaded fraud with the requisite particularity, so they have necessarily failed to plead the required "pattern" of racketeering activity. *See* 18 U.S.C. § 1962(c); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (RICO requires a "pattern" of predicate acts). The Tenth Circuit has interpreted RICO's pattern requirement strictly, particularly when the alleged predicate act sounds in fraud. *See, e.g.*, *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009) (upholding dismissal of complaint that did "not adequately allege a 'pattern' of racketeering activity because it fail[ed] to allege sufficient continuity to sustain a RICO claim."); *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (affirming dismissal where plaintiff failed to allege "the type of long-term criminal activity envisioned by Congress when it enacted RICO").

Moreover, the Tenth Circuit has consistently held that allegations of a scheme confined to a single (purportedly) fraudulent goal do not satisfy RICO's pattern requirement. *See, e.g.*, *Bixler*,

596 F.3d at 761 (affirming dismissal of RICO complaint that "allege[d] that defendants engaged in a single scheme to accomplish [a] discrete goal"). Here, Plaintiffs allege a single fraudulent objective and a single predicate act—improperly shifting Columbine's (and American Specialty Health's) fees to Plaintiffs—and both are essentially coterminous. Such an allegation fails both *Twombly*'s heightened pleading standard and the "factual specificity" required for RICO allegations.

### D.      The SAC does not plead an underlying predicate act of racketeering.

Here, Plaintiffs allege a pattern of mail and wire fraud as the "predicate" racketeering act underlying their RICO claim. (SAC ¶ 109 ("Cigna and the Subcontractors have committed wire fraud and mail fraud.").) But they do not identify any misstatement by Columbine. For that matter, they do not even allege that Columbine ever communicated with them or that they relied on any communication by or from Columbine. Nor could they so allege: the EOBs that are at the heart of their case were not prepared, reviewed, sent, or otherwise touched by Columbine.

#### a.      The SAC does not plead fraud by Columbine with Rule 9(b) particularity.

The most glaring deficiency in Plaintiffs' "predicate act" allegations is the failure to plead the underlying fraudulent conduct with the particularity required under Rule 9(b). The Tenth Circuit has consistently held that "Rule 9(b) is applicable to RICO predicate acts based on fraud." *Cayman Exploration*, 873 F.2d at 1362; *see also Jensen v. America's Wholesale Lender*, 425 Fed. App'x 761, 764 (10th Cir. 2011) (affirming dismissal of RICO claims sounding in fraud where plaintiffs "failed to plead their fraud claim with the particularity required to satisfy [Rule 9(b)'s] pleading standard"); *Dawson v. Goldman Sachs & Co*., 2014 U.S. Dist. LEXIS 152626, at *8 (D. Colo. Oct. 27, 2014) ("When a claim includes fraud as an element, *e.g*., a COCCA or RICO claim,

that claim's allegations must be pled with particularity, as required by Fed. R. Civ. P. 9(b) . . . ."); *Burnett v. George*, 2006 U.S. Dist. LEXIS 75848, at \*20 (D. Colo. Sept. 12, 2006) ("The particularity requirement of Rule 9(b) applies to civil RICO claims for which mail fraud is the predicate illegal act.").

Instead of pleading the particularized facts for a fraud claim, Plaintiffs lump Defendants together and sprinkle in words like "fraud," "conspiracy," and "enterprise." Such allegations do not satisfy Rule 9(b). *See, e.g.*, *Wichita Fed. Sav. & Loan Assoc. v. Landmark Grp., Inc.*, 657 F. Supp. 1182, 1191 (D. Kan. 1987) ("Where there are multiple defendants, the complaint must inform each defendant of the specific fraudulent acts justifying his inclusion in the count." (internal citation omitted)). In fact, Plaintiffs fail to identify a *single* statement or representation that Columbine made to Plaintiffs, let alone a misrepresentation. Indeed, a review of all of Plaintifs' allegations regarding alleged misrepresentations or fraud reveals that not one of them alleges a fraudulent representation or omission by Columbine. (SAC ¶¶ 2, 33, 34, 35, 36, 37, 38, 42, 48, 60, 61, 67, 68, 78, 79, 80, 87, 97, 107, 108, 112.)

Most fatally to their fraud allegations against Columbine, Plaintiffs never allege that Columbine had any involvement in creating or issuing the allegedly misleading EOBs that are at the core of Plaintiffs' claims. (*See, e.g.*, *id.* ¶¶ 26, 32, 33, 34, 35, 43, 45, 55, 61, 65, 66, 67, 68, 76, 78, 79 80, 107a, 108.) At most, Plaintiffs allege that "[w]orking with the Subcontractors, Cigna falsifies the EOBs that it sends to insureds." (*Id.* ¶ 33.) But aside from such conclusory allegations, Plaintiffs have pleaded no facts suggesting that Columbine did anything but provide administrative and related services to Cigna. Such threadbare, undifferentiated insinuations are insufficient.

