**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01581-JLK

BARBARA FAYEULLE,
MATTHEW GENTRUP, and
CAROL A. LIETZ,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

CIGNA CORPORATION,
CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTH AND LIFE INSURANCE COMPANY,
COLUMBINE CHIROPRACTIC PLAN, LLC, d/b/a COLUMBINE HEALTH
PLAN,
AMERICAN SPECIALTY HEALTH INCORPORATED, and
AMERICAN SPECIALTY HEALTH GROUP, INC.,

      Defendants.

_____

**PLAINTIFFS' OPPOSITION TO CIGNA'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

_____

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

    A.    Cigna, A Claims Administrator for Millions of Insureds, Outsources Its Duties to Columbine, ASH, and Other Subcontractors........................... 3

    B.    Cigna and the Subcontractors Secretly Shift the Subcontractors' Administrative Fees to Insureds. ..................................................................... 5

    C.    Plaintiffs Receive Chiropractic Care and Are Charged for Defendants' Administrative Fees. ..................................................................... 7

        1.    Allegations as to Ms. Fayeulle ................................................... 7

        2.    Allegations as to Mr. Gentrup ..................................................... 8

        3.    Allegations as to Ms. Lietz ........................................................ 10

LEGAL STANDARD ........................................................................................... 11

ARGUMENT ........................................................................................................ 12

I.    PLAINTIFFS STATE VALID RICO CLAIMS AGAINST CIGNA (COUNTS I AND II) .......................................................................................... 12

    A.    Plaintiffs Allege A RICO Enterprise .................................................... 12

    B.    Plaintiffs Allege That Cigna Participated in the Conduct of the Enterprise ............................................................................................... 15

    C.    Plaintiffs Allege A Pattern of Racketeering Activity ............................ 16

    D.    Plaintiffs Allege That They Were Injured by Defendants' Racketeering Activity ............................................................................. 21

    E.    Plaintiffs Allege a RICO Conspiracy .................................................... 21

II.    PLAINTIFFS FAYEULLE AND LIETZ STATE VALID ERISA CLAIMS AGAINST CIGNA (COUNTS III AND IV). ....................................................... 21

    A.    Ms. Fayeulle and Ms. Lietz Allege Numerous Breaches of Fiduciary Duties by Cigna. ..................................................................... 21

    B.    Ms. Fayeulle and Ms. Lietz Have Statutory Standing to Seek ERISA Relief. ........................................................................................... 26

        1.    Ms. Fayeulle's Standing ............................................................ 27

        2.    Ms. Lietz's Standing .................................................................. 30

CONCLUSION ..................................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004).................................................................................................23

*Am. Psychiatric Assoc. v. Anthem Health Plans*,
    50 F. Supp. 3d 157 (D. Conn. 2014)......................................................................26

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................11

*BancOklahoma Mortg. Corp. v Capital Title Co.*,
    194 F.3d 1089 (10th Cir. 1999) ..............................................................................12

*Bible v. United Student Aid Funds, Inc.*,
    799 F.3d 633 (7th Cir. 2015) ..................................................................................13

*Boyle v. United States*,
    556 U.S. 938 (2009).................................................................................................12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...................................................................................19

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011).................................................................................................30

*Coleman v. Commonwealth Land Title Ins. Co.*,
    Civ. Action No. 09-679, 2013 WL 4675713 (E.D. Pa. Aug. 30, 2013) ............14, 15, 32

*Connecticut Gen. Life Ins. Co. v. Ambulatory Health Sys.*,
    Civ. No. 4:12cv535, 2013 WL 1003495 (E.D. Tex. Mar. 13, 2013)......................24

*Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*,
    Civ. No. 3:14-CV-1859 (AVC), 2015 WL 5122269 (D. Conn. Aug. 31, 2015)..........23

*David P. Coldesina, D.D.S. v. Estate of Simper*,
    407 F.3d 1126 (10th Cir. 2005) ........................................................................22, 24

*DeLuca v. Blue Cross Blue Shield of Mich.*,
    475 F. Supp. 2d 640 (E.D. Mich. 2007) ...........................................................28, 29

*DeLuca v. Blue Cross Blue Shield of Mich.*,
    628 F.3d 743 (6th Cir. 2010) ..................................................................................26

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) .....................................................................................28

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ..................................................................................32

*Felix v. Lucent Techs., Inc.*,
  387 F.3d 1146 (10th Cir. 2004) ................................................................... 31

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  No. 05 Civ. 7869(SAS), 2009 WL 3334867 (S.D.N.Y. Oct. 14, 2009) ...................... 14

*General Steel Domestic Sales, LLC v. Denver/Boulder Better Business Bureau*,
  Civ. Action Nos. 1:07-cv-01145-DME-KMT, 07-cv-02170, 2009 WL 535780
  (D. Colo. Mar. 2, 2009) ........................................................................... 16

*Graden v. Conexant Sys. Inc.*,
  496 F.3d 291 (3d Cir. 2007) ............................................................... 30, 31

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
  751 F.3d 740 (6th Cir. 2014) .................................................................... 25

*Horvath v. Keystone Health Plan E., Inc.*,
  333 F.3d 450 (3d Cir. 2003) .................................................................... 29

*In re AEP ERISA Litig.*,
  327 F. Supp. 2d 812 (S.D. Ohio 2004) ........................................................ 22

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ....................................................... 14

*In re WellNx Marketing & Sales Practices Litigation*,
  673 F. Supp. 2d 43 (D. Mass. 2009) ......................................................... 32

*Ivar v. Elk River Partners, LLC*,
  705 F. Supp. 2d 1220 (D. Colo. 2010) ...................................................... 21

*Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*,
  933 F. Supp. 1124 (D. Mass. 1996) .......................................................... 25

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ................................................................. 19

*Kenseth v. Dean Health Plan, Inc.*,
  610 F.3d 452 (7th Cir. 2010) ................................................................... 24

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ................................................................ 33

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) .............................................................................. 30

*Lebahn v. National Farmers Union Uniform Pension Plan*,
  Civ. Action No. 15-1065-MLB, 2015 WL 5006177 (D. Kan. Aug. 20, 2015) ............. 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S.Ct. 1377 (2014) ........................................................................... 12

*Loren v. Blue Cross & Blue Shield of Mich.*,
  505 F.3d 598 (6th Cir. 2007) ................................................................ 28, 29

*Mansker v. TMG Life Ins. Co.*,
  54 F.3d 1322 (8th Cir. 1995) ........................................................................ 27

*Medina v. Catholic Health Initiatives*,
  Civ. Action No. 13-cv-01249-REB-KLM, 2014 WL 4852272
  (D. Colo. Sept. 30, 2014) .............................................................................. 22

*Mega Concrete, Inc. v. Smith*,
  Civ. Action No. 09-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ..................... 16

*Mehling v. New York Life Insurance Co.*,
  413 F. Supp. 2d 476 (E.D. Pa. 2005 ............................................................... 20

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
  782 F. Supp. 2d 294 (S.D. Tex. 2011) ............................................................ 24

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
  722 F.3d 861 (6th Cir. 2013) ....................................................................... 25

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d 762 (1st Cir. 2011) ........................................................................ 32

*Reich v. Lancaster*,
  55 F.3d 1034 (5th Cir. 1995) ....................................................................... 24

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................. 15, 16

*Sun Sav. & Loan Ass'n v. Dierdorff*,
  825 F.2d 187 (9th Cir. 1987) ....................................................................... 18

*Smith v. United HealthCare Servs., Inc.*,
  No. CIV. 00-1163 ADM/AJB, 2000 WL 1198418 (D. Minn. Aug. 18, 2000) ............. 30

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) .................................................................... 16

*Thomas v. Kaven*,
  765 F.3d 1183 (10th Cir. 2014) .................................................................... 11

*Tullis v. UMB Bank, N.A.*,
  515 F.3d 673 (6th Cir. 2008) ....................................................................... 30

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits
  Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ....................................................................... 13

*United States v. Kamahele*,
  748 F.3d 984 (10th Cir. 2014) .................................................................... 16

*United States v. Shifman*,
124 F.3d 31 (1st Cir. 1997) ......................................................................... 16