In short, nothing in the SAC notifies Columbine of what misrepresentations it allegedly made, to whom specifically they were made, when they were made, how Plaintiffs relied on them, or any of the other relevant "circumstances." Such allegations fail to satisfy Rule 9(b)'s particularity requirements.

### b. There are no particularized allegations giving rise to a strong inference of fraudulent intent.

In addition to asserting particularized allegations regarding the who, what, when, and where of the alleged fraud, Plaintiffs must plead *intent* with particularity. *See, e.g.*, *Burnett*, 2006 U.S. Dist. LEXIS 75848, at *21 (A RICO claim sounding in fraud must "allege facts that give rise to a strong inference of fraudulent intent") (citation and internal quotation marks omitted). In dismissing a civil RICO claim, another case from the District of Colorado recently expounded on the interplay between the requirement of a "strong inference of intent" and Rule 9(b)'s particularity requirement:

> A plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent. Regarding wire fraud, a plaintiff must allege the number of wires, the precise dates, and how they further the scheme. The defendant must participate in each with the specific intent to defraud.

*Wood v. Wells Fargo Bank*, N.A., Civil Action No. 13-cv-01731-CMA-KMT, 2013 U.S. Dist. LEXIS 152196, at *18 (D. Colo. Oct. 2, 2013) (internal citations and punctuation omitted).

Here, the SAC loosely uses various fraud-connoting adjectives, but it alleges no facts supporting its conclusory statements that Defendants "intentionally and knowingly" misled Plaintiffs. (*Id.* ¶¶ 105-106.) At best, the SAC's factual allegations regarding Columbine's intent are as follows:

16

> Cigna collects the fees from insureds and plans, and transmits them to the Subcontractors, who have full knowledge that the payments represent their administrative fees and not covered medical expenses. This shows that Cigna and the Subcontractors knowingly designed their conduct to hide the fees from insureds and plans. Defendants' intent to defraud is further demonstrated by Columbine's restructuring of the 2015 provider contract applicable to providers who treat Cigna insureds, in which the fee schedule has been increased by $13, with a new provision added to require the provider to repay Columbine this same amount. [SAC ¶ 108.]

These allegations are a *non sequitur*. Certainly nothing in the allegation that Columbine restructured its contracts with its providers and increased the fees it charges Cigna for provider services—both routine business decisions—evidences any intent to defraud Plaintiffs.

The SAC fails to allege any facts from which this Court could infer any incentive for Columbine to participate in the alleged fraud. *Cf. Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014) (rejecting RICO claims because "the complaint's factual allegations do not support a plausible inference that Defendants had the required specific intent to defraud"). Simply put, Columbine had no motive to defraud Plaintiffs. As Plaintiffs acknowledge, Cigna is obligated to pay Columbine fees for the services that Columbine performs regardless of how those services are characterized in the EOB. (*Id.* ¶ 32.) In other words, regardless of any alleged fraud by Cigna, Columbine was, and is, paid the same amount.

In short, Plaintiffs have not alleged facts plausibly suggesting that Columbine had the intent, much less a *strong* intent, to defraud them.

### E.    There are no plausible allegations of a RICO conspiracy.

Plaintiffs' claim for RICO conspiracy under 18 U.S.C. § 1962(d) fails for two reasons. First, because the substantive RICO claim against Columbine fails, the conspiracy count fails as well. *DBC, Inc. v. Dick*, 810 F.2d 925, 927 n.2 (10th Cir. 1987) (holding that, where a RICO

plaintiff fails to allege "substantive violation of section 1962(c)," plaintiff's conspiracy claim under § 1962(d) must necessarily fail as well).

Second, in any event, the SAC does not allege facts plausibly suggesting that Columbine agreed to join a criminal conspiracy. Although the SAC paints Cigna and Columbine's business relationship with conspiratorial buzzwords (*see, e.g.*, SAC ¶ 1 (alleging "a fraudulent scheme" in which Cigna and its subcontractors have "colluded")), "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. At most, the SAC alleges that Columbine provided services to Cigna for pre-agreed flat fees and that Cigna sent the EOBs at issue to Plaintiffs. Nowhere does the SAC allege any facts or circumstantial indicia of agreements, communications, meetings or other coordinated activities among Cigna, Columbine and American Specialty Health to establish, effectuate, or further the alleged conspiracy. The "obvious alternative explanation" for what Plaintiffs label a "conspiracy" is of course a normal business relationship. *Twombly*, 550 U.S. at 557.