*United States v. Welch*,
327 F.3d 1081 (10th Cir. 2003) .................................................................... 16

*Vander Luitgaren v. Sun Life Ins. Co. of Canada*,
No. 1:09-cv-11410, 2010 WL 4722269 (D. Mass. Nov. 18, 2010) ............... 31

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ..................................................................................... 25

*Ward v. Utah*,
321 F.3d 1263 (10th Cir. 2003) .................................................................... 29

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................................... 29

## STATUTES AND REGULATIONS

18 U.S.C. § 1961(1) ......................................................................................... 16

18 U.S.C. § 1961(4) ......................................................................................... 12

18 U.S.C. § 1962(c) ............................................................................... 15, 16, 21

18 U.S.C. § 1962(d) ......................................................................................... 21

29 U.S.C. § 1002(7) ......................................................................................... 30

29 U.S.C. § 1002(21)(A) ................................................................................... 22

29 U.S.C. § 1104(a)(1)(B) ................................................................................. 24

29 U.S.C. § 1105 .............................................................................................. 25

29 U.S.C. § 1106(a)(1)(D), (b) .......................................................................... 25

29 U.S.C. § 1109 ......................................................................................... 28, 30

29 U.S.C. § 1132 .............................................................................................. 30

29 U.S.C. § 1132(a)(1)(B) ...................................................................... 27, 28, 30

29 U.S.C. § 1132(a)(2) ..............................................................................*passim*

29 U.S.C. § 1132(a)(3) ......................................................... 27, 28, 29, 30, 31

29 U.S.C. § 1132(a)(3)(B) ................................................................................. 27

29 C.F.R. § 2560.503-1 .................................................................................... 18

## RULES

Fed. R. Civ. P. 8 .............................................................................................. 33

Fed. R. Civ. P. 12(b)(1) .................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 11, 12

Fed. R. Evid. 106 .......................................................................................................... 19

**INTRODUCTION**

Defendants colluded to secretly charge their own administrative fees to health insurance plans and insureds under the guise that the charges were for covered medical expenses. Plantiffs Barbara Fayeulle, Matthew Gentrup, and Carol Lietz ("Plaintiffs") were victimized by the fraud, as were their health benefits plans. They bring claims under RICO and ERISA to remedy this breach of trust.

The fraud operated as follows. Defendants Cigna Corporation and its subsidiaries, Defendants Connecticut General Life Insurance Company and CIGNA Health and Life Insurance Company (collectively, "Cigna") administered Plaintiffs' plans. The plans were self-insured by Plaintiffs' employers, meaning that the employers' assets were used to pay the benefits provided by the plans. Each of the plans limited coverage to "medical expenses." And when Plaintiffs shared in the covered expenses through deductibles and co-insurance requirements, they paid those amounts from their health savings accounts ("HSAs") or health reimbursement accounts ("HRAs").

Plaintiffs' plans paid Cigna an administrative fee for serving as the plans' claims administrator. Cigna, in turn, hired Subcontractors, including Defendants Columbine Chiropractic Plan, LLC, d/b/a Columbine Health Plan ("Columbine") and American Specialty Health Incorporated and American Specialty Health Group Inc. (collectively, "ASH") to help it carry out that function. But Cigna did not pay the Subcontractors by splitting the administrative fee it received from the plans with those Subcontractors. Instead, it colluded with the Subcontractors to secretly cause Plaintiffs' plans and Plaintiffs to pay the Subcontractors' administrative fees by mischaracterizing them as

medical expenses. None of the plans allow plan benefits to be used to cover administrative fees. Indeed, such fees were supposed to be included in the administrative fees these plans had already paid to Cigna. Yet, when Plaintiffs submitted charges for insurance reimbursement, the Subcontractors covertly tacked on their own fees, and Cigna then took funds from Plaintiffs and their plans to pay them.

In order to perpetrate this illegal scheme, Cigna sent legally-mandated Explanations of Benefits ("EOBs") to Plaintiffs that misleadingly described the manner in which their insurance claims had been resolved. In the EOBs, Cigna reported the total of the Subcontractors' administrative fees and the medical providers' actual charges as covered "medical expenses." As a result, Plaintiffs and their plans paid once for administrative fees—pursuant to the administrative services agreement—and then were deceived into paying more for such services under the guise that they were medical expenses that could be paid with plan benefits.

In arguing that the Complaint does not state viable claims, Defendants attack straw men.[1] Plaintiffs' RICO claims, for example, do not challenge Cigna's right to enter into contracts with administrators such as Columbine or ASH, and to enlist their services in managing portions of the Cigna plans. It is free to do that. What Cigna cannot do is misrepresent the fees it owes to those Subcontractors as medical expenses, so that it can secretly impose such fees onto patients or the plans themselves. Cigna argues that no one was misled, relying on a tortured reading of the plan documents and tiny portions of its

---

[1] Plaintiffs incorporate by reference their separate opposition to the motions to dismiss filed by Columbine and ASH.

administrative agreements with the plans; but a fair reading of those documents only reinforces Plaintiffs' central allegation—fees for plan administration are not medical expenses.

Ms. Fayeulle and Ms. Lietz also plead plausible claims that Cigna was a fiduciary under ERISA and breached its fiduciary duties. Cigna was a functional ERISA fiduciary because it had discretionary authority to administer benefits claims and it had control of Plaintiffs' and their plans' assets. Using this power, it stole Plaintiffs' money to pay its Subcontractors' administrative fees and misrepresented to Plaintiffs that the payments were for covered medical expenses for doctor visits. If this does not plausibly allege a fiduciary duty breach, nothing does.

## FACTUAL BACKGROUND[2]

### A.   Cigna, A Claims Administrator for Millions of Insureds, Outsources Its Duties to Columbine, ASH, and Other Subcontractors.

Cigna is a global health insurance company with 80 million customers. 2d Am. Compl. (ECF No. 36) ¶¶ 7, 15. Cigna provides its services through its operating subsidiaries, including Defendant Connecticut General Life Insurance Company ("CGLIC") and CIGNA Health and Life Insurance Company ("CHLIC"). *Id.* ¶ 7.[3] Cigna offers health benefits plans, including "self-insured plans"—in which the plan sponsor (usually an employer) funds medical costs—and "fully-insured plans"—in which claims

---

[2] Plaintiffs' factual allegations are taken as true for purposes of this motion. *See infra* 11.

[3] Cigna complains that Plaintiffs have referred to it and its subsidiaries in the collective. Cigna Mot. 16 n.8. However, Plaintiffs have identified the specific Cigna operating subsidiary that sent communications to them or administered their particular plans. *See, e.g.*, 2d Am. Compl. ¶¶ 4-6.

are funded by premiums paid by the sponsor or individual insureds. *Id.* ¶ 17. For each type of plan, Cigna serves as the claims administrator responsible for administering claims and providing insureds with a network of providers who have agreed to accept discounted fees. *Id.* ¶ 19. When Cigna serves as the claims administrator for a self-insured plan, it collects an administrative fee from the plan sponsor under an "administrative services agreement." *Id.* ¶ 20. For insured plans, there is no such agreement; Cigna collects its administrative costs as part of its premiums. *Id.* ¶ 21.

Under ERISA, administrators like Cigna must provide reports to insureds on the outcome of their claims for benefits. *Id.* ¶ 26. They provide these reports in EOBs, which describe the portion of the insured's medical expenses that are covered under the plan and the portion that remains the responsibility of the insured. *Id.*

Historically, Cigna handled its claims administration work on its own. *Id.* ¶ 27. It approved or denied claims, determined benefits, and contracted with providers to join its network. *Id.* In recent years, however, it has delegated these responsibilities to Subcontractors. *Id.* ¶ 28. Cigna hired Columbine and ASH as Subcontractors to administer chiropractic or physical therapist services for its insureds. *Id.* For a chiropractor or a physical therapist to be part of Cigna's network—as an "in-network provider"—Cigna requires that they enter into in-network contracts with the Subcontractors. *Id.* For example, each chiropractor in Columbine's network must enter into a provider agreement under which it agrees to provide chiropractic services to insureds at reduced rates. *Id.* ¶ 41. Columbine does not itself provide medical services. *Id.* ¶ 39.