## II.     PLAINTIFFS' ERISA CLAIMS ALSO FAIL.

Plaintiffs Fayeulle and Lietz assert two separate ERISA counts. (As noted above, Plaintiff Gentrup's plan is not governed by ERISA, and thus he alleges no claims under ERISA. (SAC ¶ 5.))

Specifically, Count III seeks money damages and various equitable relief pursuant to 29 U.S.C. § 1132(a)(2). (*Id.* ¶¶119-126.)   Count IV seeks equitable relief under 29 U.S.C. § 1132(a)(1), (a)(3) and/or 29 U.S.C. § 1104—namely, "an injunction to preclude Defendants from engaging in the improper conduct alleged herein, restoration of monetary losses to the plan, a surcharge for the improper gains obtained in breach of that duty, and removal of Defendants as administrators of the Class's benefits." (SAC ¶ 129).

**A.    The SAC fails to allege any ERISA violation by Columbine specifically.**

As an initial matter, it is telling that only one of Plaintiffs' numerous ERISA-related allegations or counts mentions Columbine specifically, and even that allegation merely states a legal conclusion. (*Compare id.* ¶ 40 ("Based on the role it plays in processing chiropractic claims and making benefit determinations for plans governed by ERISA, Columbine is a fiduciary under ERISA"), *with id.* ¶¶ 12, 19, 26, 90, 91, 92, 93, 119-129 (generically alleging ERISA violations by "Defendants")). Instead, the ERISA allegations are essentially directed at Cigna, and Columbine appears to have added as an afterthought based on a vague theory that Cigna delegated its duties as an ERISA fiduciary to Columbine. (*See, e.g., id.* ¶¶ 19, 26, 90, 91, 92, 93). Nor does the relief requested under this count appear even to be directed toward Columbine. While Plaintiff are seeking removal of "Defendants" as administrators of the putative class's benefits, there is no allegation, nor could there be, that Columbine is the plan administrator for any of the plans at issue. (*Id.* ¶ 129.)

**B.    The SAC pleads no factual basis for treating Columbine as an ERISA fiduciary.**

Even more fatally, for Columbine to have any liability under either Count III (29 U.S.C. § 1132(a)(2)) or Count IV (29 U.S.C. § 1132(a)(1) and (a)(3)), Columbine must qualify as an ERISA fiduciary. As a matter of law, a claim under § 1132(a)(2) or § 1132(a)(1) lies only against the plan itself or a fiduciary of the plan. *See, e.g., Pioneer Tel. Coop. v. Terry*, No. CIV-07-37-D, 2009 U.S. Dist. LEXIS 106606, at *27 (W.D. Okla. Nov. 16, 2009) (to "establish[] entitlement to relief under § 1132(a)(2)[,] the defendant must be a 'fiduciary' as defined by 29 U. S. C. § 1002(21)(A)); *Lenhart v. Air Am., Inc*., No. 2:03CV429DAK, 2003 U.S. Dist. LEXIS 25358, at

19

*6 (D. Utah Dec. 10, 2003) (claims "under § 1132(a)(1)(B) are appropriate only against the Plan or a fiduciary of the Plan"). Moreover, Plaintiffs Fayeulle and Lietz have expressly cast their § 1132(a)(3) claim as a breach of fiduciary duty claim. (SAC ¶ 128 (alleging under Count IV that Plaintiffs "may pursue breach of fiduciary duty claims against Defendants under 29 U.S.C. § 1132(a)(1)(B), (a)(3) C. § 1104."). *Cf. Jones v. Am. Airlines, Inc*., 57 F. Supp. 2d 1224, 1237 (D. Wyo. 1999) ("Where a plan administrator breaches fiduciary obligations to individual plan participants or beneficiaries and thereby causes injury, § 1132(a)(3) may provide those individuals with a private cause of action.").

A party can qualify as a "fiduciary" under ERISA either by being expressly named in a plan instrument (a "named fiduciary") or by exercising discretionary control or discretionary authority over the administration of a plan (a "functional fiduciary"). Here, Plaintiffs allege that Columbine is a functional fiduciary. (*See id.* ¶ 12 ("Due to the manner in which they function, including the discretion they exercise in making coverage determinations with respect to ERISA plans, Defendants are functional ERISA fiduciaries and, as such, they must comply with the fiduciary standards.")).

*Discretion* is the lynchpin for conferring ERISA fiduciary status:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan

29 U.S.C. § 1002(21)(A). Plaintiffs' threadbare allegation that Columbine exercises discretion is not sufficient alone to make Columbine a fiduciary. Nowhere does the SAC allege that Columbine has discretion to (1) manage Plaintiffs' plans or exercise authority or control regarding the plans' assets, (2) provide investment advice of any kind regarding the assets of Plaintiffs' plans, (3) oversee the administration of Plaintiffs' plans, including discretion to grant or deny Plaintiffs' claims for coverage and to determine the proper reimbursement amount on any claims by Plaintiffs. In short, the SAC's conclusory "discretion" allegation is insufficient to survive a motion to dismiss.