When a provider who is in-network with a Subcontractor like Columbine or ASH renders service to a Cigna insured, Cigna and the Subcontractor instruct the provider to submit the resulting claim for insurance benefits to the Subcontractor. *Id.* ¶ 30. The providers identify the services they provided to their patients by CPT Code (a five-digit number used to identify individual health care services), along with describing their "usual and customary" charge for the service. *Id.* The Subcontractor processes the claim, determines whether or not the service is covered under the applicable plan, and then pays the provider as set forth in the in-network rate schedule. *Id.* ¶ 31. Cigna then reimburses the Subcontractor. *Id.* ¶ 31.

### B.   Cigna and the Subcontractors Secretly Shift the Subcontractors' Administrative Fees to Insureds.

Under the Subcontractors' agreements with Cigna, they are entitled to collect a fee from Cigna for their cost of administering claims and running the provider networks. *Id.* ¶¶ 29, 32. But Defendants want to avoid forcing Cigna to pay those fees. *Id.* ¶ 32. If Cigna had to pay the fees, they would either (i) reduce Cigna's profits or (ii) lead to increases in the premiums and administrative service fees that Cigna charges, thus harming demand for its (and, consequently, the Subcontractors') services. *Id.* ¶ 32. Therefore, instead of having Cigna pay the fees, Defendants covertly pass them along to insureds and plans as "medical expenses." *Id.*

They do this by having Cigna issue a misleading EOB to insureds for claims submitted to Subcontractors. *Id.* The EOBs misrepresent that the Subcontractor is the "provider" of the medical services. *Id.* ¶ 33. They add the amount that Cigna owes to the

Subcontractor to the provider's actual allowable charge, and then treat the artificially inflated total in the EOB as the "allowed" or "covered" medical expense amount payable by the insured or plan. *Id.* In other EOBs, Cigna simply inflates the amount charged for medical services without resorting to this subterfuge. *Id.*

The Subcontractors, meanwhile, send Compensation Summaries or Remittance Advice forms to providers that report the provider's "usual and customary charge," the allowed amount based on the in-network fee schedule, and the amount paid by the Subcontractor to the provider. *Id.* ¶ 35. However, these forms do not include or disclose the Subcontractor's administrative fees, or reveal that Cigna and the Subcontractor are charging the insured an inflated amount, which the Subcontractor keeps. *Id.* This conceals the fees from providers, who therefore cannot inform their patients about them. *Id.*

By this method, Cigna and the Subcontractors are able to secretly collect the Subcontractors' fees from Cigna's insureds and self-insured plans. *Id.* ¶ 37. Insureds unknowingly use their ERISA plan funds to pay for these fees, rather than using those funds for medical services. *Id.* To the extent that insureds owe deductibles or co-insurance, they are forced to pay the fees out of pocket. *Id.* And when the insureds' plans limit coverage for the services, the fees deplete those coverage limits more quickly, meaning that insureds can purchase less medical care. *Id.*

C.     **Plaintiffs Receive Chiropractic Care and Are Charged for Defendants'
Administrative Fees.**

1.     **Allegations as to Ms. Fayeulle**

Plaintiff Barbara Fayeulle is a Cigna insured under the Seagate US LLC Open

Access Plus Medical Benefits (High Deductible Health Plan 1). *Id.* ¶ 4. CHLIC provides

claim administration for the plan, which is self-insured by Seagate US LLC, meaning that

Seagate finances the plan's benefit payments. *Id.* The plan is governed by ERISA. *Id.*

The documents Cigna provided to Ms. Fayeulle do not suggest that insureds and

plans will be charged for administrative fees for Subcontractors. *Id.* ¶ 51. Instead, the

plan documents include numerous statements showing that insureds and plans will only

be charged for necessary medical expenses charged by providers. *Id.* ¶¶ 51-56. Moreover,

Ms. Fayeulle used a Health Savings Account ("HSA") to help pay for her medical care.

*Id.* ¶ 57. The plan documents state that HSA money can only be used for "qualified

medical expenses," and do not reference administrative fees charged by subcontractors.

*Id.* ¶ 58.

During 2013, Ms. Fayeulle received health care services from her chiropractor, Dr.

Douglas Brisson. *Id.* ¶¶ 63-68. Dr. Brisson had entered into a Provider Agreement with

Defendant Columbine and thus was an in-network provider under Ms. Fayeulle's plan.

*Id.* ¶ 63. Cigna repeatedly imposed excessive charges on Ms. Fayeulle and her plan to pay

for Columbine's administrative fees. *Id.* ¶ 68.

For example, on May 8, 2013, Ms. Fayeulle received treatment from Dr. Brisson.

*Id.* ¶ 63. Dr. Brisson submitted the claim for benefits to Columbine on June 27, 2013. *Id.*

¶ 64. With Cigna's knowledge and encouragement, when Columbine submitted the claim to Cigna, it billed Cigna for its administrative fees in addition to Dr. Brisson's agreed rate for medical services. *See id.* ¶ 42. On July 1, 2013, Ms. Fayeulle received an EOB from Cigna stating that the "Amount Billed" was $55.00, that the "Covered Amount" was $55.00, and that Ms. Fayeulle owed a "co-pay/deductible" of $55.00. *Id.* ¶ 66. That money was deducted from her HSA. *Id.*

However, under the fee schedule in the Columbine Provider Agreement, Columbine was only to pay $45.00 per office visit. *Id.* ¶ 67. Thus, the additional $10.00 in the "Covered Amount" was a charge for Columbine's administrative fee, not a payment to a doctor for covered medical services. *Id.* The EOB that Ms. Fayeulle received misrepresented the nature of this charge. *Id.* Cigna and Columbine repeated this conduct on other occasions. *Id.* ¶ 68.

When Ms. Fayeulle discovered these fraudulent and excessive charges, she reported them to Cigna. *Id.* ¶ 69. In an effort to avoid her pursuing her grievance, Cigna refunded $60 in administrative fees Ms. Fayeulle had paid, but it did not pay her interest on the charges or transfer the money back to her HSA. *Id.* It also took the position that its relationship with Columbine was "no different from its relationship with other medical providers," and told her it would not change its procedures or refund fees in the future. *Id.*

### 2.     Allegations as to Mr. Gentrup

Plaintiff Matthew Gentrup is a Cigna insured under the City of Loveland Open Access Plus Medical Benefits HRA Benefits. *Id.* ¶ 5. This plan is self-insured by the City

of Loveland, and CGLIC provides claim administration for the plan. *Id.* The documents for Mr. Gentrup's plan state that benefits are limited to medical expenses based on charges by medical providers and do not refer to administrative fees charged by Subcontractors. *Id.* ¶¶ 70-73. The plan documents also state that HRA funds are used only to cover "qualified medical expenses." *Id.* ¶ 74.

In 2011, Mr. Gentrup received health care services from his chiropractor, Dr. Greg Crawford. *Id.* ¶¶ 75-79. For example, on April 27, 2011, Dr. Crawford performed a spinal manipulation (code 98940), for which he billed $36.00, and electrical stimulation (code 97014), for which he billed $19.00. *Id.* Thus, his total bill was $55.00. *Id.* Dr. Crawford submitted the bill to Columbine. *Id.* When Columbine submitted the claim to Cigna, it billed Cigna for its administrative fees in addition to Dr. Crawford's agreed rate for medical services, and Cigna knew it. *See id.* ¶ 42.

On or about May 11, 2011, Mr. Gentrup received an EOB from CGLIC. *Id.* ¶ 76. The EOB stated that Dr. Crawford was the "provider," and accurately reported that Dr. Crawford had billed $19 for the electrical stimulation. *Id.* However, it falsely stated that Dr. Crawford had billed $61.00 for the spinal manipulation. *Id.* The EOB stated that the electrical stimulation was not covered, and therefore the total "Covered Amount" was $61.00—$25.00 more than Dr. Crawford had charged for the only covered service, the manipulation. *Id.* The full $61.00 was removed from Mr. Gentrup's HSA. *Id.*

On June 13, 2011, Dr. Crawford received a Compensation Summary from Columbine stating that he would be paid a total of $45 for his services to Mr. Gentrup. *Id.* ¶ 77. The Compensation Summary, however, did not disclose that Defendants had

charged Mr. Gentrup $45.00 for the spinal manipulation and $16.00 more for their administrative fees. *Id.*

When Mr. Gentrup later found out that Cigna and Columbine were imposing their administrative fees on him in this manner, he switched to paying out of pocket for chiropractic services so that Columbine would no longer determine his benefit payments. *Id.* ¶ 80.