This conclusion is confirmed by a closer look at the relevant regulations defining the "discretion" necessary to make an entity or individual an ERISA fiduciary. The Department of Labor's regulations interpreting the above-quoted statutory language clarify that Columbine's role—which Plaintiffs themselves describe as "an administrative role in claims processing and network management" (SAC ¶ 39)—does not make Columbine an ERISA fiduciary: "a person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan." 29 C.F.R. § 2509.75-8 D-2. The Tenth Circuit follows this guidance. *See, e.g.*, *Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1205 (10th Cir. 2005) ("[T]he Department of Labor's guidance with respect to ERISA's definition of 'fiduciary' makes clear that persons who have 'no power to make any decisions as to plan policy, interpretations, practices or procedures,' but instead who perform only 'administrative' or 'ministerial functions' related to the plan, are not fiduciaries under ERISA § 3(21)(A).") (citing 29 C.F.R. § 2509.75-8).

The Tenth Circuit has further explained that "[p]lan management or administration confers fiduciary status only to the extent the party exercises discretionary authority or control. Discretion exists where a party has the 'power of free decision' or 'individual choice.'")." *David P. Coldesina, D.D.S., P.C., Empl. Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005. Nowhere do Plaintiffs allege that Columbine holds any such discretionary authority or power of free decision over the assets of Fayeulle's and Lietz's respective plans.

Another District of Colorado case previously expressly declined to accord fiduciary status to third-party claims administrators such as Columbine. In *Trustees of the Colorado Laborers' Health & Welfare Trust Fund v. American Benefit Plan Administrators, Inc*., plaintiffs alleged that defendant—a third-party claims administrator for a health benefits fund—had breached its fiduciary duty by failing to accurately calculate and report certain claims. 2006 U.S. Dist. LEXIS 65189, at *25 (D. Colo. Sept. 13, 2006). The court found, as a threshold matter, that the defendant lacked the requisite discretion to qualify as an ERISA fiduciary. The court reached this conclusion even while noting that the defendant "may well have exercised discretion in connection with such functions as creating systems to provide for adequate disclosure of stop-loss information and training employees to implement those systems." *Id.* What was dispositive was that "such discretion was not of a fiduciary nature." *Id.*

Other circuits are also unanimous in holding that an entity "does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer." *See, e.g., Baker v. Big Star Div. of the Grand Union Co*., 893 F.2d 288, 290 (11th Cir. 1989); *Baxter v. C.A. Muer Corp*., 941 F.2d 451, 455 (6th Cir. 1991) (a "claims processor" is not an ERISA fiduciary).

The SAC makes no allegation that Columbine has *any* authority over the administration or management of Plaintiffs Fayeulle's and Lietz's respective plans, much less discretionary authority. Moreover, even to the extent that—like the defendant in *American Benefit Plan*—Columbine may exercise discretion in certain aspects of managing its provider network, such discretion is "not of a fiduciary nature." And even if Columbine were an ERISA fiduciary, nowhere does the SAC allege any facts supporting the conclusion that Columbine—rather than "Defendants" generically—failed to discharge its fiduciary duty to Plaintiffs Fayeulle and Leitz or their plans. (SAC ¶¶ 119-129).

In short, because the SAC has pled no facts supporting the conclusion that Columbine is an ERISA fiduciary for Plaintiffs Fayeulle's and Lietz's respective plans, or that Columbine breached any ERISA-based fiduciary duties, the ERISA claims against Columbine must be dismissed.

## CONCLUSION

The flaws in Plaintiffs' claims against Columbine are fundamental—and fatal. The Court should dismiss them with prejudice.

Respectfully submitted this 14th day of January, 2016.

*[INTENTIONALLY LEFT BLANK, SIGNATURE ON NEXT PAGE]*

23

CHIPMAN GLASSER LLC


 s/ *David S. Chipman*
David S. Chipman, # 25784
Eric Job Seese, # 48379
2000 South Colorado Boulevard
Tower One, Suite 7500
Denver, Colorado 80222
(303) 578-5780
(303) 578-5790 (fax)
dchipman@chipmanglasser.com
jseese@chipmanglasser.com

*Attorneys for Defendant Columbine Chiropractic Plan, LLC*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of January, 2016, a copy of the foregoing **COLUMBINE CHIROPRACTIC PLAN, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** was electronically submitted via ECF, which will send notification of such filing to all counsel of record.


<u>  /s/ *Michelle Burns*          </u>
Michelle Burns