### 3. Allegations as to Ms. Lietz

Plaintiff Carol Lietz was insured by Cigna until December 31, 2013 pursuant to the Siemens Corp. Group Ins. and Flexible Benefits Program. *Id.* ¶ 6. This plan was self-insured by Siemens, and CGLIC provided claim administration for the plan. *Id.* Ms. Lietz's plan was governed by ERISA. *Id.* Ms. Lietz's plan documents, like those of Ms. Fayeulle and Mr. Gentrup, do not state or suggest that Ms. Lietz would be required to pay Subcontractors' administrative fees in addition to charges for covered medical expenses by providers. *Id.* ¶¶ 83-84.

On March 24-26, 2012, Ms. Lietz was treated by Inchiostro Chiropractic, Inc. *Id.* ¶ 85. Dr. Inchiostro billed $160 in total for five separate services and submitted the bill to ASH. *Id.* With Cigna's knowledge and encouragement, when ASH submitted the claim to Cigna, it billed Cigna for its administrative fees in addition to Dr. Inchiostro's agreed rate for the medical services. *Id.* ¶ 48.

Ms. Lietz received an EOB for the services that represented that it was a "summary of a claim … for services provided by Amer Spec Hlth Cleaingh." *Id.* ¶ 86. This was misleading, because ASH is not a provider and did not render services to Ms.

Lietz. *Id.* The EOB also misleadingly reported that the "amount billed" for Ms. Lietz's "visit" was $127.28. *Id.* ¶ 87. In fact, the provider billed $160, but his agreement with ASH only allowed him to collect $88. *Id.* The EOB stated that the entire $127.28, with no discount, was paid from Ms. Lietz's HSA. This was $39.28 more than the provider received for the services, and the difference constituted ASH's secretly-charged administrative fee. *Id.* On June 12, 2012, Dr. Inchiostro received a remittance from ASH stating that the "allowed amount" for the service was $88.00 and the "claim paid amount" was that total. *Id.* The remittance did not disclose that Cigna and ASH had collected $127.28 from Ms. Lietz and pocketed the $39.28 difference. *Id.*

## LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). Under Rule 12(b)(6), the Court assesses whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1190-91 (quoting *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted)).[4]

---

[4] Cigna's motion also cites Fed. R. Civ. P. 12(b)(1) as a grounds for dismissal. However, Cigna's only discernable argument that the Court lacks subject matter jurisdiction pertains to the putative class claims based on its conduct with other Subcontractors (Cigna Mot. 7). That is not an issue of "constitutional standing." *See infra* 32-33. And issues of "statutory standing," such as (*cont'd on next page*)

**ARGUMENT**

I.   **PLAINTIFFS STATE VALID RICO CLAIMS AGAINST CIGNA (COUNTS I AND II).**

To state a RICO claim against Cigna, Plaintiffs must allege that it "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *BancOklahoma Mortg. Corp. v Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999). Plaintiffs have successfully pleaded each of these elements.

**A.   Plaintiffs Allege A RICO Enterprise.**

The term "enterprise" in RICO "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "This enumeration of included enterprises is obviously broad, encompassing '*any . . .* group of individuals associated in fact.'" *Boyle v. United States*, 556 U.S. 938, 944 (2009) (quoting 18 U.S.C. § 1961(4). Under the liberal construction of RICO, an "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 948.

Here, Plaintiffs have pleaded RICO enterprises in the alternative. First, they allege that Cigna, Columbine, ASH, and Cigna's other Subcontractors formed an associated-in-fact enterprise that operated together to collect administrative fees under the guise that they were medical expenses. 2d Am. Compl. ¶ 102. Second, they allege that Cigna

---

whether Plaintiffs have stated claims that they are permitted to pursue under ERISA, are considered under Rule 12(b)(6). *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387-88 & n.4 (2014).

engaged in multiple bilateral RICO enterprises with each of its Subcontractors, including Columbine and ASH. *Id.* ¶ 103.

Cigna principally argues that its relationships with ASH, Columbine, and its other Subcontractors do not constitute a RICO enterprise but were instead "ordinary commercial relationships" through which each party pursued independent goals. Cigna Mot. (ECF No. 46) 10. But the alleged relationship between Cigna and its Subcontractors plausibly satisfies the three features described in *Boyle*: it had a purpose ("to collect administrative fees from Cigna insureds and plans by improperly characterizing them as payment for covered medical expenses," 2d Am. Compl. ¶ 102); those associated with the enterprise worked together for the common purpose (*id.* ¶¶ 1, 30-37, 40-45, 48-50); and the relationship had longevity (conduct over the past several years, *id.* ¶¶ 63-69, 74-79, 85-88, 109). Plaintiffs have alleged far more than the "commercial relationship" described in Cigna's authorities, because they have plausibly alleged that Cigna, ASH, Columbine, and its Subcontractors collaborated to collect administrative fees from insureds and plans, such that they "work[ed] as a single enterprise." *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015).[5] Rule 8 requires no more than this.

Cigna also attacks Plaintiffs' allegations that the RICO enterprise included Subcontractors other than ASH and Columbine. It suggests that to plead a single

---

[5] By contrast, in *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013), the plaintiff alleged only "parallel, uncoordinated fraud." *Id.* at 855.

enterprise including these Subcontractors, Plaintiffs must plead that the Subcontractors interacted with each other to carry out the scheme. Cigna Mot. 14-15. However, a plaintiff can successfully allege a single associated-in-fact RICO enterprise without pleading that each of its participants interacted with each of the others. *Coleman v. Commonwealth Land Title Ins. Co.*, Civ. Action No. 09-679, 2013 WL 4675713, at *7 (E.D. Pa. Aug. 30, 2013); ("Commonwealth Land was the 'unifying rim' for the title agents by acting as a common leader and directing the illicit activities of the title agents."); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1213 (S.D. Cal. 2009) (rejecting argument that "a 'hub and spoke' structure [] does not fall within the definition of a RICO enterprise"); *Fuji Photo Film U.S.A., Inc. v. McNulty*, No. 05 Civ. 7869(SAS), 2009 WL 3334867, at *3 (S.D.N.Y. Oct. 14, 2009) (plaintiff alleged that defendant "occupied the center of the enterprise and used his position … to coordinate the activities of the … corporate defendants that made up the enterprise's outer edge").

Similarly, Cigna contends that Plaintiffs have not pleaded facts sufficient to support the alternative existence of bilateral enterprises between Cigna and its other unnamed Subcontractors. Cigna Mot. 15. Whether Plaintiffs can appropriately pursue relief against Cigna in connection with these enterprises is a matter for class certification. *See infra* 32-33. Regardless, Plaintiffs have pleaded that Cigna delegated its claims administration work to these other Subcontractors (2d Am. Compl. ¶ 28); it falsifies EOBs for claims submitted to these Subcontractors to include their administrative fees (*id.* ¶ 33); and by these uniform and fraudulent misrepresentations, Cigna and the

Subcontractors shift the cost of administrative fees to Cigna's insureds and self-insured plans (*id.* ¶ 1-2, 37). These allegations plausibly establish that Cigna engaged in bilateral enterprises with the other Subcontractors. *See Coleman*, 2013 WL 4675713, at *8.

### B. Plaintiffs Allege That Cigna Participated in the Conduct of the Enterprise.

A defendant must "participate[] in the operation or management of the enterprise itself" to be subject to liability under section 1962(c). *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Plaintiffs sufficiently allege that Cigna engaged in this level of participation; indeed, they allege that it had a major role to play in the coordinated fraud. Cigna encouraged the Subcontractors to inflate provider charges to include their administrative fees. 2d Am. Compl. ¶¶ 42, 48. After receiving the inflated provider claims, it knowingly misrepresented to insureds in EOBs that the amounts were for covered expenses. *See id.* ¶ 33, 42, 45, 48. Thus, the Subcontractors supplied the input (the increased charges) and Cigna supplied the output to insureds and plans (the false EOBs). Cigna then collected the money from the insureds and plans and transferred it to the Subcontractors, who took their fees and paid the providers the remainder. *Id.* ¶¶ 35, 37, 42, 48-50. Although Cigna asserts that Plaintiffs do not allege that it had any part in the operation or management of the enterprise and instead allege "only that Cigna contracted with Columbine and ASH to control costs," (Cigna Mot. 11), it ignores all of these well-pleaded allegations. As the allegations show, Cigna was "plainly integral to

carrying out" the enterprise's activities and therefore may be held liable under section 1962(c). *See United States v. Shifman*, 124 F.3d 31, 36 (1st Cir. 1997).[6]

### C.  Plaintiffs Allege A Pattern of Racketeering Activity.

Plaintiffs have also alleged that the enterprise engaged in a pattern of racketeering activity. A pattern of racketeering activity requires "two or more acts of racketeering activity (commonly referred to as 'predicate acts'), which are related and amount to, or otherwise constitute a threat of, continuing racketeering activity." *United States v. Kamahele*, 748 F.3d 984, 1002 (10th Cir. 2014) (internal citations, quotation marks, and other marks omitted). Mail and wire fraud are predicate acts of racketeering activity. 18 U.S.C. § 1961(1). In order to show mail or wire fraud, a party must show (1) "a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises" and (2) the use of the United States mails or interstate wire, television, or radio communications for the purpose of executing the scheme. *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Plaintiffs have alleged a scheme to defraud and the use of mail and wire communications to further it. 2d Am. Compl. ¶¶ 1-2, 33-37, 66-68, 76-79, 86-88, 105-111; *see United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003) (a scheme to

---

[6] Cigna's authorities (Cigna Mot. 11) do not help it. In *General Steel Domestic Sales, LLC v. Denver/Boulder Better Business Bureau*, Civ. Action Nos. 1:07-cv-01145-DME-KMT, 07-cv-02170, 2009 WL 535780 (D. Colo. Mar. 2, 2009), the court concluded that the plaintiff had alleged only that the defendants performed services for the enterprise, not that they had any part in its operation or management. *Id.* at \*22. In *Reves*, there was no dispute that the defendant accountant did not "participate in the operation or management" of the alleged single-entity enterprise, a farmer's cooperative. 507 U.S. at 185. And in *Mega Concrete, Inc. v. Smith*, Civ. Action No. 09-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011), the plaintiffs alleged only "facts suggesting a business relationship," *id.* at \*10. Here, by contrast, Plaintiffs have alleged facts plausibly showing that Cigna participated in the operation and management of a RICO enterprise.

defraud is "conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension," such as through "deceitful concealment of material facts") (internal citation and quotation marks omitted).

Cigna argues that Plaintiffs have not pleaded predicate acts because they have not plausibly alleged that the EOBs were false or misleading. Cigna Mot. 12. As to Ms. Fayeulle and Mr. Gentrup, it relies on the definitions of "Covered Expenses" and "charges" in plan documents that it attached to its motion.[7] It says that because "Covered Expenses" was defined as "charges made by a Physician … for professional services," and "charges" was defined as "the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount," it is not plausible that the EOBs misrepresented that the plans or the insureds were only paying for medical expenses. (*Id.* (emphasis omitted); *see also* Ex. 1 to Cigna Mot. (ECF No. 47-1) at 27, 60, Ex. 2 to Cigna Mot. (ECF No. 47-2) at 23, 54). The problem for Cigna, however, is that the plan documents nowhere state or suggest that "Covered Expenses" include "charges" *added* by *third-party administrators*—the Subcontractors—to either (i) the "actual billed charges" or (ii) the "different amount" that the "provider" "directly or indirectly" agreed to receive. Thus, the plan documents do not render implausible Ms. Fayeulle and Mr. Gentrup's allegations that the EOBs were misleading.

---

[7] Cigna's declaration does not establish that the plan documents were in effect for Plaintiffs' plans during the entire relevant time period. *See* Declaration of Carrie Bodner in Supp. of Cigna Mot. (ECF No. 47) ("Bodner Decl.") ¶¶ 4-6 (citing effective dates but not whether plan documents were superseded). It is possible that these are not the authentic plan documents that were in effect during the time of the EOBs.

As to Ms. Lietz, Cigna argues that there was no misrepresentation because the alleged EOB disclosed that the claim was for "services provided by Amer Spec Hlth Cleaingh," and ASH billed Cigna and received the $127.28 reflected in the EOB. Cigna Mot. 12. But Cigna ignores that ASH is not actually a health care provider and did not provide *any* services to Ms. Lietz. 2d Am. Compl. ¶ 86. Ms. Lietz could not be expected to know that the charges for "services provided" included an administrative fee that was added by a Cigna subcontractor, not a medical provider. Cigna also omits that the EOB stated that the $127.28 "amount billed" was "the amount that was billed for your visit." *Id.* ¶ 87. This, too, was false—the provider billed $160.00 for the "visit" and was only allowed to collect $88.00. *Id.*

In sum, these EOBs, which were legally mandated by ERISA (29 C.F.R. § 2560.503-1), falsely suggested that Plaintiffs were charged only for the amounts that their providers had billed or contracted to receive as payment for their visits. In fact, Plaintiffs were paying for Columbine or ASH's administrative fees on top of those charges. The plan documents do not undermine the falsity of the EOBs' statements. They help establish it. Because the EOBs furthered Defendants' scheme to deceive Plaintiffs, they are predicate acts of mail fraud under RICO.[8]

---

[8] Cigna argues that Plaintiffs cannot premise fraud claims on the forms that Columbine and ASH sent to providers. Cigna Mot. 12 n.7. Those communications, however, were still predicate acts because they were in furtherance of Defendants' scheme to defraud. 2d Am. Compl. ¶¶ 35, 77, 88; *see also Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987) (mailings to third parties "were in furtherance of the [alleged] fraudulent scheme" where their "effect … was to prevent the development of any suspicion … and thus keep [the plaintiff] ignorant of [the defendant's] activities."). The wire transmittals of the payments for the fees were also predicate acts. 2d Am. Compl. ¶¶ 106-07.

Cigna also contends that Plaintiffs' plans were not misled. This is irrelevant to the counts alleged. At most, it affects class certification. And while Cigna relies on documents outside the record—specifically, isolated excerpts from its heavily redacted administrative-services-only, or "ASO," agreements with the plans—it has not filed complete copies of these documents. Instead, it unveils only one unredacted paragraph from heavily-redacted pages of these multi-page contracts, and it omits most of the other pages entirely.[9] The Court should not rely on Cigna's grossly incomplete excerpts from non-public documents to decide Cigna's 12(b)(6) motion. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) ("when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record"); Fed. R. Evid. 106 (rule of completeness).[10]

Moreover, the statement that Cigna includes from the ASOs does not help it. Cigna relies on the ASOs' comment that "capitation and fee-for-service charges for

---

[9] Cigna's counsel asserts that the other excerpts were redacted for "confidentiality purposes." Bodner Decl. ¶¶ 7-9. But if the ASOs are truly confidential documents, then Cigna shouldn't be allowed to publicly disclose one portion and redact or omit the rest, which is what it has done here. Moreover, Cigna could have sought leave to file the unredacted and complete documents under seal, rather than relying on a few isolated excerpts and depriving Plaintiffs and the Court of the remaining information in the documents. The logical inference is that the missing information in the documents is detrimental to Cigna's effort to dismiss this case.

[10] As with the plan documents, Cigna's declaration does not confirm that the ASOs it submits were in effect during the entire relevant time period, which is another problem with their authenticity. *See* Bodner Decl. ¶¶7-9.

various vendors and other providers/arrangers of health care services and/or supplies will be paid as claims for Plan Benefits." Cigna Mot. 13. But this does not show that plans were notified that Cigna would pay its Subcontractors' administrative fees as "claims for Plan Benefits." To the contrary, the terms used—"capitation" and "fee-for-service charges"—are used to describe payments to providers or physicians, which the Subcontractors plainly are not.[11] Thus, the ASOs did not tell the plans that Cigna was going to charge them for its Subcontractors' fees under the guise that those fees were medical expenses.

Cigna is also wrong when it argues that Plaintiffs "have not alleged that any of their plans suffered an injury to business or property" (Cigna Mot. 17). *See* 2d Am. Compl. ¶¶ 32-34, 36-37, 45, 48, 79 (alleging that plans paid administrative fees). Under Plaintiffs' allegations, when insureds did not bear the entire responsibility to pay for the so-called "benefits," the self-insured plans would pay the rest. This was an injury to their property.[12]

---

[11]   *See* http://www.investopedia.com/terms/c/capitation-payments.asp#ixzz3zocdh7Fq (last visited Feb. 25, 2016) (defining "capitation payments" as "a fixed, pre-arranged monthly payment received by a physician, clinic or hospital per patient enrolled in a health plan with a capitated contract"); https://www.medicaid.gov/medicaid-chip-program-information/by-topics/delivery-systems/fee-for-service.html (last visited Feb. 25, 2016) (defining "fee-for-service" as "a fee-for-service delivery system where health care providers are paid for each service (like an office visit, test, or procedure)").

[12]   Although Cigna argues that an ERISA plan may not pursue RICO claims (Cigna Mot. 17), its authority for this proposition, *Mehling v. New York Life Insurance Co.*, 413 F. Supp. 2d 476 (E.D. Pa. 2005), did not so hold. The *Mehling* court only ruled that a plaintiff did not have standing to bring RICO claims derivatively on behalf of her plan because ERISA provided her with a direct remedy. *Id.* at 480.

### D.   Plaintiffs Allege That They Were Injured by Defendants' Racketeering Activity.

Cigna does not challenge Mr. Gentrup and Ms. Lietz's allegations of injury from Defendants' racketeering activity. It does argue that Ms. Fayeulle cannot show injury because it repaid her the administrative fees she was charged (Cigna Mot. 13)—which amounted to an admission that they were wrongful charges. Regardless of the repayment, Ms. Fayeulle has pleaded a tangible economic harm, because she lost the tax-deferred interest that would otherwise have accrued on the funds that Cigna wrongfully withdrew from her HSA. 2d Am. Compl. ¶ 69; *see also* Bodner Decl. Ex. 1 (ECF No. 47-1) at 69 (in Seagate Plan HSAs, "unused money accumulates tax-deferred interest"). This is a sufficient economic injury to permit a RICO claim. Cigna's only authority is not to the contrary. *See Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232 (D. Colo. 2010) (plaintiffs who did not allege that property was worth less than they paid did not have an "actual, monetary loss" sufficient to constitute RICO injury).

### E.   Plaintiffs Allege a RICO Conspiracy.

Because Plaintiffs have alleged substantive RICO violations under § 1962(c), their RICO conspiracy claim under § 1962(d) also survives. Cigna does not argue otherwise. *See* Cigna Mot. 10 n.6.

## II.   PLAINTIFFS FAYEULLE AND LIETZ STATE VALID ERISA CLAIMS AGAINST CIGNA (COUNTS III AND IV).

### A.   Ms. Fayeulle and Ms. Lietz Allege Numerous Breaches of Fiduciary Duties by Cigna.

A party is a fiduciary with respect to a plan "to the extent [it] exercises any discretionary authority or discretionary control respecting management of such plan or

exercises any authority or control respecting management or disposition of its assets, …
or has any discretionary authority or discretionary responsibility in the administration of
such plan." 29 U.S.C. § 1002(21)(A). Whether a defendant is a "functional fiduciary"
under this definition is a "fact-intensive question[]," for which "a motion to dismiss is not
the proper vehicle." *Medina v. Catholic Health Initiatives*, Civ. Action No. 13-cv-01249-
REB-KLM, 2014 WL 4852272, at *4 (D. Colo. Sept. 30, 2014); *see also In re AEP
ERISA Litig.*, 327 F. Supp. 2d 812, 827 (S.D. Ohio 2004) ("fiduciary status is a fact-
intensive inquiry, making the resolution of that issue inappropriate for a motion to
dismiss").

In asking the Court to resolve this question against Plaintiffs as a matter of law,
Cigna relies on the principle that "parties are only plan fiduciaries to the extent they are
performing one of the functions identified in the definition." *David P. Coldesina, D.D.S.
v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005). It then contends that Plaintiffs
have not alleged that it was a functional fiduciary with respect to the challenged acts.
Cigna Mot. 18-19.

It is wrong. Cigna's alleged actions plainly implicate Cigna's discretionary
authority and its control over plan assets. Plaintiffs allege that Cigna improperly included
the Subcontractors' administrative fees in the amounts owed by insureds and plans for
claims, used plan assets to pay those improper fees, and then issued false EOBs that
mischaracterized the fees as expenses for medical services. 2d Am. Compl. ¶¶ 121-125.
Under Plaintiffs' allegations, these actions were within the scope of Cigna's fiduciary
authority. *Id.* ¶¶ 12, 19, 33, 42, 48.

Rather than supporting Cigna, the plan documents attached to Cigna's motion further show that it was a fiduciary. The Seagate US LLC Plan states that Cigna was delegated "the discretionary authority … to make factual determinations in connection with its review of claims under the plan," and that this "discretionary authority" included "the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments." Bodner Decl. Ex. 1 (ECF No. 47-1) at 57; *see also* Ex. 2 (ECF No. 47-2) at 42 ("[CGLIC], in its discretion, will calculate Covered Expenses following evaluation and validation of all provider billings …"); Ex. 3 (ECF No. 47-3) at 25 ("In all cases, benefits are based on reasonable and customary charges and medical appropriateness as determined by the Claims Administrator [*i.e.*, Cigna] for your medical plan option.").[13]

Thus, as Plaintiffs have alleged and the plan documents further establish, Cigna had fiduciary discretion to determine whether Plaintiffs were entitled to particular benefits. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004) ("a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan"); *Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, Civ. No. 3:14-CV-1859 (AVC), 2015 WL 5122269, at *4 (D. Conn. Aug. 31, 2015) (Cigna, as plaintiff, successfully pleaded fiduciary status where "the plan terms g[ave] Cigna discretionary authority by authorizing Cigna to interpret and apply terms in review

---

[13] The portions of the ASOs that Cigna omitted or redacted might also have something to say about this delegated discretionary authority.

of claims" and "determine whether a person is entitled to benefits under the plan").[14]

Cigna was also a fiduciary because it exercised control over the plan assets, such as Plaintiffs' HRA and HSA funds, that were used to pay the administrative fees. 2d Am. Compl. ¶¶ 18-19, 34; *see Coldesima*, 407 F.3d at 1133-34 (party that controls plan assets is automatically in a fiduciary position).

An ERISA fiduciary like Cigna must discharge its fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary also shall not engage in self-dealing: in other words, it "shall not cause the plan to engage in a transaction, if [it] knows or should know that such transaction constitutes a direct or indirect … transfer to, or use by or for the benefit of a party in interest, of any assets of the plan," and it shall not deal with the assets of the plan in its own interest. 29 U.S.C.

---

[14] *See also Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 465 (7th Cir. 2010) ("As an HMO and a claims administrator possessed of discretion in construing and applying the provisions of its group health plan and assessing a participant's entitlement to benefits, Dean is an ERISA fiduciary."); *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995) (claims administrator was fiduciary because it had authority to "investigate, process, and approve claims, compute and determine benefits, maintain claim files, and draw checks on an account to pay plan benefits"); *Connecticut Gen. Life Ins. Co. v. Ambulatory Health Sys.*, Civ. No. 4:12cv535, 2013 WL 1003495, at *2 (E.D. Tex. Mar. 13, 2013) (Cigna successfully alleged fiduciary status where it "administer[ed] the plans pursuant to written agreements with the plan sponsors and [had] been delegated the discretion or authority to adjudicate claims under those plans"); *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 306 (S.D. Tex. 2011) (plaintiffs successfully alleged that Cigna was a fiduciary because it "was responsible for making determinations to pay benefits at amounts drastically lower than the applicable ERISA plans require").

§ 1106(a)(1)(D), (b). Moreover, a fiduciary may not conceal or fail to remedy breaches by other fiduciaries. 29 U.S.C. § 1105.

Plaintiffs have alleged that Cigna ran afoul of these duties when it collaborated with the Subcontractors to secretly impose their administrative fees as part of plan "benefits" and when it used plan assets to pay its own obligations to the Subcontractors. 2d Am. Compl. ¶¶ 85-88, 120-25; *see Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 742 (6th Cir. 2014) (affirming a final judgment against Blue Cross for breaching fiduciary duty by "inflating hospital claims with hidden surcharges in order to retain additional administrative compensation"); *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 866 (6th Cir. 2013) (Blue Cross breached its fiduciary duty to a plan when it discretionarily set and charged fees to cover obligations it owed to the State of Michigan).[15] Cigna also violated its fiduciary duties by making misrepresentations about plan benefits in the EOBs. 2d Am. Compl. ¶¶ 123-24; *see Varity Corp. v. Howe*, 516 U.S. 489, 503-05 (1996) (defendant's representations about plan benefits were fiduciary acts).

Cigna's response to Plaintiffs' clear allegations of fiduciary breach is to characterize Plaintiffs' case as an attack on its ministerial and non-discretionary

---

[15] To the extent Cigna delegated its fiduciary discretion over benefits claims to its Subcontractors, Cigna had the fiduciary duty to monitor their ongoing activities, and it breached that duty. 2d Am. Compl. ¶¶ 122-23 (citing 29 U.S.C. § 1105); *see Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F. Supp. 1124, 1140-41 (D. Mass. 1996) ("a delegating fiduciary retains an obligation to oversee and monitor the activities of his delegate").

"processing of claims" or "calculation of benefits." Cigna Mot. 18.[16] Again, however, Plaintiffs allege that Cigna was given discretion when addressing benefits claims, such that it was not performing a purely ministerial function, and that it had control over plan assets. *See* supra 23-24. These allegations—which are also corroborated by the plan documents Cigna submitted—must be taken as true at this stage. Cigna also misconstrues Plaintiffs' claims as arising from its "business decision" to contract with Columbine and ASH. Cigna Mot. 19. What Plaintiffs actually allege, however, is that Cigna misused plan funds and mischaracterized its Subcontractors' administrative fees as covered medical expenses under the plans. These acts cannot be characterized as a "business decision" that "do not implicate any fiduciary duties," as Cigna contends (Cigna Mot. 20).[17]

## B.   Ms. Fayeulle and Ms. Lietz Have Statutory Standing to Seek ERISA Relief.

Ms. Fayeulle and Ms. Lietz seek to obtain relief on behalf of their plans under 29 U.S.C. § 1132(a)(2) (Count III) and to remedy Cigna's breaches of fiduciary duty under 29 U.S.C. §§ 1109, 1132(a)(1)(B), and 1132(a)(3) (Count IV). As relief, they request

---

[16] Cigna's sole authority on this point is inapt. In *Lebahn v. National Farmers Union Uniform Pension Plan*, Civ. Action No. 15-1065-MLB, 2015 WL 5006177 (D. Kan. Aug. 20, 2015), the claim arose from a pension consultant's math error in calculating benefits to be paid. *Id.* at *1 The court determined that the erroneous calculation did not involve the exercise of a fiduciary function. *Id.* at *2.

[17] This case is not like those cited by Cigna, because Plaintiffs are not alleging that Cigna breached its fiduciary duties because it made "system-wide arrangements for the provision of network services." Cigna Mot. 20; *see also Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 159-60 (D. Conn. 2014) (defendant's setting of provider reimbursement rates at a level that allegedly violated Mental Health Parity Act was a "business decision," not a fiduciary act under ERISA); *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010) (rate negotiations with providers were not a fiduciary act).

"legal, equitable, and injunctive relief under ERISA to remedy Defendants' past and ongoing violations of ERISA and breaches of fiduciary duty …." 2d Am. Compl., Prayer for Relief ¶ G. Ms. Fayeulle and Ms. Lietz have each pleaded standing under ERISA to seek this relief.

### 1.   Ms. Fayeulle's Standing

Ms. Fayeulle is currently covered under her husband's employer's plan. Because she is a beneficiary of that plan under ERISA, it is undisputed that she has statutory standing to bring a civil action to enforce and clarify her rights "under the terms of the plan" under § 1132(a)(1)(B); to obtain "appropriate relief" for fiduciary breaches under § 1132(a)(2); and to enjoin ERISA violations and obtain other "appropriate equitable relief" under §1132(a)(3). *See* 2d Am. Compl. ¶¶ 126-128.

Cigna does not cite any authority to suggest that Ms. Fayeulle lacks this standing. Instead, it argues that she cannot receive two particular remedies. First, Cigna suggests that Ms. Fayeulle cannot recover "restitution" because it repaid the $60 in administrative fees it wrongfully took from her HSA. Cigna Mot. 21. But Ms. Fayeulle's ERISA claims are not couched as a request solely for "restitution" of those particular fees. For example, she seeks "restoring of monetary losses to self-insured plans and insureds, including interest." 2d Am. Compl, Prayer for Relief ¶ G. Cigna's repayment of the fees—without interest and without putting them back into her HSA—did not deprive her of the right to seek this relief on her own behalf. *See Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995) (prejudgment interest awards are permitted under 29 U.S.C. § 1132(a)(3)(B) as "other appropriate equitable relief").

27

Second, Cigna contends that Ms. Fayeulle has not pleaded an "immediate threat of future harm" and therefore cannot seek "injunctive relief" to remedy the harm that would occur if she sought services from a Columbine-contracted provider in the future. Cigna Mot. 21. But in addition to prospective injunctive relief, Ms. Fayeulle seeks other appropriate equitable and remedial relief under §§ 1109, 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3) to address the breaches of fiduciary duty, including clarifying her rights not to be charged for those fees, imposing a surcharge for the improper gains obtained in breach of Defendants' duties, and removing Defendants as administrators of the plans. *See* 2d Am. Compl., Prayer for Relief ¶ G. Cigna does not argue that Ms. Fayeulle may not obtain this relief.

Further, Cigna is wrong that Ms. Fayeulle must show "an immediate threat of future harm" to pursue prospective injunctive relief under ERISA. Cigna's ongoing breach is sufficient to allow Ms. Fayeulle, as beneficiary, to seek that relief under both §§ 1132(a)(2) and (a)(3). *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 103 (2d Cir. 2011) (allegations of breach of fiduciary duty "are a sufficient predicate for standing to seek injunctive relief" under § 1132(a)(3) regardless of individual harm); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 610 (6th Cir. 2007) ("Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3); they may allege only violation of the fiduciary duty owed to them as a participant in and beneficiary of their respective ERISA plans"); *DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F. Supp. 2d 640, 646 (E.D. Mich. 2007) (as plan beneficiary, plaintiff had standing to assert violations of fiduciary duties and seek § 1132(a)(2) relief,

"regardless of whether he [could] show that he personally suffered or will suffer a concrete injury as a result of BCBSM's conduct")[18]; *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief" to remedy fiduciary breaches under ERISA).

Regardless, a reasonable prospect exists that Ms. Fayeulle will be personally harmed by Cigna's practices in the future. Although Cigna repaid the previous fees charged (without interest), Cigna expressly told Ms. Fayeulle that in the future, she will be billed for Columbine's administrative fees if she visits a Columbine-contracted provider. 2d Am. Compl. ¶ 69. This has a chilling effect on her use of those providers, and if she does visit them, Defendants will repeat the misconduct. The prospect is sufficient to justify injunctive and declaratory relief, even outside the context of ERISA's specific provision of remedies to beneficiaries and plans when fiduciary duties are breached. *See Ward v. Utah*, 321 F.3d 1263, 1268 (10th Cir. 2003) (cited by Cigna) (animal rights activist had standing to challenge hate-crime statute because state had not conceded inapplicability to his conduct).

---

[18] The Sixth Circuit later held in *Loren* that a plaintiff must plead that she has suffered or will suffer a non-speculative individual harm to bring an § 1132(a)(2) claim for relief on behalf of a plan, even though ERISA includes no such requirement and the court did not find one as to § 1132(a)(3). 505 F.3d at 608. Plaintiffs maintain that *Loren* was wrong on this point and that the earlier *DeLuca* decision states the correct rule. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing ....'"). Regardless, even *Loren*'s rule would not bar Ms. Fayeulle's § 1132(a)(2) claim for the other reasons set forth herein.

## 2.    Ms. Lietz's Standing

Ms. Lietz's status as a former employee of Siemens does not bar her from obtaining relief under ERISA, as Cigna contends. ERISA allows a "participant" to bring suit under 29 U.S.C. § 1132, and the statute defines "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer...." 29 U.S.C. § 1002(7). Here, Ms. Lietz seeks to recover the amount that she was charged in excess of properly payable plan benefits. If she succeeds, she will be entitled to reimbursement of these excessive and impermissible charges. For example, the Court could order "restitution-type damages for the amount Defendants overcharged [Ms. Lietz] for ... copayments" under the terms of her plan. *Smith v. United HealthCare Servs., Inc.*, No. CIV. 00-1163 ADM/AJB, 2000 WL 1198418, at *3 (D. Minn. Aug. 18, 2000). Or it could order disgorgement and establish a constructive trust on Defendants to return their ill-gotten gains to Ms. Lietz and the other plaintiffs. *See, e.g.*, *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 299 (3d Cir. 2007). Or, as another example, the Court could impose a surcharge under § 1132(a)(2), requiring Cigna to pay back its overcharges to the plan, which would then distribute them back to the employees who paid more than they should have. *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011). These possible recoveries are a "benefit" sufficient to give Ms. Lietz "participant" standing to pursue her claims in Counts III and IV under §§ 1109, 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3). *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 and n.6 (2008) (plaintiff who no longer participated in plan had standing to seek "recovery for fiduciary breaches

30

that impair the value of plan assets in a participant's individual account"); *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 680 and n.8 (6th Cir. 2008) (former employee alleged standing where "assets recovered from the defendant would first be paid into the plans then allocated to [his] individual accounts, and ultimately paid to him in the form of benefits"); *Vander Luitgaren v. Sun Life Ins. Co. of Canada*, No. 1:09-cv-11410, 2010 WL 4722269, at *1 (D. Mass. Nov. 18, 2010) (former employee had standing where he could "argue he is still entitled to the amount that [the fiduciary] made from his assets").

Cigna also attacks Ms. Lietz's request for "prospective equitable relief," arguing that because she is not a current Siemens employee, she will not benefit from an injunction requiring Defendants to stop breaching their fiduciary duties. Cigna Mot. 23. While that may be correct, it does not show that Ms. Lietz is not entitled to any relief. Ms. Lietz was undisputedly a participant at the time of the fiduciary breach, is still a participant as defined by ERISA, and like Ms. Fayeulle, she is seeking remedies other than prospective injunctive relief. *See* 2d Am. Compl., Prayer for Relief ¶ G. ERISA permits a former employee to seek these remedies. *See Graden*, 496 F.3d at 297 (former employee successfully alleged breach of fiduciary duty claim based on conduct that affected his benefits); *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 (10th Cir. 2004) (recognizing possibility that former employee could bring breach of fiduciary duty claims on behalf of the plan under § 1132(a)(2) or "claims for equitable relief brought under the catch-all provision of [§ 1132(a)(3)]").

## III.   CIGNA'S REQUEST FOR DISMISSAL OF CLAIMS RELATED TO SUBCONTRACTORS OTHER THAN ASH AND COLUMBINE LACKS MERIT.

Finally, the Court should reject Cigna's argument that Plaintiffs' claims against it related to other Subcontractors not named in the complaint should be dismissed. First, it argues that Plaintiffs lack "standing" to litigate these claims because they were not injured by Cigna's actions as to other Subcontractors. Cigna Mot. 7-8. However, Plaintiffs have standing to litigate against Cigna with regard to its scheme to collect Subcontractor fees and misrepresent them as medical expenses. Whether Plaintiffs are appropriate representatives of a class seeking redress for Cigna's use of this scheme with other unnamed Subcontractors is an issue for class certification; it is not a standing issue. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) ("an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans"); *Coleman*, 2013 WL 4675713, at *9 n.5 (plaintiffs' ability to litigate claims on behalf of other individuals harmed by RICO scheme "w[ould] be decided when the parties litigate the class action status of this case").[19] Cigna is also wrong that Plaintiffs must specifically and separately plead

---

[19] Cigna's standing cases do not show that Plaintiffs cannot litigate claims involving its conduct with other Subcontractors. For example, in *In re WellNx Marketing & Sales Practices Litigation*, 673 F. Supp. 2d 43 (D. Mass. 2009), claims involving one defendant's product were dismissed because no plaintiff had purchased the product in question from it. *Id.* at 55. Similarly, in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011), the court dismissed claims because it found them to be "conduct of another kind" to which the plaintiffs had not been subjected. Here, Plaintiffs were harmed by (*cont'd on next page*)

standing as to each of the alleged bilateral RICO enterprises that included it but not ASH or Columbine. *See Coleman*, 2013 WL 4675713, at *9 ("[A]s long as Plaintiffs have established an injury from a predicate act they have RICO standing. … This standing permits them to plead multiple enterprises.").

Cigna also argues that Plaintiffs' allegations about other Subcontractors do not satisfy notice pleading requirements, protesting that it does not know which of its relationships Plaintiffs seek to challenge. Cigna Mot. 8-9. But Plaintiffs' allegations are sufficient to satisfy Fed. R. Civ. P. 8, because they give Cigna "fair notice of what the claim is and the grounds upon which it rests." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation, quotation marks, and other marks omitted). The allegations clearly describe what kind of Subcontractors are at issue: those that Cigna has engaged to handle its claims administration for it and to build its provider networks. 2d Am. Compl. ¶¶ 27-38. The allegations also notify Cigna of the misconduct alleged as to these Subcontractors, which is Cigna's scheme to misrepresent the Subcontractors' administrative fees as medical expenses charged by providers and then use plan assets to pay for those fees. *Id.* With this information, Cigna does not have to guess to figure out the other Subcontractors that were part of its scheme, in addition to ASH and Columbine.

## CONCLUSION

The Court should deny Cigna's motion to dismiss the Second Amended Complaint.

---

Cigna's conduct, and they allege that it engaged in identical conduct as to other Subcontractors' administrative fees.

Dated: February 25, 2016

Respectfully submitted,

/s/ Jason M. Knott
Carl S. Kravitz
Jason M. Knott
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1813
Fax: (202) 822-8106
ckravitz@zuckerman.com
jknott@zuckerman.com

D. Brian Hufford
Jason S. Cowart
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 897-3434
Fax: (212) 704-4256
dbhufford@zuckerman.com
jcowart@zuckerman.com

*Attorneys for Plaintiffs Barbara Fayeulle,
Matthew Gentrup, and Carol A. Lietz, on
behalf of themselves and all others
similarly situated*

Of Counsel:

Steven A. Schwartz (Pa. I.D No. 50579)
Alison G. Gushue (Pa. I.D. No. 203669)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel: 610-642-8500
Fax: 610-649-3633
Email: SAS@Chimicles.com
AGG@Chimicles.com

Anthony Maul
THE MAUL FIRM, PC
68 Jay Street, Ste 201
Brooklyn, NY 11201
(718) 310-3704
afmaul@maulfirm.com

Gerald McGonagle
David Spencer
McGONAGLE SPENCER, P.C.
1533 Locust Street
Kansas City, MO 64108
816.221.2222
816.221.2245 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2016, I electronically filed the foregoing Opposition to Cigna's Motion to Dismiss Second Amended Complaint with the Clerk of the Court for the United States District Court for the District of Colorado by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Jason M. Knott
Jason M. Knott
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: (202) 778-1813
Fax: (202) 822-8106
jknott@zuckerman.com